# EXHIBIT C

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA
CIVIL DIVISION

CHARLES EHLING and EHLING
INSURANCE AND INVESTMENTS, INC.,

    Plaintiffs,

v.

Case No. 2005CA002466

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, a Foreign corporation,
and AIG DOMESTIC CLAIMS, INC.,
a Delaware Corporation,

    Defendants.

_____/



## COMPLAINT

COME NOW Plaintiffs, CHARLES A. EHLING and EHLING INSURANCE AND
INVESTMENTS, INC. (hereinafter collectively referred to as "Ehling"), by and through
undersigned counsel, and sue NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PENNSYLVANIA (hereinafter "NATIONAL UNION"), a Foreign
Corporation conducting business in the State of Florida, and AIG DOMESTIC CLAIMS, INC.
(hereinafter "AIG"), a Delaware Corporation conducting business in the State of Florida and
state as follows:

    1.    This is an action for damages that exceed $15,000.

    2.    Plaintiffs' principal place of business is located at 4848 West Spencer Field Road,
Pace, Santa Rosa County, Florida 32571.



EXHIBIT
"C"

3.    At all times relevant to this action, AIG DOMESTIC CLAIMS, INC., was a Foreign Corporation conducting business in the State of Florida, with its principal address of 400 Interplace Parkway, Building A, Parsippany, New York, 07050.

4.    At all times relevant to this action, NATIONAL UNION was a corporation organized and existing under the laws of the State of Pennsylvania, engaging in the insurance business in the State of Florida, with its principal place of business located at 1750 CNG Tower, Pittsburgh, Pennsylvania, 10270.

5.    AIG and NATIONAL UNION shall be hereinafter collectively referred to as "Defendant".

6.    Plaintiffs were insured by Defendant under a policy covering errors and omissions in connection with Plaintiffs' business.

7.    Under the terms of errors and omissions insurance policy number 985-88-28, Defendant agreed to insure Plaintiffs during the period from 2001-2004, against any loss or liability occurring as a result of an error or omission by Plaintiffs in the course of their business as an insurance agent.

8.    Defendant also agreed to defend Plaintiffs in any action brought against Plaintiffs alleging damages as a result of Plaintiffs' error or omission, even if the suit or action was groundless, false, or fraudulent. A copy of this insurance policy is attached to this complaint and marked Exhibit "A."

## COUNT I
## BREACH OF DUTY TO DEFEND
### (Ray Glass Batteries Matter)

9.    Plaintiffs readopt and reallege the allegations contained in paragraphs 1-8 as if fully set forth herein.

2

10.    This is an action against Defendant for breach of duty to defend Plaintiffs, pursuant to a contract for errors and omissions insurance.

11.    Ray Glass Batteries, Inc., Kevin A. Glass, Sr., and Darla Glass (hereinafter collectively referred to as "Glass Batteries") brought an action against Ehling for monetary damages allegedly sustained as a result of Ehling providing health insurance through Meridian Insurance Company, which, according to the State of Florida, was not permitted to do business in the State of Florida.  The action was designated *Ray Glass Batteries, Inc., Kevin A. Glass, Sr., and Darla Glass v. Jeffrey Connley d/b/a ECA Group, Patricia Connley d/b/a ECA Group, Charles A. Ehling, Ehling Insurance and Investments, Inc., and Jerry M. Blackburn*, Case No. 2003-CA-2815, and was brought in the Circuit Court for Citrus County, Florida.

12.    The allegations against Ehling in the Ray Glass Batteries matter constitute a covered event under the insurance contract between Ehling and Defendant.

13.    After receiving service of the summons and complaint in the described action, Ehling notified Defendant and demanded that Defendant assume its obligations to defend the action.

14.    Defendant denied Ehling's claim.

15.    Defendant refused and continues to refuse to defend the action by Glass Batteries against Ehling, thus disregarding its obligation to comply with the terms of the policy of insurance described above.

16.    Defendant has denied any liability under the insurance contract.

17.    Plaintiffs have at all times complied with and performed all of the covenants and obligations that were required under the insurance contract.

18.    Because Defendant refuses to defend the action brought by Glass Batteries against Ehling, Ehling has incurred and continues to incur great expenses in defending against the action.

3

19.    As a result of Defendant's refusal to defend the action brought by Glass Batteries against Ehling, Ehling has retained the undersigned counsel not only to defend the action brought by Glass Batteries, but also to prosecute the present action against Defendant for its refusal to defend.  Plaintiffs have become obligated to counsel for the payment of reasonable attorney fees for the prosecution of this action.

WHEREFORE, Plaintiffs, Charles Ehling and Ehling Insurance and Investments, request judgment against Defendant for any and all damages for costs and expenses incurred in defending the suit brought by Glass Batteries.  Pursuant to chapter 428, Florida Statutes, Plaintiffs also request reasonable attorney fees incurred in defending the action brought by Glass Batteries, and for prosecution of the present action.  Finally, Plaintiffs request costs in this action, and such other and further relief as the court may deem just and proper.

