EXHIBIT   F

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

CHARLES EHLING and
EHLING INSURANCE
AND INVESTMENTS, INC.,

      Plaintiffs,

vs.                              **CASE NO:  4:05cv431-RH/WCS**

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PENNSYLVANIA,
a foreign corporation, and AIG
DOMESTIC CLAIMS, INC.,
a Delaware corporation,

      Defendants.

_____/

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendant/counter-plaintiff, National Union Fire Insurance of Pittsburgh, Pennsylvania ("National Union"), through its undersigned attorneys and with the written consent of opposing counsel given pursuant to Fed. R. Civ. P. 15(a), hereby amends its Answer and Defenses to include this Counterclaim against plaintiffs/counter-defendants Charles Ehling and Ehling Insurance and Investments, Inc. (collectively, "Ehling"), and alleges:

### Nature of the Action

1.    This is an action for declaratory relief to determine that certain claims against Ehling arising from Ehling's sale of purported group health insurance plans offered by Meridian Benefit, Inc. ("Meridian") are not covered by an errors and



omissions insurance policy issued by National Union to GE Financial Assurance ("the insurance policy").

2.    As Ehling knew or should have known, Meridian was not an insurance company and was never authorized to transact insurance in Florida or any other state. The Florida Office of Insurance Regulation ("OIR") determined that Ehling and others had violated Florida law by marketing and selling Meridian's products and ordered them to immediately cease and desist any further sales. Meridian filed for Chapter 7 bankruptcy in New Jersey in May 2003, leaving a reported $15 million in unpaid insurance claims.

3.    Several "insureds" and employers under Meridian plans Ehling sold as employee benefit plans have sued Ehling to recover the amount of their unpaid medical claims. Ehling has demanded that National Union provide a defense for those claims under the insurance policy, and National Union has refused. For the reasons set forth below, National Union seeks a declaration that it has no liability for damages or defense costs incurred by Ehling in connection with his sale of Meridian's products.

## Parties and Jurisdiction

4.    National Union is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business located at 70 Pine Street, New York, New York. National Union is authorized to transact insurance in the State of Florida.

5.    Defendant, Ehling Insurance and Investments, Inc. is a Florida corporation engaged in the business of selling insurance.

2

6.    Defendant, Charles Ehling, is a Florida resident and a licensed Florida insurance agent. Charles Ehling was also registered as an Alabama agent, but was not authorized to sell health insurance plans in Alabama when he marketed the plans offered by Meridian. Charles Ehling is President of Ehling Insurance and Investments, Inc.

7.    The amount in controversy exceeds $75,000, exclusive of costs and attorneys' fees.

### The Insurance Policy

8.    The insurance policy was issued by National Union to GE Financial Assurance, the named insured, for a policy period from January 1, 2003 to January 1, 2004. A copy of the insurance policy is attached as Exhibit A.

9.    Charles Ehling claims coverage under the insurance policy as an "insured agent," which the insurance policy defines in pertinent part to be a licensed insurance agent under contract with the named insured.

10.    Ehling Insurance and Investments claims coverage under the insurance policy as a corporation owned or controlled by an insured agent.

11.    Subject to certain terms and conditions, the insurance policy provides coverage for damages and defense costs resulting from any claim made against an insured agent during the policy period for wrongful acts committed by the insured agent during the performance of professional services.

12.    The insurance policy defines "wrongful act" in pertinent part to mean any actual or alleged negligent act, error, or omission.

3

13.    The insurance policy defines "professional services" in pertinent part to mean services rendered by an insured agent in placing business with insurance companies other than the named insured.

14.    The insurance policy excludes coverage for damages and defense costs in connection with a claim made against an insured "arising out of, based upon or attributable to the insolvency, receivership, bankruptcy, liquidation or inability to pay, of any entity in which the Insured has placed funds or obtained coverage or invested funds for a client, including, but not limited to, the Named Insured, or any bank, banking firm, insurance company, benefit plan, broker/dealer, trust or investment vehicle." Insurance policy, ¶ 3(g) ("the insolvency exclusion").

15.    The insurance policy also excludes coverage for damages and defense costs in connection with a claim made against an insured "arising out of, based upon or attributable to any actual or alleged criminal, dishonest, malicious, knowingly wrongful or fraudulent act committed by or at the direction of the Insured." Insurance policy, ¶ 3(a)(1) ("the wrongful acts exclusion").

16.    The wrongful acts exclusion further provides that "if such allegations [of wrongful acts] are not subsequently proven by a final judgment or other adjudication adverse to the Insured and are not admitted to by the Insured, then the Insured shall be entitled to all reasonable Defense Costs which would have been collectible under this policy." Insurance policy, ¶ 3(a).

17.    The insurance policy also excludes coverage for damages and defense costs in connection with the claim made against the insured "arising out of, based upon or

4

attributable to payment of employee benefits, wages, salaries or commissions." Insurance policy, ¶ 3(t) ("the employee benefits exclusion").

## Meridian's Purported Welfare Benefits Plans

18.     Meridian held itself out to be a third-party administrator of single employer welfare benefits plans, purportedly established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). The plans were marketed and sold by Ehling and others to employers in the state of Florida and elsewhere as a means to provide employee health insurance benefits.

19.     As marketed, each plan was to be funded by contributions from the employer and participating employees to a trust established for the specific purpose of administering the plan. Meridian's marketing materials represented that the plans had been prepared with the assistance of an actuary to determine the contribution rates required to cover the total cost of providing benefits. Meridian also represented that stop-loss insurance had been obtained to cover claims in the event contributions to the trust were insufficient.

20.     In actual fact, contributions to the plans were not held in a separate trust for the benefit of plan participants, but were instead commingled with all other contributions and deposited into Meridian's general operating account. Claims by plan participants were paid from a common pool of funds, with current contributions being used to pay previously-submitted claims in a classic "pyramid scheme" approach.

21.     Also contrary to Meridian's representations, contributions to the plans had not been established by an actuary in amounts necessary to ensure payment of claims, but were instead set for the purpose of undercutting market rates for traditional health

insurance products. Moreover, Meridian never obtained stop-loss insurance to cover excess claims.

22.    As a result, each plan administered by Meridian was underfunded from its inception and unable to pay all claims submitted by plan participants.

23.    In addition, Donald Ruth ("Ruth"), Meridian's sole shareholder and one of its officers, diverted substantial funds from Meridian for his personal use. Ruth recently pled guilty to federal charges of mail fraud and tax evasion based upon his involvement in Meridian.

## Ehling's Involvement with Meridian

24.    On or about October 3, 2002, Charles Ehling entered into an "Independent Consultant Agreement" with Meridian, a copy of which is attached as Exhibit B.

25.    The Independent Consultant Agreement expressly provided that Meridian "does not purport to hold any operating, business, franchise or other so-called 'licenses' or certificate of authority from any state in the United States." Agreement, ¶ 3.

26.    The Independent Consultant Agreement also provided that the agreement could be terminated for "[w]illfully misrepresenting that Meridian Benefit Inc. is anything other than a Third Party Administrator (TPA)." Agreement, ¶7.

27.    Meridian at no time held a certificate of authority authorizing it to transact insurance in the State of Florida, as required by section 624.401, Florida Statutes.

28.    Ehling knew that Meridian was not authorized to transact insurance in the State of Florida.

6

29.    Even if Ehling did not have actual knowledge that Meridian was not authorized to transact insurance in the State of Florida, as a licensed insurance agent, he should have known that Meridian was not so authorized.

30.    Meridian at no time held a certificate of authority authorizing it to act as a third-party administrator in the State of Florida, as required by section 626.8805, Florida Statutes.

31.    Ehling knew that Meridian was not authorized to act as a third-party administrator in the State of Florida.

32.    Even if Ehling did not have actual knowledge that Meridian was not authorized to act as a third-party administrator in the State of Florida, as a licensed insurance agent, he should have known that Meridian was not so authorized.

33.    On or about May 16, 2003, the Florida Department of Financial Services ("DFS") filed an Administrative Complaint against Charles Ehling seeking to suspend or revoke his insurance license based on his representation of Meridian and another entity which, like Meridian, was unauthorized to transact insurance in Florida and had filed for bankruptcy leaving unpaid insurance claims.