## COUNT II
## BREACH OF DUTY TO DEFEND
### (Jarvis Matter)

20.    Plaintiffs readopt and reallege the allegations contained in paragraphs 1-8 as if fully set forth herein.

21.    This is an action against Defendant for breach of duty to defend Plaintiffs pursuant to a contract for errors and omissions insurance.

22.    On or about March 2004, Christine Jarvis brought an action against Ehling for monetary damages allegedly sustained as a result of Ehling providing health insurance through Meridian Insurance Company, which, according to the State of Florida, was not permitted to do business in the State of Florida.  The action was designated *Christine Jarvis v. Jerry M. Blackburn, Charles A. Ehling, and Ehling Insurance & Investments, Inc.*, Case No. 2003-CA-4765, and was brought in the Circuit Court for Citrus County, Florida.

4

23.     After receiving service of the summons and Amended Complaint in the described action, Ehling notified Defendant, and demanded that Defendant assume its obligations to defend the action.

24.     The allegations against Ehling in the Jarvis matter constitute a covered event under the insurance contract between Ehling and Defendant.

25.     Defendant denied Ehling's claim.

26.     Defendant has refused and continues to refuse to defend the action by Christine Jarvis against Ehling, thus disregarding its obligation to comply with the terms of the policy of insurance described above.

27.     Defendant has denied any liability under the insurance contract.

28.     Ehling has at all times complied with and performed all of the covenants and obligations required under the insurance contract.

29.     Because Defendant has refused to defend the action brought by Jarvis against Ehling, Ehling has incurred and continues to incur great expenses in defending against the action.

30.     As a result of Defendant's refusal to defend the action by Jarvis against Ehling, Ehling has retained the undersigned counsel not only to defend the action, but also to prosecute the present action against Defendant for its refusal to defend. Ehling has become obligated to counsel for the payment of reasonable attorney fees for the prosecution of this action.

WHEREFORE, Plaintiffs, Charles Ehling and Ehling Insurance and Investments, Inc., request judgment against Defendant for damages for costs and expenses incurred in defending the suit brought by Christine Jarvis. Pursuant to chapter 428, Florida Statutes, Ehling also requests reasonable attorney fees incurred in defending the action brought by Christine Jarvis, and for prosecution of the present action. Finally, Ehling requests costs in this action and such other and further relief as the court may deem just and proper.

5

## COUNT III
## BREACH OF DUTY TO DEFEND
### (Lampasso Matter)

31.     Plaintiffs readopt and reallege the allegations in paragraphs 1-8 as if fully set forth herein.

32.     This is an action against Defendant for breach of duty to defend Plaintiffs pursuant to a contract for errors and omissions insurance.

33.     On or about September 2003, Patrick Lampasso and Mary Lampasso (hereinafter collectively referred to as "Lampasso") brought an action against Ehling for monetary damages allegedly sustained as a result of Ehling providing health insurance through Meridian Insurance Company, which, according to the State of Florida, was not permitted to do business in the State of Florida.  The action was designated *Patrick Lampasso and Mary Lampasso v. DSK Group, Inc., a Florida Corporation, Ehling Insurance and Investments Inc., a Florida Corporation, and Charles Ehling*, Case No. 03-6658CI-11, and was brought in the Circuit Court for Pinellas County, Florida.

34.     After receiving service of the summons and complaint in the described action, Plaintiffs notified Defendant, and demanded that Defendant assume its obligations to defend the action.

35.     The allegations against Ehling in the Lampasso matter constitute a covered event under the insurance contract between Ehling and Defendant.

36.     Defendant denied Ehling's claim.

37.     Defendant refused and continues to refuse to defend the action by Lampasso against Ehling, thus disregarding its obligation to comply with the terms of the policy of insurance described above.

6

38.    Defendant has denied any liability under the insurance contract.

39.    Ehling has at all times complied with and performed all of the covenants and obligations required under the insurance contract.

40.    Because Defendant has refused to defend the action by Lampasso against Ehling, Ehling has incurred and continues to incur great expenses in defending against the action.

41.    As a result of Defendant's refusal to defend the action by Lampasso against Ehling, Ehling has retained the undersigned counsel not only to defend the action brought by Lampasso, but also to prosecute the present action against Defendant for its refusal to defend. Ehling has become obligated to counsel for the payment of reasonable attorney fees for the prosecution of this action.

WHEREFORE, Plaintiffs, Charles Ehling and Ehling Insurance and Investments, Inc., request judgment against Defendant for damages for costs and expenses incurred in defending the suit by Lampasso. Pursuant to chapter 428, Florida Statutes, Ehling also requests reasonable attorney fees incurred in defending the action brought by Lampasso, and for prosecution of the present action. Finally, Ehling requests costs in this action, and such other and further relief as the court may deem just and proper.

## COUNT IV
## BREACH OF DUTY TO DEFEND
### (Maguran Matter)

42.    Plaintiffs readopt and reallege the allegations contained in paragraphs 1-8 as if fully set forth herein.

43.    This is an action against Defendant for breach of duty to defend Plaintiffs pursuant to a contract for errors and omissions insurance.