34.    The Administrative Complaint against Charles Ehling was eventually resolved through a settlement agreement, the terms of which are currently unknown to National Union.

35.    On or about May 23, 2003, OIR issued an Immediate Final Order finding, among other things, that Charles Ehling's marketing and sale of the plans offered by Meridian violated section 626.901, Florida Statutes, which prohibits an agent from

soliciting or procuring insurance for an unauthorized insurer and imposes liability on the agent for any unpaid claims if he violates this provision.

36.     Based on that finding, OIR directed Charles Ehling to immediately cease and desist from transacting any new or renewal business of any plan or product offered by Meridian.

37.     Ehling's representation of Meridian did in fact violate section 626.901, Florida Statutes.

38.     On or about March 24, 2005, the Trustee in Meridian's bankruptcy proceeding filed an adversary proceeding against Ehling and other "consultants" who had represented Meridian to recover damages based on the amounts those parties had received from Meridian in the form of "commissions." The Trustee alleged that Ehling had received approximately $1.7 million in "commissions" from Meridian prior to the Petition date.

39.     In his response to the adversary complaint, Ehling admitted that "each welfare plan administered by [Meridian] was not properly funded from its inception and throughout its existence, and could not pay all the claims adjudicated and submitted for payment." Adversary Complaint, ¶ 6.

**Claims against Ehling arising from Ehling's Sale of Meridian Products**

40.     National Union is aware of the following eight lawsuits against Ehling arising from Ehling's sale of benefit plans offered by Meridian (collectively, "the underlying lawsuits"):

    (a)     *Ray Glass Batteries, Inc. et al. v. Jeffrey Connley, et al.*, Case No. 2003-CA-2815, Circuit Court for the Fifth Judicial Circuit, Citrus County, Florida;

8

    (b)    *Christine Jarvis v. Jerry M. Blackburn, et al.*, Case No. 2003-CA-4765, Circuit Court for the Fifth Judicial Circuit, Citrus County, Florida;

    (c)    *Patrick Lampasso and Mary Lampasso v. DSK Group, Inc. et al.*, Case No. 2003-6658CI-11, Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida;

    (d)    *Mary Maguran v. Charles A. Ehling, et al.*, Case No. unknown, Circuit Court for the Eighth Judicial Circuit, Levy County, Florida;

    (e)    *Dawna Hess v. Charles Ehling, et al.*, Case No. 2004-1348-CAK, Circuit Court for the Fifth Judicial Circuit, Marion County, Florida;

    (f)    *DSK Group, Inc. et al. v. Charles A. Ehling, et al.*, Case No. 2003-CA-4613, Circuit Court for the Fifth Judicial Circuit, Citrus County, Florida;

    (g)    *Employee Liability Management, Inc. v. Ehling Insurance and Investment, Inc., et al.*, Case No. CV-2004-304, Circuit Court of Mobile County, Alabama;

    (h)    *PACA, Inc. v. Charles Ehling, et al.*, Case No. CV-05-45, Circuit Court of Tallapoosa County, Alabama, Alexander City Division

41.    Although the underlying lawsuits allege a variety of different claims and causes of action against Ehling and others, each suit arises from Ehling's sale of a purported employee benefit plan offered by Meridian and Meridian's failure to pay claims of individuals purportedly insured under the plan.

### Grounds for Avoiding Coverage under the Insurance Policy

42.    Each of the underlying lawsuits arises out of Meridian's bankruptcy, insolvency or inability to pay claims submitted by a purported insured.

43. Accordingly, coverage for all claims asserted in each of the underlying lawsuits is excluded under the insolvency exclusion set forth in paragraph 3(g) of the insurance policy.

44. Each of the claims asserted in the underlying lawsuits also arises out of criminal, dishonest, malicious, knowingly wrongful or fraudulent acts committed by Ehling, including, but not limited to, at least the following:

      (a)    Ehling's marketing and sale of Meridian's products notwithstanding his knowledge that Meridian was not authorized to transact insurance in Florida;

      (b)    Ehling's marketing and sale of Meridian's products notwithstanding his knowledge that Meridian was not authorized to act as a third-party administrator in Florida;

      (c)    Ehling's marketing and sale of Meridian's products notwithstanding his knowledge that the benefit plans administered by Meridian were not properly funded from their inception;

      (d)    Ehling's knowing involvement in assisting Meridian market and sell phony employee benefit plans.

45. Accordingly, coverage for all claims asserted in each of the underlying lawsuits is excluded under the wrongful acts exclusion set forth in paragraph 3(a) of the insurance policy.

46. Each of the claims asserted in the underlying lawsuits also arises out of the payment of employee benefits, since each involves claims for payment from an employee benefits plan.

47. Accordingly, coverage for all claims asserted in each of the underlying lawsuit is excluded under the employee benefits exclusion set forth in paragraph 3(t) of the insurance policy.

48.    The insurance policy provides coverage only for wrongful acts that occur "in the performance of or failure to perform professional services." Insurance policy, ¶ 1, Coverage B, ¶ (2).

49.    Ehling's marketing and sale of Meridian's products did not involve the performance of or failure to perform professional services, since Meridian at all times held itself out to be a third-party administrator rather than an insurance company. *See* insurance policy, ¶ 2(k)(2) (defining "professional services" to mean services rendered by an insured agent "who is placing business with <u>insurance companies</u> other than the Named Insured.") (Emphasis added.)

50.    Accordingly, the insurance policy does not cover any wrongful acts committed in the course of Ehling's marketing and sale of the purported benefit plans offered by Meridian.

51.    For the foregoing reasons, National Union has no liability under the insurance policy to pay damages or defense costs incurred by Ehling in connection with any of the underlying lawsuits.

WHEREFORE, National Union requests entry of judgment declaring that it has no liability for damages or defense costs incurred in connection with any of the underlying lawsuits, together with an award of costs incurred in bringing this action and such other and further relief as the Court deems appropriate.

Respectfully Submitted,

_s/ W. Douglas Hall_____
W. Douglas Hall (FBN: 347906)
whall@carltonfields.com
Frederick T. Hawkes (FBN: 307629)
fhawkes@carltonfields.com
Robert W. Pass (FBN: 0183169)
rpass@carltonfields.com
CARLTON FIELDS, P.A.
P.O. Drawer 190
Tallahassee, FL 32302
Telephone:    (850) 224-1585
Facsimile:    (850) 222-0398

Attorneys for National Union Fire Insurance
Company of Pittsburgh, PA and AIG Domestic
Claims, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of foregoing was filed

electronically pursuant to N.D. Fla. Loc. R. 5.1 this 23rd____ day of January, 2006.

_s/ W. Douglas Hall_____
W. DOUGLAS HALL

12

# American International Companies®

### Insurance Company Supervisory & Vicarious Liability and Insurance Agents Professional Liability Insurance Policy

_ AIU Insurance Company
_ American International South Insurance Company
_ Birmingham Fire Insurance Company of Pennsylvania
_ Granite State Insurance Company

_ Illinois National Insurance Company
X National Union Fire Insurance Company of Pittsburgh, Pa.
_ National Union Fire Insurance Company of Louisiana
_ New Hampshire Insurance Company

(each of the above being a capital stock company)

POLICY NO.: 985-88-28

RENEWAL OF: N/A

NOTICE: THIS IS A CLAIMS-MADE FORM. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE.

## DECLARATIONS

Item 1. NAMED INSURED: GE FINANCIAL ASSURANCE

MAILING ADDRESS: 3135 EASTON TURNPIKE
FAIRFIELD, CT 06431-0001

Item 2. POLICY PERIOD: From: JANUARY 1, 2003    To: JANUARY 1, 2004
(12:01 A.M. standard time at the address stated in Item 1.)

Item 3. LIMIT OF LIABILITY: $10,000,000    aggregate for Coverage B (including Defense Costs & Damages).