44.    On or about October 2004, Mary Maguran brought an action against Plaintiffs for monetary damages allegedly sustained as a result of Plaintiffs providing health insurance through

7

Meridian Insurance Company, which, according to the State of Florida, was not permitted to do business in the State of Florida. The action was designated *Mary Maguran v. Charles A. Ehling, Ehling Insurance and Investments, Inc., and Jerry M. Blackburn, Blackburn Enterprises of Ocala, Inc.*, Case No. 2004-CA-00304, and was brought in the Circuit Court for Levy County, Florida.

45.    After receiving service of the summons and complaint in the described action, Plaintiffs notified Defendant, and demanded that Defendant assume its obligations to defend the action.

46.    The allegations against Ehling in the Maguran matter constitute a covered event under the insurance contract between Ehling and Defendant.

47.    Defendant denied Ehling's claim.

48.    Defendant has refused and continues to refuse to defend the action by Maguran against Ehling, thus disregarding its obligation to comply with the terms of the policy of insurance described above.

49.    Defendant has denied any liability under the insurance contract.

50.    Ehling has at all times complied with and performed all of the covenants and obligations required under the insurance contract.

51.    Because Defendant refused to defend the action by Maguran against Ehling, Ehling has incurred and continues to incur great expenses in defending against the action.

52.    As a result of Defendant's refusal to defend the action by Maguran against Ehling, Ehling has retained the undersigned counsel not only to defend the action by Maguran, but also to prosecute the present action against Defendant for its refusal to defend. Ehling has become obligated to counsel for the payment of reasonable attorney fees for the prosecution of this action.

WHEREFORE, Plaintiffs, Charles Ehling and Ehling Insurance and Investments, Inc., request judgment against Defendant for damages for costs and expenses incurred in defending the suit by Maguran. Pursuant to chapter 428, Florida Statutes, Ehling also requests reasonable attorney fees incurred in defending the action by Maguran, and for prosecution of the present action. Finally, Ehling requests costs in this action, and such other and further relief as the court may deem just and proper.

## COUNT V
## BREACH OF DUTY TO DEFEND
### (Hess Matter)

53.    Plaintiffs readopt and reallege the allegations contained in paragraphs 1-8 as if fully set forth herein.

54.    This is an action against Defendant for breach of duty to defend Ehling pursuant to a contract for errors and omissions insurance.

55.    On or about July 2004, Dawna Hess brought an action against Ehling for monetary damages allegedly sustained as a result of Ehling providing health insurance through Meridian Insurance Company, which, according to the State of Florida, was not permitted to do business in the State of Florida. The action was designated *Dawna Hess v. Charles Ehling and Ehling Insurance and Investments, Inc.,* Case No. 04-1348-CAK, and was brought in the Circuit Court for Marion County, Florida.

56.    After receiving service of the summons and complaint in the described action, Ehling notified Defendant, and demanded that Defendant assume its obligations to defend the action.

57.    The allegations against Ehling in the Hess matter constitute a covered event under the insurance contract between Ehling and Defendant.

58.    Defendant denied Ehling's claim.

9

59.    Defendant has refused and continues to refuse to defend the action by Hess against Ehling, thus disregarding its obligation to comply with the terms of the policy of insurance described above.

60.    Defendant has denied any liability under the insurance contract.

61.    Ehling has at all times complied with and performed all of the covenants and obligations required under the insurance contract.

62.    Because Defendant refused to defend the action by Hess against Ehling, Ehling has incurred and continues to incur great expenses in defending against the action.

63.    As a result of Defendant's refusal to defend the action by Hess against Ehling, Ehling has retained the undersigned counsel not only to defend the action by Hess, but also to prosecute the present action against Defendant for its refusal to defend.  Ehling has become obligated to counsel for the payment of reasonable attorney fees for the prosecution of this action.

WHEREFORE, Plaintiffs, Charles Ehling and Ehling Insurance and Investments, Inc., request judgment against Defendant for damages for costs and expenses incurred in defending the suit by Hess.  Pursuant to chapter 428, Florida Statutes, Ehling also requests reasonable attorney fees incurred in defending the action by Hess, and for prosecution of the present action. Finally, Ehling requests costs in this action, and such other and further relief as the court may deem just and proper.

## COUNT VI
## BREACH OF DUTY TO DEFEND
### (DSK/ECA Matter)

64.    Plaintiffs readopt and reallege the allegations contained in paragraphs 1-8 as if fully set forth herein.

10

65.    This is an action against Defendant for breach of duty to defend Plaintiffs pursuant to a contract for errors and omissions insurance.

66.    On or about February 2005, DSK Group, Inc. and ECA Group, Inc. brought an action against Plaintiffs for monetary damages allegedly sustained as a result of Plaintiffs providing health insurance through Meridian Insurance Company, which, according to the State of Florida, was not permitted to do business in the State of Florida. The action was designated *DSK Group, Inc., and ECA Group, Inc., v. Charles A. Ehling, Ehling Insurance and Investments, Inc., Jerry M. Blackburn and National Care Marketing, Inc.*, Case No. 2003-CA-4613, and was brought in the Circuit Court for Citrus County, Florida.