The limit of the Insurer's liability for all amounts payable hereunder in settlement or satisfaction of Claims covered under this policy shall be subject to one of the following Sub-Limits of Liability:

a. $1,000,000    for Damages and Defense Costs arising from a Wrongful Act or Interrelated Wrongful Acts resulting in a Claim(s) made against:
(i)    one Insured Agent; or
(ii)    the Named Insured; or
(iii)    both one Insured Agent and the Named Insured.

b. $1,000,000    for Damages and Defense Costs arising from a Wrongful Act or Interrelated Wrongful Acts resulting in a Claim(s) made against:
(i)    more than one Insured Agent; or
(ii)    both more than one Insured Agent and the Named Insured.

**EXHIBIT**

A

c. $ <u>1,000,000</u>                for Damages and Defense Costs arising from a class action suit (certified or non-certified) alleging a Wrongful Act or Interrelated Wrongful Acts resulting in a Claim made against:

    (i)     the Named Insured; or

    (ii)    both the Named Insured and more than one Insured Agent

Item 4.   DEDUCTIBLE: (applicable to Damages and Defense Costs)

a.    Named Insured Non-Class Action Deductible:

$ <u>N/A</u>                for Damages and Defense Costs arising from a Wrongful Act or Interrelated Wrongful Acts. The Named Insured Deductible shall apply to all Insureds under this policy when a Claim(s) is suited and made against:

    (i)     the Named Insured; or

    (ii)    both the Named Insured and one or more Insured Agents.

b.    Named Insured Class Action Deductible: (Shall only apply if Coverage C is elected)

$ <u>N/A</u>                for Damages and Defense Costs arising from a Class Action suit (certified or non-certified) alleging a Wrongful Act or Interrelated Wrongful Acts. The Named Insured Class Action Deductible shall apply under this policy when a Claim(s) is suited and made against.

    (i)     the Named Insured; or

    (ii)    both the Named Insured or one or more Insured Agents.

*In the event a class action is not certified prior to final disposition of the suit, the deductible in Item 4a shall apply and the Insurer shall reimburse the Named Insured for all Damages and Defense Costs in excess of the deductible stated in 4a above, subject to the Limit of Liability stated in Item 3b on the Declarations page.*

c.    Insured Agent Deductible:

$ <u>500</u>                for Damages and Defense Costs arising from a Wrongful Act or Interrelated Wrongful Acts in connection with products of the Named Insured;

$ <u>1,000</u>                for Damages and Defense Costs arising from a Wrongful Act or Interrelated Wrongful Acts in connection with any other covered "outside product;

<u>IN EITHER CASE:</u>

The Insured Agent Deductible shall apply severally to each Insured Agent when a Claim(s) is:

    (i)     suited and made against one or more Insured Agents and not against the Named Insured; or

    (ii)    not suited.

In no event shall the total amount of Insured Agent Deductibles applied to the same Wrongful Act or Interrelated Wrongful Acts exceed in the aggregate the Named Insured Non-Class Action Deductible amount stated above.

Item 5.    PREMIUM:    $900,000

Item 6.    COVERAGES: Only those of the Coverages designated as "covered" by the corresponding letter
for the coverage (for example the letter A(a) in the column under the heading "COVERED" next
to where they are listed below are afforded coverage by this policy.  Absence of an entry
means not covered.

| | COVERED | NOT COVERED |
|---|---|---|
| COVERAGE A(a): | | X |
| COVERAGE A(b): | | X |
| COVERAGE B: | X | |
| COVERAGE C: | | X |

Item 7.    NAME AND ADDRESS OF INSURER ("Insurer"):
(This policy is issued by the insurance company indicated below.)

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
175 WATER ST
NEW YORK, NY 10038

Producer:    *AON CONSULTING INC*
*685 THIRD AVENUE, 12TH FLOOR*
*NEW YORK, NY 10017*

By_____
AUTHORIZED REPRESENTATIVE

68909 (10/97)                    3

# American International Companies®
## INSURANCE COMPANY SUPERVISORY & VICARIOUS LIABILITY
## AND INSURANCE AGENTS PROFESSIONAL LIABILITY INSURANCE POLICY

_ AIU Insurance Company                         _ Illinois National Insurance Company
_ American Home Assurance Company               X National Union Fire Insurance Company of Pittsburgh, Pa.
_ Birmingham Fire Insurance Company of Pennsylvania   _ National Union Fire Insurance Company of Louisiana
_ Granite State Insurance Company               _ New Hampshire Insurance Company

(each of the above being a capital stock company)

NOTICE: THIS IS A CLAIMS-MADE FORM. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE
PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ONLY
THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY
PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.
PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH
YOUR INSURANCE AGENT OR BROKER.

NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES SHALL BE REDUCED BY
AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE
SHALL BE APPLIED AGAINST THE DEDUCTIBLE.

In consideration of the payment of the premium, and in reliance upon the statements in the Application attached and
made a part of this policy, and subject to the terms and conditions of this policy, the insurance company designated
in Item 6 of the Declarations, herein called the "Insurer", agrees as follows:

1.    INSURING AGREEMENTS

      COVERAGE A: INSURANCE COMPANY SUPERVISORY & VICARIOUS LIABILITY
      INSURANCE

      This policy shall pay the Damages and Defense Costs of the Named Insured arising from any Claim or
      Claims first made against the Named Insured, with or without any Claim or Claims made against an Insured
      Agent, during the Policy Period or any Discovery Period (if applicable) and reported to the Insurer pursuant
      to the terms of this policy for any actual or alleged:

      (a)    Wrongful Act of the Named Insured arising out of, based upon or attributable to the General
             Supervision of an Insured Agent, or

      (b)    Vicarious Liability of the Named Insured

      arising solely out of the Wrongful Act of an Insured Agent in the performance of or failure to perform
      Professional Services.

      Coverage A of this policy shall apply only if the underlying Wrongful Act of the Insured Agent is otherwise
      covered under the terms and conditions of this policy.

      The Insurer has the right but not the duty to defend the Named Insured for Claim(s) which would be
      covered under Coverage A. The Named Insured shall defend and contest any Claim(s) made hereunder.
      However, the Insurer shall reimburse, at the written request of the Named Insured, Defense Costs prior to
      the final disposition of any Claim(s), subject to Clause 9, Defense Costs, Settlements, Judgments (Including
      Advancement of Defense Costs).

65910 (10/97)

## COVERAGE B: INSURANCE AGENTS PROFESSIONAL LIABILITY INSURANCE

(1)   This policy shall pay the Damages and Defense Costs of the Named Insured arising from any Claim or Claims first made against any Insured Agent during the Policy Period or any Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for a Wrongful Act of an Insured Agent or that of any other person for whom the Insured Agent is legally responsible, but only if such Wrongful Act occurs solely in the performance of or failure to perform Professional Services, and only if the Named Insured has assumed the defense of the Insured Agent pursuant to the following paragraph.

The Named Insured has the right but not the duty to assume the defense of any Claim(s) made against an Insured Agent.  In the event the Named Insured assumes the defense of an Insured Agent, the Insurer shall reimburse, at the written request of the Named Insured, Defense Costs prior to the final disposition of any Claim(s), subject to Clause 9, Defense Costs, Settlements, Judgments (Including Advancement of Defense Costs).

(2)   In the event the Named Insured does not assume the defense of any Claim(s) made against an Insured Agent pursuant to Coverage B(1) or Coverage C below, this policy shall pay on behalf of the Insured Agent Damages and Defense Costs resulting from any Claim or Claims first made against the Insured Agent during the Policy Period or any Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any Wrongful Act of the Insured Agent, but only if such Wrongful Act occurs solely in the performance of or failure to perform Professional Services.  The Insurer will defend any such Claim(s) against the Insured Agent, even if the allegations in any such Claim(s)  are groundless, false or fraudulent, subject to Clause 9, Defense Costs, Settlements, Judgments (Including Advancement of Defense Costs), but only when the Insured Agent is not being defended by the Named Insured pursuant to Coverage B(1) above.