67.    After receiving service of the summons and complaint in the described action, Plaintiffs notified Defendant and demanded that Defendant assume its obligations to defend the action.

68.    The allegations against Ehling in the DSK matter constitute a covered event under the insurance contract between Ehling and Defendant.

69.    Defendant denied Ehling's claim.

70.    Defendant refused and continues to refuse to defend the action by DSK against Ehling, thus disregarding its obligation to Ehling to comply with the terms of the policy of insurance described above.

71.    Defendant has denied any liability under the insurance contract.

72.    Ehling has at all times complied with and performed all of the covenants and obligations required under the insurance contract.

73.    Because Defendant refused to defend the action by DSK against Ehling, Ehling has incurred and continues to incur great expenses in defending against the action.

74.    As a result of Defendant's refusal to defend the action by DSK against Ehling, Ehling has retained the undersigned counsel not only to defend the action by DSK, but also to prosecute the present action against Defendant for its refusal to defend. Ehling has become obligated to counsel for the payment of reasonable attorney fees for the prosecution of this action.

WHEREFORE, Plaintiffs, Charles Ehling and Ehling Insurance and Investments, Inc., request judgment against Defendant for damages for costs and expenses incurred in defending the suit by DSK. Pursuant to chapter 428, Florida Statutes, Ehling also requests reasonable attorney fees incurred in defending the action brought by DSK, and for prosecution of the present action. Finally, Ehling requests costs in this action and such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all counts for which trial by jury is allowed.

Respectfully submitted this _11th_ day of _October_ , 2005.

James W. Linn
Fla. Bar No. 0312916
Glenn E. Thomas
Fla. Bar No. 0489174
Lewis, Longman & Walker, P.A.
125 South Gadsden Street, Suite 300
Tallahassee, FL 32301
(850) 222-5702
(850) 224-9242 - Fax

Attorneys for Plaintiffs, Charles Ehling and
Ehling Insurance and Investments, Inc.



*Aon Services Group*

February 25, 2003

Charles Ehling
3163 Benton Boulevard
Pace, FL 32571

RE: GE Financial Assurance Sponsored Errors & Omissions Program
Policy #: 985-88-28
Customer #: 210214000

Dear Agent:

Enclosed is your original Memorandum of Insurance for the GE Financial Assurance Sponsored Errors and
Omission program. Please review it carefully. If detailed information regarding the provisions of the coverage is
desired please request a copy of the "Highlight Guide" by contacting our office.

Please keep the original in a safe place for future reference.  All agents and representatives are responsible for
retaining their memorandums as proof of current Errors & Omissions coverage, and for providing a copy of this
documentation to others (e.g. Insurance companies, compliance auditors etc.) whenever requested to do so.

Important Notice: In order to remain eligible to be covered under the sponsored plan, you *must* be an active
agent or representative of GE Financial Assurance.  Should your status as an agent with GE Financial
Assurance, or any of its subsidiaries be terminated for any reason your coverage under the plan will
*automatically terminate* as of that date.  All premiums are fully earned upon the inception date of coverage;
therefore, if your coverage under the plan terminates, there will be no refund of premium.

*If you have any questions, please contact us toll-free at (800) 621-0711.  We appreciate the opportunity to be of*
continued service to you for your E & O coverage.

Sincerely,

*Ross Jordan*

Ross Jordan, CPCU
Vice President, Agent Programs

# GE FINANCIAL ASSURANCE

## *AGENTS' ERRORS & OMISSIONS INSURANCE*

## MEMORANDUM OF INSURANCE

*INSURED:*

*Charles Ehling*
*3163 Benton Boulevard*
*Pace, FL 32571*

*CARRIER:*

National Union Fire Insurance Company
A member company of The American International Group

*POLICY:*

Claims Made and Reported Policy

*POLICY NUMBER*

985-88-28

*CUSTOMER NUMBER*

210214000

*POLICY PERIOD:*

January 1, 2003 to January 1, 2004

*LIMITS OF LIABILITY:*

$1,000,000 Each Claim

$1,000,000 Aggregate/Agent

$10,000,000 Policy Aggregate

*DEDUCTIBLES:*

$500 Each wrongful act for GE business (Damages and Defense).

$1,000 Each wrongful act for all business other than GE Damages and Defense Costs).

*PRIOR ACTS DATE:*

The earlier of the date of contract with GE Financial Assurance or the date of the first continuous life agents' errors and omissions coverage subject to the receipt of proof of such continuous coverage.

*STANDARD COVERAGE:*
*Effective Date: January 1, 2003*

Individual and group life, A&H, disability, annuities (fixed), and long term care insurance.