## COVERAGE C: CLASS ACTION COVERAGE FOR NAMED INSURED AND INSURED AGENTS

Coverage C may only be elected if the Named Insured has elected Coverage A(a) and/or A(b) of the policy. Upon election of Coverage C, as indicated in Item. 6 of the Declarations, this policy shall pay the Damages and Defense Costs arising from a Class Action suit (whether certified or non-certified) first made against the Named Insured with or without any Class Action suit or suits made against an Insured Agent during the Policy Period (if applicable) and reported to the Insurer pursuant to this policy for any actual or alleged Wrongful Act or  Interrelated Wrongful Act arising solely out of the Wrongful Act of an Insured Agent in the performance of or failure to perform Professional Services.

Coverage C of this policy shall apply only if the underlying Wrongful Act of the Insured Agent is otherwise covered under the terms and conditions of this policy.

In the event the Named Insured does not elect Coverage C, this policy shall pay on behalf of the Insured Agent(s) Damages and Defense Costs resulting from any Class Action suit (certified or non-certified) first made against the Insured Agent during the Policy Period or any Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any Wrongful Act of the Insured Agent, but only if such Wrongful Act occurs solely in the performance of or failure to perform Professional Services. In all cases described herein the Insured Agent Deductible stated in Item 4c shall apply.  The Named Insured retains the right but not the duty to assume the defense of any Class Action suit made against an Insured Agent.  However, if the Named Insured does not assume the defense of any Class Action suit made against the Insured Agent this policy will respond as stated in Coverage B(2) above.

2.     DEFINITIONS

(a)   "Claim/Class Action " means:

   (1)   any demand for monetary relief; or

   (2)   a civil, criminal, administrative or arbitration proceeding for monetary relief which is commenced by:

      (i)   --service of a complaint or similar proceeding; or
      (ii)   return of an indictment (in the case of a criminal proceeding); or
      (iii)   receipt or filing of a notice of charges.

   A Claim or Class Action  suit is "suited" when a lawsuit, civil, criminal, administrative or arbitration proceeding is formally commenced, pursuant to (i), (ii) or (iii) above or the requirements, laws, rules and regulations of the jurisdiction where the Claim or Class Action suit is asserted.

(b)   "Continuity Date" means:

   (1)   with respect to the Named Insured, the effective date of the Named Insured's first Insurance Company Supervisory & Vicarious Liability and Insurance Agents Professional Liability Insurance policy issued by the Insurer or any member company of American International Group, Inc. and continuously renewed and maintained in effect thereafter with the Insurer or any member company of American International Group,   Inc. to the inception date of this policy.

   (2)   with respect to any Insured Agent, the earlier of :

      (i)   the effective date of the Insured Agent's first Insurance Agents Professional Liability Insurance policy issued to the Insured Agent; or

      (ii)   the effective date the Insured Agent first became scheduled under an Insurance Company Supervisory & Vicarious Liability and Insurance Agents Professional Liability Insurance policy,

   issued by the Insurer or any member company of the American International Group, Inc. and continuously renewed and maintained in effect thereafter with the Insurer or any member company of the American International Group, Inc. to the inception date of this policy.

(c)   "Damages" means all sums which an Insured is legally obligated to pay for any Claim(s) or Class Action suit to which this insurance applies.  Damages shall not include any amount for which an Insured is not financially liable or which are without legal recourse to an Insured, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.  Damages shall include any taxes, fines and penalties incurred by a third party, other than an Insured, and which are included in such third party's Claim against an Insured.

(d)   "Defense Costs" shall mean reasonable and necessary fees, costs and expenses resulting solely from the investigation, adjustment, defense or appeal of any Claim or Class Action suit to which this insurance applies.  Defense Costs shall not include the cost of investigation and adjustment of any Claim(s) or Class Action suit by salaried employees of the Insurer or the Insured, but shall include the fees of any attorney hired to defend an Insured.  Defense Costs are only those fees, costs and expenses incurred by the Named Insured with the Insurer's consent, or incurred by the Insurer or at the Insurer's direction when the Insurer is defending an Insured.

(e)   "General Supervision" means the Named Insured's selection of an Insured Agent and its oversight and direction of the performance of an Insured Agent in the rendering of or failure to render Professional Services.

68910  (10/97)                    3

(f)     "Insured(s)" means:

    (1)     any Insured Agent(s); and/or

    (2)     the Named Insured, but only as respects coverage under Insuring Agreement, Coverage A, Insurance Company Supervisory & Vicarious Liability Insurance.

(g)     "Insured Agent(s)" means:

    (1)     any natural person who is a licensed life or accident and health insurance agent or general agent under contract with the Named Insured and is scheduled by the Insurer, which schedule is considered to be attached to and made part of this policy;

    (2)     any corporation, partnership, or other business entity engaging in Professional Services which is either owned or controlled by a natural person in (1) above or in which a natural person in (1) above is an employee and then only with respect to those operations of the corporation, partnership or other business entity directly related to the Professional Services provided by the natural person in (1) above. Furthermore, this extension shall not afford coverage for any actual or alleged Wrongful Act of the corporation, partnership, or other business entity, but shall only apply to Claim(s) or Class Action suit arising out of any actual or alleged Wrongful Act(s) of a natural person in (1) above;

    (3)     any natural person who was or is a partner, officer, director or employee of (1) or (2) above solely while acting within the scope of his/her duties as such and provided such natural person is not at the time of the alleged Wrongful Act a party to an agent, general agent, insurance broker or registered representative contract with any corporation, partnership, or other business entity engaging in Professional Services.

In all events, coverage as is afforded under this policy with respect to an Insured Agent shall only apply to a Claim(s) or a Class Action suit made against an Insured Agent after the Continuity Date of the Insured Agent pursuant to Definition 2(b)(2) above and for any Wrongful Act(s) committed or allegedly committed prior to the time such Insured Agent ceases to be an Insured Agent.

(h)     "Interrelated Wrongful Acts" means Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision. For the purposes of this definition, "causally connected" Wrongful Acts shall include, but are not limited to, all Wrongful Acts arising out of, based upon, or attributable to: (1) a related method of sale, marketing or illustration of a particular product; (2) an incident which affects more than one investor or customer in one or more policies, obligations or securities issued, sponsored or distributed by an entity or its subsidiaries or affiliates; or (3) any single occurrence or event.

(i)     "Named Insured" means the insurance company designated in Item 1 of the Declarations and any Subsidiary thereof.

(j)     "Policy Period" means the period from the inception date of this policy shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(k)     "Professional Services" shall mean those services rendered or required to be rendered in the Insured Agent's profession as:

(1)     a licensed life or accident and health insurance agent or general agent who is placing business with the Named Insured;

(2)     a licensed life or accident and health insurance agent or general agent who is placing business with insurance companies other than the Named Insured;

(3)     a licensed registered representative who services, sells, or attempts to sell securities approved by and distributed through the Named Insured's National Association of Securities Dealers ("NASD") licensed broker/dealer;

(4)     a licensed registered representative who services, sells, or attempts to sell mutual funds or variable products through any NASD licensed broker/dealer;

(5)     a notary public, but solely with respect to the performance of Professional Services described in paragraphs (1) through (4) above.

(6)     a general agent of the Named Insured, but solely while acting within the scope of his duties on behalf of the Named Insured, including but not limited to the recruitment, training and supervision of Insured Agents.

(l)     "Subsidiary" means:

(1)     a corporation of which the insurance company designated in Item 1 of the Declarations owns, on the inception date of the Policy Period, more than 50% of the issued and outstanding voting stock either directly or indirectly through one or more of its Subsidiaries;

(2)     a corporation which becomes a Subsidiary during the Policy Period but only upon the condition that within 90 days of its becoming a Subsidiary, the insurance company designated in Item 1 of the Declarations shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary.

A corporation becomes a Subsidiary when the insurance company designated in Item 1 of the Declarations owns more than 50% of the issued and outstanding voting stock either directly or indirectly through one or more of its Subsidiaries. A corporation ceases to be a Subsidiary when the insurance company designated in Item 1 of the Declarations ceases to own more than 50% of the issued and outstanding voting stock either directly or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded under this policy with respect to a Claim made against a Subsidiary shall only apply for any Wrongful Act(s) committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceases to be a Subsidiary.