*COVERAGE OPTION:*
*Financial Products*
*Effective Date: January 1, 2003*

Optional Financial Products Coverage –
If elected and additional premium paid coverage is included for mutual funds and variable products through an NASD approved broker/dealer, sales transactions of stocks, bonds and other investment products if they are approved by and placed through GE Capital Brokerage Corporation

*You must have a current appointment with GE Financial Assurance as an Insurance Agent and to have paid a premium to be insured under the E&O plan. The policy expiration date for an Insured Agent will be January 1, 2004 or the date the Agent's appointment with GE Financial Assurance is terminated, whichever is earlier. Coverage is provided subject to the terms, conditions and exclusions of the policy.*

*NOTE: This is to be considered the highlights of the insurance afforded. It is not intended to interpret the actual coverage or content of the policy nor is it legal advice. It summarizes our understanding of the coverage provided. You should refer to the policy for specific details.*

Please retain this document in a safe place for your future reference and E & O compliance requirements.
ISSUE DATE:   February 25, 2003 (Certificate not valid if blank)

FAXSR: AON FAX SERVER At 12    06-11-06:36 AM Page 2



### Highlight Guide – Errors & Omissions Program

### January 1, 2003 – January 1, 2004

Highlights of Errors & Omissions Program

Key Points

What does an Interrelated Wrongful Act mean?

Who is covered?

What are my Limits of Liability?

What is my deductible?

What products, activities or professional services are covered?

Would I be covered for products placed with companies outside of GE?

Am I covered for the sale and servicing of mutual funds and variable products?

Am I covered for the sale and servicing of financial products other than mutual funds and variable products?

What Activities are Not Covered?

Am I covered for acts committed prior to the inception date of the policy? (Continuity Date)

What happens if my agent's contract with GE is terminated?

What happens if I retire, become disabled or die?

What are the exclusions under the policy?

What are my obligations under the policy for reporting claims or potential claims?

What is considered a claim?

What should I do if I have a claim?

What actions should I avoid in the event of a claim?

What should I do if in doubt whether or how to report a claim?

What happens after the claim is reported?

Claim Report Form

What should I do if I need proof of coverage?

Important Phone Numbers

FAXSR: AON FAX1 SERVER At 12:    11:06:33 AM Page 3



| **Insurance Carrier:** | National Union Fire Insurance Company |
|  | A member company of The American International Group |

### Highlights of Errors & Omissions Program:

| _Limits of Liability:_ | $1,000,000 | Each Wrongful Act or Interrelated Wrongful Acts resulting in a claim made against one Insured Agent |
|  | $1,000,000 | Each Wrongful Act or Interrelated Wrongful Acts resulting in a claim made against more than one Insured Agent |
| _Policy Aggregate:_ | $10,000,000 | Each Policy Period |
| _Deductible:_ | $ 500 | Each Wrongful Act for GE business (Damages and Defense) |
|  | $1,000 | Each Wrongful Act for all business other than GE (Damages and Defense Costs) |
| _Policy Period:_ | January 1, 2003 to January 1, 2004 | |

### Key Points:

1. Coverage is "Claims Made and Reported" which covers claims first made against the Insured during the Policy Period and reported to the carrier in writing during the current Policy Period.

2. Defense costs, charges and expenses are included within the limits of liability.

3. If more than one Insured is named in a claim, only a $1,000,000 limit of liability will apply to that claim. Two or more claims arising out of a single act or series of interrelated acts will be treated as a single claim.

4. "Prior Acts" coverage back to the earlier of the agent contract date with GE or the purchase of the first continuously maintained claims made E&O policy. However, coverage will only be provided if there is no other valid and collectible insurance which would respond to the claim, and the agent is not aware of the claim or the claim does not arise out of pending or prior litigation prior to enrollment in the program.

5. Coverage extends to business written with other life and accident and health insurance companies.

6. If the coverage option is elected, coverage extends to registered representative's activities in the sale and/or servicing of financial products and financial planning activities only for products sold through GE Capital Brokerage Corporation.

7. If the coverage option is elected, coverage extends to registered representative's activities in the sale and/or servicing of mutual funds and variable products through any NASD licensed broker/dealer.

8. An unlimited Extended Reporting Period is provided for retired or disabled agents or the estates of deceased agents.

FAXSRV: AON FAX1 SERVER AT 12/    -14-06:34 AM  Page  4



## What is the Policy Aggregate?

The program has a "Policy Aggregate" of $10,000,000, which applies to all agents collectively. The exhaustion of the policy aggregate limit by damages and/or claims expenses on behalf of some agents could extinguish the per claim limit available for other agents.

## What does an Interrelated Wrongful Act mean?

"Interrelated Wrongful Act" means Wrongful Acts which are related or causally connected by reason of any common fact, circumstance, situation, casualty, event or decision. For purposes of this definition, Interrelated Wrongful Acts shall include, but are not limited to, all Wrongful Acts arising out of or attributable to:

1. a related method of sale or illustration of a particular product;

2. an incident which affects more than one investor or customer.

## Who is covered?

1. You, the agent and/or registered representative holding a contract with GE Financial Assurance, or GE Capital

2. Partnerships or Corporations:

   Any corporation or partnership in the business of insurance services, which is either owned or controlled by you, or in which you are an employee, would be covered. Coverage, however, only applies to those operations of the business entity directly related to the professional services covered herein and provided by you or an employee acting on your behalf within the scope of his/her duties. Subagents working under you or the entity will not have coverage under your insurance.