(m)     "Vicarious Liability" means liability of the Named Insured arising out of, based upon or attributable to the Wrongful Act(s) of an Insured Agent. Vicarious Liability shall not include liability for any Wrongful Act(s) of the Named Insured.

(n)     "Wrongful Act" means any actual or alleged:

(1)     negligent act, error, or omission; or

    (2)     false arrest, detention or imprisonment; or

    (3)     the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; or

    (4)     wrongful entry or eviction or other invasion of the right of private occupancy.

3.      EXCLUSIONS

This Insurer shall not be liable to make any payment for Damages and Defense Costs in connection with a Claim or Class Action suit made against:

(a)    (1)    an Insured arising out of, based upon or attributable to any actual or alleged criminal, dishonest, malicious, knowingly wrongful or fraudulent act committed by or at the direction of the Insured; or

        (2)    an Insured arising out of, based upon or attributable to any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act (as amended), 18 USC Sections 1961 et seq., or any rules or regulations promulgated thereunder;

        however, if such allegations are not subsequently proven by a final judgment or other adjudication adverse to the Insured and are not admitted to by the Insured, then the Insured shall be entitled to all reasonable Defense Costs which would have been collectible under this policy;

(b)    an Insured for physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time, emotional distress, damage to or destruction of any property, including the loss of use thereof;

(c)    an Insured alleging, arising out of, based upon or attributable to the facts alleged, or to the same Wrongful Act or Interrelated Wrongful Acts alleged or contained, in any Claim or Class Action suit which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(d)    an Insured alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date, or alleging or derived from the same or substantially the same facts as alleged in such pending or prior litigation;

(e)    an Insured arising out of, based upon or attributable to any actual or alleged Wrongful Act or Interrelated Wrongful Acts occurring prior to the Continuity Date, if on or before such date any Insured knew or could have reasonably foreseen that such Wrongful Act or Interrelated Wrongful Acts could be the basis of a Claim or Class Action suit;

(f)    an Insured arising out of, based upon or attributable to the Insured's activities as an actuary, lawyer, accountant, real estate agent, real estate broker, or third party claims administrator;

(g)    an Insured arising out of, based upon or attributable to the insolvency, receivership, bankruptcy, liquidation or inability to pay, of any entity in which the Insured has placed funds or obtained coverage or invested funds for a client, including, but not limited to, the Named Insured, or any bank, banking firm, insurance company, benefit plan, broker/dealer, trust or investment vehicle;

(h)    an Insured arising out of, based upon or attributable to any commingling of funds or accounts;

(i)    the Named Insured alleging, arising out of, based upon or attributable to any one or more of the following:

        (1)    any failure or refusal to pay, or delay in the payment of, benefits due or alleged to have been due under any insurance contract or from any pension plan, welfare plan or other benefit plan;

    (2)    any lack of good faith or fair dealing in the handling of any claim or obligation arising out of or under any insurance contract or from any pension plan, welfare plan or other benefit plan;

(j)    an Insured arising out of, based upon or attributable to any pension plan, welfare plan or other benefit plan sponsored by any Insured or by any firm in which:

    (1)    any Insured has a financial interest;

    (2)    any Insured is a participant, named fiduciary, designated fiduciary, administrator or trustee as those terms are used in the Employee Retirement Income Security Act of 1974 as amended;

(k)    an Insured which is brought by or on behalf of any Insured under this policy;

(l)    an Insured for taxes, fines or penalties, or the multiplied portion of multiplied damages imposed against an Insured unless such taxes, fines or penalties are incurred by a third party, other than an Insured, and which are included in such third party's Claim against an Insured; furthermore, only where permitted by law, this policy shall cover, subject to all the terms, conditions and exclusions contained herein, up to $5,000 punitive, exemplary or multiplied damages, as part of and not in addition to the Limits of Liability otherwise afforded by this policy;

(m)    an Insured arising out of, based upon or attributable to the Insured making or stating any promises or guarantees as to interest rates or market values;

(n)    an Insured alleging, arising out of, based upon or attributable to:

    (1)    any business interference with client lists;

    (2)    any fees, commissions, brokerage monies or other charges for any Professional Services; provided, however, this exclusion shall not apply to Claims made against an Insured Agent by a client of the Insured Agent;

    (3)    any contract dispute between any Insureds, or between the Insureds and any other entities insurance companies or securities broker/dealers;

(o)    an Insured which is brought by any governmental authority or any self-regulatory or regulatory authority regardless of the capacity in which it is brought, or brought by the successors or assigns of any of the aforementioned; however, this exclusion shall not apply to a Claim brought by any of the aforementioned to enforce its rights as a direct client of the Insured in the ordinary course of business;

(p)    an Insured arising out of, based upon or attributable to any Wrongful Act committed or alleged to be committed directly or indirectly in connection with the sale or recommendation of any instrument issued by any limited partnership, master limited partnership, real estate investment trust or any affiliated organization of any of the foregoing;

(q)    an Insured arising out of, based upon or attributable to any solicitation, placement or referral of property and/or casualty insurance;

(r)    an Insured alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

    (1)    the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

    (2)    any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants,

including but not limited to a Claim alleging damage to the Named Insured or its securities holders;

Pollutants include, but is not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed;

(s)  an Insured arising out of, based upon or attributable to any obligation for which the Insured or any carrier as his insurer may be held liable under any workers compensation, unemployment compensation or disability benefits law or under any similar law;

(t)  an Insured arising out of, based upon or attributable to payment of employee benefits, wages, salaries or commissions;

(u)  an Insured for any publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy made by or at the direction of any Insured with the knowledge of the falsity thereof.

*NOTE: The Wrongful Act of any Insured Agent under Coverage B of this policy shall not be imputed to any other Insured Agent under Coverage B for the purpose of determining the applicability of the exclusions within the policy.*

4.    LIMIT OF LIABILITY - (INCLUDING DEFENSE COSTS)

The aggregate Limit of Liability stated in Item 3 of the Declarations is the maximum limit of the Insurer's liability for all Damages and Defense Costs arising out of all Claims or Class Action suits covered under this policy. The aggregate Limit of Liability applies regardless of the number of Insureds, Claims or Class Action suits or Wrongful Acts.

The limit of the Insurer's liability for all amounts payable hereunder in settlement or satisfaction of all Claim(s) or Class Action suit(s) (including Defense Costs) covered under this policy shall be subject to one of the following Sub-Limits of Liability provided in paragraphs (A), (B) or (C) below. The applicable Sub-Limits of Liability shall apply to all Claims or Class Action suits alleging the same Wrongful Act or Interrelated Wrongful Acts and is dependent upon the number of Insureds against whom Claim(s) is made.

The Sub-Limits of Liability shall be reduced by Defense Costs as incurred and Damages shall be paid in the order that the Insurer, in its absolute discretion, deems appropriate. The Sub-Limits of Liability shall not, under any circumstances, serve to increase the aggregate Limit of Liability stated in Item 3 of the Declarations. The Sub-Limits of Liability are subject to the aggregate Limit of Liability and accordingly, may not be available in whole or in part depending on the amount of reduction of the aggregate Limit of Liability. The Insurer shall not be obligated to defend any Claim(s) or reimburse any Insured after the applicable Sub-Limit of Liability or aggregate Limit of Liability stated in Item 3 of the Declarations has been exhausted, whichever occurs first.

A.    FOR DAMAGES AND DEFENSE COSTS ARISING FROM A WRONGFUL ACT OR INTERRELATED WRONGFUL ACTS RESULTING IN CLAIM(S) MADE AGAINST (i) ONE INSURED AGENT; OR (ii) THE NAMED INSURED; OR (iii) BOTH ONE INSURED AGENT AND THE NAMED INSURED.

The Sub-Limit of Liability stated in Item 3a of the Declarations is the limit of the Insurer's liability for Damages and Defense Costs payable hereunder arising from a Wrongful Act or Interrelated Wrongful Acts regardless of the number of Claims or Class Action suits, Insureds or claimants

involved. This Sub-Limit of Liability shall apply to all Insureds under this policy when a Claim(s) or Class Action suit is made against:

(i)     one Insured Agent; or
(ii)     the Named Insured; or
(iii)     both one Insured Agent and the Named Insured.