3. Employees acting by or on behalf of the Insured Agent while acting within the scope of his/her duties. This includes all unlicensed staff and those who have a state insurance license as long as they are performing purely administrative duties and they are not party to an agent or broker contract with any insurance company for the purposes of providing professional services.

4. Heirs, executors, administrators or legal representatives of an Insured in the event of death, incapacity or bankruptcy.

*It is important to note that your corporation, partnership or other entity and your employees, heirs, executors, administrators or legal representatives do not have their own separate limits. They share your coverage and limits.*



## What are my Limits of Liability?

The limits of liability are $1,000,000 each Wrongful Act or Interrelated Wrongful act when one Insured Agent is named in the claim.  In other words, the carrier will not pay over $1,000,000 on any one claim made against one Insured Agent.

The policy has a $1,000,000 Interrelated Wrongful Act limit which applies if there is more than one Insured Agent involved in the claim.

The policy also has a total aggregate limit of $10,000,000, which applies to all claims made against the policy during this policy period.

Defense costs are included in the limits of liability.

## What is my deductible?

Your deductible is $500 each Wrongful Act for GE business and applies to damages and claims expenses incurred.

The deductible will be $1,000 each Wrongful act for all business other than GE and applies to damages and claims expenses incurred.

## What products, activities or professional services are covered?

The Insured is covered for actual or alleged negligent acts, errors or omissions, while rendering or failing to render professional services for others in your capacity as an agent of GE Financial Assurance, or GE Capital Assurance

Professional services shall include the following:

1. The sale and/or servicing of Life Insurance (group or individual), Disability Income Insurance, Long Term Care Insurance, Annuities, Accident and Health Insurance and 24-hour Care Coverage;

2. The sale and/or servicing of variable products, which means variable annuities of any kind including, but not limited to; Flexible and Scheduled Premium Annuities, Variable Life Insurance through a life insurance company or any NASD licensed broker/dealer;

3. The sale and/or servicing of mutual funds which have been placed through any NASD licensed broker/dealer;

4. The sale and/or servicing of Securities which includes mutual funds, variable annuities, stocks, bonds, through GE Capital Brokerage Corporation.

5. Advice, consultation, administration and services in conjunction with all of the above, whether or not a separate fee is charged;

6. Activities of a notary public, but solely with respect to the performance of the above.

FAXSR: ACN FAX1 SERVER At 12    Jun 14 06:34 AM Page 3



**Would I be covered for products placed with companies outside of GE Financial Assurance, or GE Capital Assurance?**

You are covered for the sale and/or servicing of products of insurance companies outside of GE Financial Assurance, or GE Capital Assurance in the conduct of Professional Services and as long as your agent/registered representative contract is in effect with GE Financial Assurance, or GE Capital Assurance. Be aware that the deductible with respect to non-GE business is $1,000 and is applicable to payment of damages and defense costs. You are responsible for payment of the deductible.

**Am I covered for the sale and/or servicing of mutual funds and variable products?**

If you elected the option and paid the additional premium, you are covered for the sale and/or servicing of mutual funds and variable products as long as they are placed through an NASD licensed broker/dealer.

**Am I covered for the sale and/or servicing of financial products other than mutual funds and variable products?**

If you elected the option and paid the additional premium, your sales transactions of stocks, bonds and other investment products are included in the coverage only if these products are approved by and placed through GE Capital Brokerage Corporation.

**What Activities are Not Covered?**

1. You are not covered in your capacity as a Named Fiduciary, participant or sponsor of plan(s) which you or your firm sponsor. (see Exclusion j)

2. Activities as a property/casualty agent. (see Exclusion q)

3. Activities related to tax preparation. (see Exclusion f)

*For other activities which are not covered, see the Exclusions.*

**Am I covered for acts committed prior to the inception date of the policy? (Continuity Date)**

Since this is a "Claims Made and Reported" policy, any claim that is made during the Policy Period is covered, even if the alleged error or omission occurred prior to the Policy Period as long as the following conditions are met:

1. The error occurred after the agents contract date with GE or the date of purchase of the first claims made E&O policy, whichever is earlier; and

2. The claim does not arise out of any pending or prior litigation as of the agent's enrollment in the program; and

3. The agent did not know or could not reasonably have foreseen the Wrongful Act could be the basis of a claim as of the agent's enrollment in the program; and

FAXSR: AOU FAX1 SERVER At 12/          11:06:34 AM Page 7



### What happened if my agent's contract is terminated?

If your agent's contract is terminated with GE during the Policy Period, coverage automatically ceases for future Wrongful Acts on the date your contract terminates. There will be no return of premium. An Extended Reporting Period is automatically provided for one year from the date your contract terminated and is offered without any additional cost to you. This will provide coverage for claims first reported during the Extended Reported Period arising out of acts, errors or omissions which took place prior to your contract termination and which are otherwise covered by the policy.