If additional Claims are subsequently made against the Insured Agent and/or the Named Insured which arise out of the same Wrongful Act or Interrelated Wrongful Acts as Claims already made and reported to the Insurer, all such Claims, whenever made, shall be considered first made within the Policy Period or any Discovery Period (if applicable) in which the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made and reported to the Insurer. Such additional Claims, along with all other previously made Claims, shall be subject to a single Sub-Limit of Liability as stated in Item 3a of the Declarations.

However, if additional Claims are subsequently made against the Insured Agent and/or the Named Insured, as well as against any other Insured Agents, which arise out of the same Wrongful Act or Interrelated Wrongful Acts as Claims already made and reported to the Insurer, all such Claims, whenever made, shall be considered first made within the Policy Period or any Discovery Period (if applicable) in which the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made and reported to the Insurer. Such additional Claims, along with all other previously made Claims, shall thereafter be subject to a single Sub-Limit of Liability as stated in Item 3b of the Declarations (more fully described below).

B.     FOR DAMAGES AND DEFENSE COSTS ARISING FROM A WRONGFUL ACT OR INTERRELATED WRONGFUL ACTS RESULTING IN CLAIM(S) MADE AGAINST: (i) MORE THAN ONE INSURED AGENT; OR (ii) BOTH MORE  THAN ONE INSURED AGENT AND THE NAMED INSURED.

The Sub-Limit of Liability stated in Item 3b of the Declarations is the limit of the Insurer's liability for Damages and Defense Costs payable hereunder arising from a Wrongful Act or Interrelated Wrongful Acts regardless of the number of Claims, Insureds or claimants involved. This Sub-Limit of Liability shall apply to all Insureds under this policy when a Claim(s) is made against:

(i)     more than one Insured Agent; or
(ii)     both more than one Insured Agent and the Named Insured.

If additional Claims are subsequently made against the Insureds which arise out of the same Wrongful Act or Interrelated Wrongful Acts as Claims already made and reported to the Insurer, all such Claims, whenever made, shall be considered first made within the Policy Period or any Discovery Period (if applicable) in which the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made and reported to the Insurer. Such additional Claims, along with all other previously made Claims, shall be subject to a single Sub-Limit of Liability as stated in Item 3b of the Declarations.

This Sub-Limit of Liability shall apply and be in effect throughout the settlement and/or satisfaction of all such Claims regardless of whether an Insured Agent is later dismissed from a Claim which would otherwise cause the Sub-Limit of Liability stated in Item 3a  of                the Declarations to be applicable.

C.     FOR DAMAGES AND DEFENSE COSTS ARISING FROM ALL CLASS  ACTION SUITS (CERTIFIED OR NON-CERTIFIED) ALLEGING A WRONGFUL ACT OR INTERRELATED WRONGFUL ACTS RESULTING IN CLAIM(S) MADE AGAINST: (i) THE NAMED INSURED; OR (ii) BOTH THE NAMED INSURED AND MORE THAN ONE INSURED AGENT.

The Sub-Limit of Liability stated in Item 3c of the Declarations is the limit of the Insurer's liability for Damages and Defense Costs payable hereunder arising from a Class Action suit (certified or non-certified) alleging a Wrongful Act or Interrelated Wrongful Acts regardless of the number of Claims, Insureds or claimants involved. This Sub-Limit of Liability shall apply to all Insureds under this policy when a Class Action suit is made against:

(i)     the Named Insured; or
(ii)    both the Named Insured and more than one Insured Agent.

This Sub-Limit of Liability shall apply and be in effect throughout the settlement and/or satisfaction of all such Claims regardless of whether an Insured Agent is later dismissed from a Claim which would otherwise cause the Sub-Limit of Liability stated in Item 3a of the Declarations to be applicable.

5.      DEDUCTIBLE

The Insurer shall only be liable for those amounts payable hereunder in settlement and/or satisfaction of Claim(s) or Class Action suit (including Defense Costs) which are in excess of the applicable Deductible stated in Item 4 of the Declarations.

The Deductible stated in Item 4a of the Declarations, Named Insured Non-Class Action Deductible, shall apply to Damages and Defense Costs arising from a Wrongful Act or Interrelated Wrongful Acts. The Named Insured Deductible shall apply to all Insureds under this policy when a Claim(s) is suited and made against:

(i)     the Named Insured; or
(ii)    both the Named Insured and one or more Insured Agents.

The Deductible stated in Item 4b of the Declarations, Named Insured Class Action Deductible, shall apply to Damages and Defense Costs arising from a class action suit (certified or non-certified) alleging a Wrongful Act or Interrelated Wrongful Acts. The Named Insured Class Action Deductible shall apply under this policy when a Class Action is made against:

(i)     the Named Insured; or
(ii)    both the Named Insured or one or more Insured Agents.

In the event a class action is not certified prior to final disposition of the suit, the deductible in Item 4a on the Declarations page shall apply and the Insurer shall reimburse the Named Insured for all Damages and Defense Costs in excess of the deductible stated in 4a of the Declarations page subject to the Limit of Liability stated in Item 3b on the Declarations page.

The Deductible stated in Item 4c of the Declarations, Insured Agent Deductible, shall apply to each Insured Agent for Damages and Defense Costs arising from a Wrongful Act or Interrelated Wrongful Acts. The Insured Agent Deductible shall apply severally to each Insured Agent when a Claim(s) is:

(i)     suited and made against one or more Insured Agents and not against the Named Insured; or
(ii)    not suited.

In no event shall the total amount of Insured Agent Deductibles applied to the same Wrongful Act or Interrelated Wrongful Acts exceed in the aggregate the Named Insured Deductible amount stated in Item 4a of the Declarations.

6.      DISCOVERY PERIOD

A.    OPTIONAL POLICY DISCOVERY PERIOD

If the Insurer or the Named Insured shall cancel or refuse to renew this policy, the Named Insured shall have the right, upon payment of an additional premium of 75% of the total annual premium, to purchase a period of twelve (12) months following the effective date of such cancellation or non-renewal in which to give written notice to the Insurer of Claim(s) first made during the Optional Policy Discovery Period for Wrongful Acts occurring prior to the effective date of such cancellation or non-renewal and otherwise covered by this policy.

The rights contained in this clause shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within sixty (60) days of the effective date of cancellation or non-renewal. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

B.    TERMINATED AGENT DISCOVERY PERIOD

Upon termination of his status as an Insured Agent during the Policy Period, the terminated Insured Agent shall have an automatic one (1) year Terminated Agent Discovery Period, effective as of his termination date, to report Claim(s) under this policy but only for Wrongful Acts which occurred prior to his/her termination date.

C.    RETIRED/DISABLED AGENT DISCOVERY PERIOD

Upon retirement, death or disability of an Insured Agent during the Policy Period, the retired, deceased (or the estate of the deceased Insured Agent on his/her behalf; or the Named Insured on the deceased Insured Agent's behalf) or disabled Insured Agent shall have an unlimited Retired/Disabled Agent Discovery Period, effective as of his retirement, death or disability to report Claim(s) under this policy but only for Wrongful Acts which occurred prior to the date of his/her retirement, death or disability.

The provisions of any Discovery Period shall be part of and not in addition to the applicable Sub-Limit of Liability and the aggregate Limit of Liability for the Policy Period.

7.    TERRITORY

This policy applies to Wrongful Acts committed anywhere in the world provided that a Claim is made or a suit is brought against the Insured in the United States of America, its territories or possessions or Canada.

8.    NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named on the Declarations at the address indicated in Item 6 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a)    The Named Insured or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim or Class Action suit made against an Insured as soon as possible and either:

(1)    anytime during the Policy Period or during any Discovery Period (if applicable); or

Case 3:05-cv-00431-RHW-CSC     Document 15     Filed 01/23/2006     Page 27 of 38

(2)    within 30 days after the end of the Policy Period or any Discovery Period (if applicable), as long as such Claim or Class Action suit is reported no later than 30 days after the date such Claim or Class Action suit was first made against an Insured.