### What happens if I retire, become disabled or die?

If you retire, become disabled or die your coverage as an agent or registered representative ceases on the date of your retirement, disablement or death. An unlimited Extended Reporting Period is provided without any additional cost to you. This will provide coverage for claims arising out of acts, errors or omissions which took place prior to your retirement, disability or death and which are otherwise covered by the policy.

### Exclusions

The Insurer shall not be liable for Loss in connection with any Claim made against an Insured:

(a)    (1)    an Insured arising out of, based upon or attributable to any actual or alleged criminal, dishonest, malicious, knowingly wrongful or fraudulent act committed by or at the direction of the Insured; or

(2)    an Insured arising out of, based upon or attributable to any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act (as amended), 18 USC Sections 1961 et seq., or any rules or regulations promulgated thereunder;

however, if such allegations are not subsequently proven by a final judgment or other adjudication adverse to the Insured and are not admitted to by the Insured, then the Insured shall be entitled to all reasonable Defense Costs which would have been collectible under this policy;

(b)    an Insured for physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time, emotional distress, damage to or destruction of any property, including the loss of use thereof;

(c)    an Insured alleging, arising out of, based upon or attributable to the facts alleged, or to the same Wrongful Act or Interrelated Wrongful Acts alleged or contained, in any Claim or Class Action suit which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(d)    an Insured alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date, or alleging or derived from the same or substantially the same facts as alleged in such pending or prior litigation;



## Exclusions continued

(e)  an Insured arising out of, based upon or attributable to any actual or alleged Wrongful Act or Interrelated Wrongful Acts occurring prior to the Continuity Date, if on or before such date any Insured knew or could have reasonably foreseen that such Wrongful Act or Interrelated Wrongful Acts could be the basis of a Claim or Class Action suit;

(f)  an Insured arising out of, based upon or attributable to the Insured's activities as an actuary, lawyer, accountant, real estate agent, real estate broker, or third party claims administrator;

(g)  an Insured arising out of, based upon or attributable to the insolvency, receivership, bankruptcy, liquidation or inability to pay, of any entity in which the Insured has placed funds or obtained coverage or invested funds for a client, including, but not limited to, the Named Insured, or any bank, banking firm, insurance company, benefit plan, broker/dealer, trust or investment vehicle;

(h)  an Insured arising out of, based upon or attributable to any commingling of funds or accounts;

(i)  the Named Insured alleging, arising out of, based upon or attributable to any one or more of the following:

    (1)  any failure or refusal to pay, or delay in the payment of, benefits due or alleged to have been due under any insurance contract or from any pension plan, welfare plan or other benefit plan;

    (2)  any lack of good faith or fair dealing in the handling of any claim or obligation arising out of or under any insurance contract or from any pension plan, welfare plan or other benefit plan;

(j)  an Insured arising out of, based upon or attributable to any pension plan, welfare plan or other benefit plan sponsored by any Insured or by any firm in which:

    (1)  any Insured has a financial interest;

    (2)  any Insured is a participant, named fiduciary, designated fiduciary, administrator or trustee as those terms are used in the Employee Retirement Income Security Act of 1974 as amended;

(k)  an Insured which is brought by or on behalf of any Insured under this policy;

(l)  an Insured for taxes, fines or penalties, or the multiplied portion of multiplied damages imposed against an Insured unless such taxes, fines or penalties are incurred by a third party, other than an Insured, and which are included in such third party's Claim against an Insured; furthermore, only where permitted by law, this policy shall cover, subject to all the terms, conditions and exclusions contained herein, up to $5,000 punitive, exemplary or multiplied damages, as part of and not in addition to the Limits of Liability otherwise afforded by this policy;

(m)  an Insured arising out of, based upon or attributable to the Insured making or stating any promises or guarantees as to interest rates or market values;

(n)  an Insured alleging, arising out of, based upon or attributable to:

    (1)  any business interference with client lists;

FAX SR. AON FAX SERVER AT 12.    9 11:06:34 AM Page 5



**Exclusions continued**

  (2) any fees, commissions, brokerage monies or other charges for any Professional Services; provided, however, this exclusion shall not apply to Claims made against an Insured Agent by a client of the Insured Agent;

  (3) any contract dispute between any Insureds, or between the Insureds and any other entities insurance companies or securities broker/dealers;

(o) an Insured which is brought by any governmental authority or any self-regulatory or regulatory authority regardless of the capacity in which it is brought, or brought by the successors or assigns of any of the aforementioned; however, this exclusion shall not apply to a Claim brought by any of the aforementioned to enforce its rights as a direct client of the Insured in the ordinary course of business;

(p) an Insured arising out of, based upon or attributable to any Wrongful Act committed or alleged to be committed directly or indirectly in connection with the sale or recommendation of any instrument issued by any limited partnership, master limited partnership, real estate investment trust or any affiliated organization of any of the foregoing;

(q) an Insured arising out of, based upon or attributable to any solicitation, placement or referral of property and/or casualty insurance;

(r) an Insured alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

  (1) the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

  (2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants,

including but not limited to a Claim alleging damage to the Named Insured or its securities holders;

Pollutants include, but are not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed;

(s) an Insured arising out of, based upon or attributable to any obligation for which the Insured or any carrier as his insurer may be held liable under any workers compensation, unemployment compensation or disability benefits law or under any similar law;

(t) an Insured arising out of, based upon or attributable to payment of employee benefits, wages, salaries or commissions;

(u) an Insured for any publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy made by or at the direction of any Insured with the knowledge of the falsity thereof.