(b)    If written notice of a Claim or Class Action suit has been given to the Insurer pursuant to Clause 8(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act or Interrelated Wrongful Acts alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(c)    If during the Policy Period or during any Discovery Period (if applicable) the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim or Class Action suit being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such Claim, with full particulars as to dates, persons and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act or Interrelated Wrongful Acts alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

9.    DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING ADVANCEMENT OF DEFENSE COSTS)

The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Damages and Defense Costs under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim or Class Action suit.

The Insurer may make any settlement of any Claim or Class Action suit it deems expedient with respect to any Insured subject to such Insured's written consent. If any Insured withholds consent to such settlement which is agreeable to the claimant, the Insurer's liability for all Damages and Defense Costs on account of such Claim or Class Action suits shall not exceed the amount for which the Insurer could have settled such Claim or Class Action suit plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer.

The Insurer shall have the right to effectively associate with the Insureds in the defense of any Claim, including but not limited to negotiating a settlement. The Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

Under Coverage A,B(1) and C of this policy, the Insurer has the right but not the duty to defend any Claim(s) or Class Action suits. The Named Insured shall defend and contest any Claim(s) made thereunder. Except as hereinafter stated, the Insurer shall reimburse, at the written request of the Named Insured, Defense Costs prior to the final disposition of any Claim(s) or Class Action suit. Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds, severally according to their respective interests, in the event and to the extent that the Insureds shall not be entitled under the terms and conditions of this policy to payment of Defense Costs.

Under Coverage B(2) of this policy, the Insurer shall have the right and duty to defend any suit, with counsel of its selection, against an Insured Agent for any alleged Wrongful Act even if such Claim(s) or Class Action suit(s) are groundless, false or fraudulent.

The Insurer shall not be obligated to defend any Claim(s) or Class Action suits or reimburse any Insured after the applicable Sub-Limit of Liability or aggregate Limit of Liability stated in Item 3 of the Declarations has been exhausted, whichever occurs first.

10.    ALLOCATION OF UNINSURED ALLEGATIONS AGAINST THE NAMED INSURED

With respect to (i) Defense Costs jointly incurred by, (ii) any joint settlement made by, and/or (iii) any adjudicated judgment of joint and several liability against the Named Insured and any Insured Agent(s), in connection with any Claim(s) or Class Action suit other than a covered Claim under Coverage A, the Named Insured and the Insured Agent(s) and the Insurer agree to use their best efforts to determine a fair and proper allocation of the amounts as between the Named Insured, the Insured Agent(s) and the Insurer, taking into account the relative legal and financial exposures of and the relative benefits obtained by the Insured Agent(s) and the Named Insured.

11.    ASSISTANCE AND COOPERATION OF THE INSURED

The Insured shall cooperate with the Insurer and, upon the Insurer's request, assist in making settlements, in the conduct of suits or proceedings and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured. The Insured shall attend hearings, trials and depositions and shall assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not admit any liability, voluntarily make any payment, assume any obligation, or incur any expense without the prior written consent of the Insurer. Any such undertaking by the Insured without the written consent of the Insurer shall be made at the Insured's own cost.

12.    ACTION AGAINST INSURER

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the full amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Insurer. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insured to determine the Insured's liability nor shall the Insurer be impleaded by the Insured or his legal representative.

13.    SUBROGATION

If any person or organization to or for whom the Insurer makes payment under this policy has rights to recover damages from another, those rights are transferred to the Insurer. That person or organization must do everything necessary to secure those rights of the Insurer and must do nothing to impair or prejudice such rights.

14.    OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided under this policy shall apply only as excess over any other valid and collectible insurance. This policy applies to the amount of Damages and Defense Costs which is more than the limits of insurance of the other insurance and the total of all deductibles and self-insured amounts under such other insurance. This policy shall not pay more than the applicable Sub-Limit of Liability or the aggregate Limit of Liability stated in Item 3 of the Declarations.

If any Claim under this policy is also covered by one or more other policies issued by the Insurer, or by any other member company of the American International Group, Inc. to the persons or entities insured under

68910  (10/97)                                13

this policy or to any person who controls, is controlled by, or is affiliated by common control with, said persons or entities, then with respect to any such    Claim(s) or Class Action suits:

(a)    the Insurer shall not be liable under this policy for a greater proportion of the loss than the applicable Sub-Limit of Liability or aggregate Limit of Liability under this policy bears to the total limits of liability of all such policies, and

(b)    the maximum amount payable under all such policies shall not exceed the limit of liability of that policy referred to above which has the highest applicable limit of liability.

15.    CANCELLATION

This policy may be canceled by the Named Insured by surrender of this policy to the Insurer or by giving written notice to the Insurer stating when thereafter such cancellation shall be effective. This policy may also be canceled by the Insurer mailing to the Named Insured by registered, certified or other first class mail, at the Named Insured's address shown in Item 1 of the Declarations, written notice stating when, not less than sixty (60) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice and this policy shall terminate at the date and hour specified in such notice.

If this policy shall be canceled by the Named Insured, the Insurer shall retain the customary short rate proportion of the premium herein.

If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium herein.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

16.    ASSIGNMENT

Assignment of interest under this policy shall not bind the Insurer until its consent is endorsed hereon; however, subject otherwise to the terms hereof, this policy shall cover the estate, heirs, legal representative or assigns of the Insured in the event of the Insured's death, bankruptcy, insolvency or being adjudged incompetent.

17.    BANKRUPTCY

Bankruptcy or insolvency of the Insured or the Insured's estate shall not relieve the Insurer of any obligation hereunder.

18.    NOTICE TO AGENT AND CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Insurer from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by written endorsement issued to form a part of this policy and signed by an authorized representative of the Insurer.

19.    ARBITRATION

All disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of damages, shall be submitted to the American Arbitration Association under and in accordance with its then prevailing

commercial arbitration rules. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted by such rules, the arbitrators shall be three disinterested individuals having knowledge of the insurance issues relevant to the matters in dispute.

**20.    DUTIES OF NAMED INSURED**

The Named Insured shall be the sole agent of all Insureds hereunder for the purpose of effecting or accepting any amendments to or cancellation of this policy, for the payment of premium and the receipt of any return premiums that may become due under this policy, and the exercising or declining to exercise any right to an extended reporting period.

**21.    REPRESENTATIONS**

By accepting this policy, the Insureds agree that:
(a)    The statements in the Declarations and Applications made part of this policy are accurate and complete;
(b)    Those statements are based on representations the Insured made to the Insurer; and
(c)    The Insurer has issued this policy in reliance upon the Insured's representations.

**22.    HEADINGS**

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed by its President and a Secretary on the Declarations page and signed by a duly authorized representative of the Insurer.

_____
PRESIDENT

_____
SECRETARY

68910  (10/97)                    15

ENDORSEMENT # *1*

This endorsement, effective 12:01 am   *January 1, 2003*   forms a part of
policy number   *985-88-28*
issued to   *GE FINANCIAL ASSURANCE*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

AMEND DEFINITION (b)

In consideration of the premium charged, it is hereby understood and agreed that
DEFINITION (b) "Continuity Date" shall be deleted and replaced with the following:

(b)   "Continuity Date" means:

(1)   with respect to the Named Insured, the effective date of the Named
Insured's first Insurance Company Supervisory & Vicarious Liability and
Insurance Agents Professional Liability Insurance policy issued by the Insurer
or any member company of American International Group, Inc. and
continuously renewed and maintained in effect thereafter with the Insurer or
any member company of American International Group, Inc. to the inception
date of this policy.