FAXSR: AON FAX1 SERVER AT 12      11:06:34 AN Page 10



## Notice of Claims

### What are my obligations under the policy for reporting claims or potential claims?

Coverage is on a "Claims Made and Reported" basis, which covers claims first made against you during the current Policy Period and must be reported to the carrier in writing during the current policy period.

### What is considered a claim?

A claim is a demand for money alleging a Wrongful Act. A claim is not limited to a formal complaint or lawsuit. A claim can also mean a civil, criminal, administrative or arbitration proceeding for monetary relief which is commenced by:

- service of a complaint or similar proceeding; or
- return of an indictment (in the case of a criminal proceeding); or
- receipt or filing of a notice of charges.

If you become aware of any Wrongful Act or allegation of a Wrongful Act, even if you feel that the claim is unjustified, report the available particulars immediately in writing to the carrier. Should the circumstances or "potential" claim develop into an actual claim at some future date, your reporting of a possible incident will serve as notice of a claim under the Policy Period in which the circumstances were reported.

### What should I do if I have a claim?

1. Promptly complete the Claim Report Form and send it to the address indicated on the form.

2. If the claim is a lawsuit, send a copy of the complaint with the Claim Report Form by overnight express mail.

3. Develop a written chronology of events giving rise to the claim.

4. Be prepared to provide a copy of your file.

### What actions should I avoid in the event of a claim?

1. Do not make any payment, assume any obligation or incur any expense.

2. Once an incident has been identified or a claim has been made, great care should be exercised to avoid any disclosures or discussion of any facts or information relating to the claim with anyone, unless they identify themselves to be from American International Group (AIG), GE, Aon or a designated representative appointed to handle your claim.

3. Do not admit liability.



**What should I do if in doubt whether or how to report a claim?**

For advice contact:

> **Aon Financial Services, Inc.**
> Alice Mogck
> 212-792-9328

**What happens after the claim is reported?**

- A representative from the Insurer will contact you within a few days to acknowledge the receipt of the claim and discuss the particulars of the situation. Additional information or documents may be requested.

- Coverage under the Agents' E&O program will be determined and you will be advised of any coverage issues.

- If necessary, an attorney will be retained. In order to ensure the best possible defense, you should cooperate completely with the individual retained, provide full details and be candid.



# CLAIM REPORT FORM
### For the Agents of GE Financial Assurance
### Policy #214-32-83
*Please complete all information*

Date:_____

Name:_____ __ _____

Address:_____

_____

Phone:_____        Fax:_____ __ _____

1. Date you became aware of this claim or potential claim:_____

2. Do you have any other Errors & Omissions Insurance?    _____No _____Yes

    If yes, provide Company, Policy Number and Limits:

_____

3. Identify the name of the person making a claim against you:

    Name:_____

    Address:_____

    _____

    Phone:_____        Fax:_____

4. Provide narrative describing the nature of this claim/potential claim and attach copies of all pertinent correspondence (use additional paper if necessary). Be sure to indicate the type of business written for the claimant, including the company and policy number. <u>If you were served with a lawsuit, provide a copy of the complaint and indicate the day on which you were served with same.</u>

**Notice of claims or potential claims should be reported without delay to:**

**National Union Fire Insurance Company**
**Attn:  Arthur Gorodess**
**175 Water Street, 4th Floor**
**New York, NY  10038**
**(212) 458-1574**
**(212) 458-0996 FAX**

*Do not discuss this matter with anyone unless they identify themselves to be from National Union Fire Insurance Company or its authorized representative, Aon Financial Services Group or GE.*

FAX SR AON FAX SERVER AT 12    11:06:35 AM Page 13



**What should I do if I need proof of coverage?  (Certificate of Insurance)**

Contact:

**Aon Affinity Insurance Services, Inc.**
Agent Programs
159 East County Line Road
Hatboro, PA  19040
(800) 621-0711

**Important Telephone Numbers to Keep
For Your Reference**

*Questions on New Enrollment and Premium Payment*

Aon Affinity Insurance Services, Inc.
Agent Programs
159 East County Line Road
Hatboro, PA  19040
(800) 621-0711

*To Obtain a Certificate of Insurance*

Aon Affinity Insurance Services, Inc.
(800) 621-0711

*Questions on Claims or Coverage*

Aon Financial Services Group
Alice Mogck
212-792-9328

*This information is not intended to interpret the actual coverage contained in the policy nor is it legal advice, but rather summarizes the coverage provided.  Please refer to the policy for actual terms of the coverage provided.*