(2)   with respect to any Insured Agent, the earlier of :

(i)   the effective date the Agent contracted with the Named Insured; or

(ii)   the effective date the Insured Agent purchased their first Insurance
Agents Professional Liability Insurance policy and continuously
renewed and maintained this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 1*

(2/90)   *COPY*

<u>ENDORSEMENT # 2</u>

This endorsement, effective 12:01 am    *January 1, 2003*    forms a part of
policy number    *985-88-28*
issued to    *GE FINANCIAL ASSURANCE*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

PROMISSORY NOTE/VIATICAL/CALLABLE CD/"LEASES EXCLUSION

In consideration of the premium charged it is hereby understood and agreed that the
EXCLUSIONS SECTION paragraph (m) is amended by the addition of the following at the
end thereof:

6)    promissory notes, i.e. an investment whereby the maker agrees to pay to
      the payee a specific sum of money either on demand or at fixed or
      determinable future date;

7)    viatical products including viatical settlement and viatical contracts;

8)    callable certificates of deposit; or

9)    leases (including but not limited to ETS Pay Phones).

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 2*

(2/90)    *COPY*

ENDORSEMENT # 3

This endorsement, effective 12:01 am      *January 1, 2003*      forms a part of
policy number    *985-88-28*
issued to    *GE FINANCIAL ASSURANCE*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## AMEND DISCOVERY CLAUSE

In consideration of the premium charged, it is hereby understood and agreed that Section 6. "Discovery Period" A. Optional Policy Discovery Period is deleted in its entirety and replaced with the following:

6.    DISCOVERY PERIOD

A.    OPTIONAL POLICY DISCOVERY PERIOD

If the Insurer shall refuse to renew this policy, the Named Insured shall have the right, upon payment of an additional to be determined premium, to purchase a period of twelve (12) months following the effective date of such cancellation or non-renewal in which to give written notice to the Insurer of Claim(s) first made during the Optional Policy Discovery Period for Wrongful Acts occurring prior to the effective date of such cancellation or non-renewal and otherwise covered by this policy.

The rights contained in this clause shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within sixty (60) days of the effective date of cancellation or non-renewal. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 3*

(2/90)    *COPY*

ENDORSEMENT # 4

This endorsement, effective 12:01 am    *January 1, 2003*    forms a part of
policy number    *985-88-28*
issued to    *GE FINANCIAL ASSURANCE*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

In consideration of the premium charged, it is hereby understood and agreed that this insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of or in connection with "terrorism" including but not limited to, any contemporaneous or ensuing loss caused by fire, looting or theft.

DEFINITION - The following definition of terrorism shall apply:

"Terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

"Terrorism" includes a certified act of terrorism defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 4*

# INDEPENDENT CONSULTANT AGREEMENT

This Independent Consultant Agreement ("Agreement") is made and effective this Date
_10 - 03 -02_ by and between _CHARLES EHLING_ ("Consultant")
and Meridian Benefit Inc. ("Company").

Now, therefore, Consultant and Company agree as follows:

## 1. Engagement.
Company hereby engages Consultant, and Consultant accepts engagement, to provide to
company the following services:

**Description of Services**

## 2. Term.
Consultant shall provide services to Company pursuant to this Agreement for a term
commencing on above date and ending on termination.

## 3. Understanding.
Consultant shall not:

1. Make any representations to a potential customer that contradict, misrepresent or
   disparage MBI's products or services in any way;
2. Misrepresent the nature of MBI's products and/or services.

If the Consultant does not properly represent the nature of MBI's products and/or
services, in addition to all other remedies available to it, MBI may immediately terminate
this Agreement, and may discontinue payment of any fees as MBI deems appropriate in
its sole discretion to protect MBI's interests. Additionally, the consultant agrees to
indemnify and hold harmless MBI from any and all claims, suits, complaints or
administrative proceedings relating to any misrepresentation of the products and/or
services of MBI, including costs, fines, damages and reasonable attorney's fees.

Consultant understands and acknowledges:

1. MBI makes no representation as to the sufficiency, appropriateness or
   applicability of its Plan or Plans to the Consultant's customers or their employees.
2. MBI does not purport to hold any operating, business, franchise or other so-called
   "licenses" or certificate of authority from any state in the United States.
3. MBI administers, adjudicates and otherwise manages ERISA-based and
   compliant health-care programs;
4. MBI cannot and does not opine was to the appropriateness of any Plan or program
   elected by the customers of the Consultant.

1

5/06

Rev: 1.2

**EXHIBIT**

**B**

4. <u>Time.</u>

Consultant's daily schedule and hours worked under this Agreement on a given day shall generally be subject to Consultant's discretion. Company relies upon Consultant to devote sufficient time as is reasonably necessary to fulfill the spirit and purpose of this Agreement.

5. <u>Payment.</u>

Company shall pay Consultant a consulting fee based upon an agreed amount prior to submission of client case. Payment shall be made on or before the 10th of the month following collection of necessary funding. Consultant shall bear all of Consultant's expenses incurred in the performance of this Agreement. Payments of such fees will continue until total amount falls below $100.00 per month, at which time the obligation of the Company shall terminate.

6. <u>Confidentiality.</u>

During the term of this Agreement, and thereafter for a period of five years, Consultant shall not, without the prior written consent of Company, disclose to anyone any Confidential Information. "Confidential Information" for the purposes of this Agreement shall include Company's proprietary and confidential information such as, but not limited to, customer lists, business plans, marketing plans, financial information, designs, drawing, specifications, models, software, source codes and object codes. Confidential Information shall not include any information that:

    A.  is disclosed by Company without restriction;

    B.  becomes publicly available through no act of Consultant;

    C.  is rightfully received by Consultant from a third party.

7. <u>Termination.</u>

A.  This Agreement may be terminated by Company as follows:

    i.  If Consultant is unable to provide the consulting services by reason of illness, disability, incapacity or death.

    ii.  Breach or default of any obligation of Consultant.  Misrepresentation that Meridian offers products to be other than an ERISA compliant self funded plans. Willfully misrepresenting that Meridian Benefit Inc. is anything other than a Third Party Administrator (TPA).

    iii.  Breach or default by Consultant of any other material obligation in this Agreement, which breach or default is not cured within five (5) days of written

Rev: 1.2

notice from Company.

    iv. Upon thirty days notice to Consultant.

    v. Termination for cause will result in the forfeiture of all fees to Consultant.

B. Consultant may terminate this Agreement as follows:
    i. Breach or default of any material obligation of Company, which breach or default is not cured within five (5) days of written notice from Consultant; or

    ii. If Company files protection under the federal bankruptcy laws, or any bankruptcy petition or petition for receivership is commenced by a third party against Company, any of the foregoing of which is not dismissed within sixty (60) days.

8. **Independent Consultant**.
Consultant is and throughout this Agreement shall be an independent consultant and not an employee, partner or agent of Company. Consultant shall not be entitled to nor receive any benefit normally provided to Company's employees such as, but not limited to, vacation payment, retirement, health care or sick pay. Company shall not be responsible for withholding income or other taxes from the payments made to Consultant. Consultant shall be solely responsible for filing all returns and paying any income, social security or other tax levied upon or determined with respect to the payments made to Consultant pursuant to this Agreement.

9. **Tools and Supplies**.
Unless otherwise agreed to by Company in advance, Consultant shall be solely responsible for procuring, paying for and maintaining any computer equipment, software, paper, tools or supplies necessary or appropriate for the performance of Consultant's services hereunder.

10. **Controlling Law**.
This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey.

11. **Headings**.
The headings in this Agreement are inserted for convenience only and shall not be used to define, limit or describe the scope of this Agreement or any of the obligations herein.

12. **Final Agreement**.
This Agreement constitutes the final understanding and agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations, understandings and agreements between the parties, whether written or oral. This Agreement may be amended, supplemented or changed only by an agreement in writing signed by both of the parties.

Rev: 1.2

13. **Notices.**
Any notice required to be given or otherwise given pursuant to this Agreement shall be in writing and shall be hand delivered, mailed by certified mail, return receipt requested or sent by recognized overnight courier service as follows:

If to Consultant:

CHARLES EHLING

PACE, FL 32571

If to Company:
Meridian Benefit Inc.
201 Willowbrook Blvd.
Wayne, NJ 07470

14. **Severability.**
If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

IN WITNESS WHEREOF, this Agreement has been executed by the parties as of the date first above written.

Consultant _____ Date _10-08-02_

Meridian _____ Date _10/5/02_

4

5/06

Rev: 1.2