EXHIBIT  G

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

CHARLES EHLING and
EHLING INSURANCE
AND INVESTMENTS, INC.,

       Plaintiffs,

    vs.                              **CASE NO:  4:05cv431-RH/WCS**

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PENNSYLVANIA,
a foreign corporation, and AIG
DOMESTIC CLAIMS, INC.,
a Delaware corporation,

       Defendants.
_____/

**DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND SUPPORTING MEMORANDUM**

      Defendants, National Union Fire Insurance Company of Pittsburgh, Pennsylvania

("National Union") and AIG Domestic Claims, Inc., through their undersigned attorneys

and pursuant to Fed.R.Civ.P. 56, move for summary judgment on all claims alleged in the

Complaint and Counterclaim for Declaratory Judgment because the pleadings and other

matters of record, including the documents filed in support of this motion with

Defendants' separate Notice of Filing, conclusively demonstrate that there are no genuine

issues of material fact and that Defendants are entitled to judgment as a matter of law.

The specific grounds on which this motion is based and the substantive matters of law to

be argued are set forth below.



# I.

## INTRODUCTION

This is an insurance coverage dispute involving an errors and omissions policy ("the insurance policy") issued by National Union to GE Financial Assurance, the named insured, for a policy period from January 1, 2003 to January 1, 2004. (SOF, ¶ 17.)[1] Charles Ehling is a licensed Florida insurance agent and seeks coverage under the policy as an insured agent of GE Financial Assurance. Ehling Insurance and Investments, Inc. seeks coverage as a corporation owned or controlled by an insured agent. (SOF, ¶¶ 18-19.)[2]

The Complaint alleges that National Union breached its duty to defend Ehling against a number of lawsuits filed in connection with Ehling's sale of employee health insurance plans offered by Meridian Benefit, Inc. ("Meridian"). Meridian was never authorized to transact insurance in Florida and filed for bankruptcy in 2003, leaving millions of dollars in unpaid health insurance claims. (SOF, ¶¶ 6, 11-14.) The plaintiffs in the underlying lawsuits are either employers or employees entitled to benefits under the plans whose claims have not been paid. Ehling's Complaint demands damages for costs and expenses incurred in defending the lawsuits, but does not seek indemnification

---

[1] This motion is accompanied by a Statement of Undisputed Facts as required by N.D. Fla. Loc. R 56.1. References to the Statement of Undisputed Facts will be shown as "SOF, ¶ _____," with the appropriate paragraph number inserted in the space.

[2] As used herein, "Ehling" will collectively refer to both plaintiffs unless a distinction is necessary, in which case Charles Ehling will be referred to by his full name and Ehling Insurance and Investments, Inc. will be referred to as "Ehling Insurance."

for any amounts recovered by the underlying plaintiffs or demand that National Union assume his defense.

National Union filed a Counterclaim for Declaratory Judgment seeking a determination that it has no liability to indemnify Ehling for damages or pay defense costs incurred in connection with any of the underlying lawsuits. The Counterclaim identifies eight underlying suits, including the six identified in Ehling's Complaint, plus two others.[3] All of the claims arise out of Ehling's sale of employee benefit plans offered by Meridian.

The Counterclaim raises several grounds for avoiding coverage, some of which are ripe for summary judgment based on undisputed facts already established. In the event this case is not completely decided on summary judgment, as National Union contends it should be, further discovery will be necessary to establish the additional grounds for avoiding coverage.

Of the eight lawsuits, all but one arise out of Meridian's inability to pay claims.[4] It is undisputed that all of Meridian's so-called benefit plans were improperly underwritten, administered and funded from their inception and were never able to pay the medical claims of Meridian's purported insureds. (SOF, ¶¶ 8-11, 13.) The insurance policy excludes coverage for claims arising out of the insolvency, receivership,

---

[3] A copy of the operative complaint in each lawsuit is attached to the Stipulation to Authenticity of Documents filed in support of this motion (hereinafter, "Stipulation"). *See* Notice of Filing, Exhibit 1.

[4] The one exception is *Employee Liability Management, Inc. v. Ehling Insurance and Investment, Inc., et al.*, Case No. CV-2004-304, Circuit Court of Mobile County, Alabama (hereinafter, "the ELM case"). *See* Stipulation, Exhibit G.

bankruptcy, or inability to pay of any entity in which an insured agent has placed funds or obtained coverage ("the insolvency exclusion"). The insolvency exclusion thus bars coverage for seven of the eight lawsuits.

The insurance policy also excludes coverage for damages and defense costs incurred in connection with claims arising out of the payment of employee benefits, wages, salaries or commissions ("the employee benefits exclusion"). This exclusion applies to all of the underlying lawsuits, including the ELM case, since they all arise out of Meridian's failure to pay employee benefits due under a group health insurance plan.

The ELM case alleges that Ehling knowingly obtained insurance for ELM that did not cover medical claims arising from automobile accidents and willfully misrepresented the nature of the coverage. In addition to being excluded under the employee benefits exclusion, coverage for this claim is also excluded under the "wrongful acts exclusion," which excludes coverage for damages and defense costs in connection with a claim arising out of any actual or alleged dishonest or knowingly wrongful act.

All of the underlying claims thus fall within one or more of the exclusions in the insurance policy. The Court should therefore enter final summary judgment determining that National Union has no liability to Ehling for damages or defense costs in connection with any of the underlying lawsuits.

## II.

## <u>ARGUMENT</u>

**A.    The Underlying Claims Against Ehling Are Excluded From Coverage Under The Insolvency Exclusion In The Insurance Policy.**

The insurance policy expressly excludes coverage for damages and defense costs arising out of the insolvency or "inability to pay" of any entity with which an insured agent has placed the funds of an insured.  The policy provides in pertinent part:

> This Insurer shall not be liable to make any payment for Damages and Defense Costs in connection with a Claim or Class Action suit made against:
>
> *        *        *
>
> (g)    an Insured arising out of, based upon or attributable to the insolvency, receivership, bankruptcy, liquidation or inability to pay, of any entity in which the Insured has placed funds or obtained coverage or invested funds for a client, including, but not limited to, the Named Insured, or any bank, banking firm, insurance company, benefit plan, broker/dealer, trust or investment vehicle.

Insurance policy, ¶ 3(g).

The Florida Supreme Court recently held that the term "arising out of" as used in an insurance policy exclusion is unambiguous and should be given its plain meaning.  *See Taurus Holdings, Inc. v. U. S. Fid. & Guar. Co.*, 913 So. 2d 528 (Fla. 2005).  As the Court stated:

> The term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having a connection with.' . . . [T]his requires more than a mere coincidence between the conduct . . . and the injury.

> It requires some causal connection, or relationship. But it
> does not require proximate cause.

913 So. 2d at 539-540 (internal quotation marks and citations omitted). Thus, if the claims against Ehling merely have a "connection with" or "relationship" to Meridian's inability to pay the claims of its purported insureds, the insolvency exclusion applies under Florida law.

Except for the ELM case, each of the underlying lawsuits against Ehling arises out of Meridian's bankruptcy, insolvency, or inability to pay claims and is therefore excluded from coverage. Meridian filed for Chapter 7 bankruptcy in May of 2003 and reported that "there will be no funds available for distribution to unsecured creditors." (SOF, ¶ 12.) In response to an Adversary Complaint filed against Ehling by Meridian's bankruptcy trustee alleging fraudulent and criminal acts in the conduct of Meridian's business affairs, Ehling admitted that "*each welfare plan administered by [Meridian] was not properly funded from its inception and throughout its existence, and could not pay all the claims adjudicated and submitted for payment*." (SOF, ¶ 10.)[5] Ehling further admitted that, because of wrongful acts committed by Meridian's officers, *Meridian was unable to pay the claims of the various welfare plan participants*, which resulted in thousands of employees becoming personally responsible for health care costs that should have been paid by their respective welfare plans. (SOF, ¶ 14.)

In a strikingly similar case, the Florida First District Court of Appeal held in *Transamerica Ins. Co. v. Snell*, 627 So. 2d 1275 (Fla. 1st DCA 1993), that the insolvency exclusion in an errors and omissions policy barred recovery by the insured. As in this

---

[5] All emphasis is added unless otherwise stated.

6

case, the plaintiff in *Snell* was an insurance agency that had been sued for breach of contract and negligence in placing a customer's employee health insurance plan with an insurer that was financially unable to pay medical claims. The insured agency demanded indemnification for the claim under its errors and omissions policy, which excluded coverage for "any claim arising out of insolvency, receivership, or bankruptcy of any organization (directly or indirectly) in which the 'insured' has placed or obtained coverage or in which an 'insured' has placed the funds of a client or account." 627 So. 2d at 1276. Finding that "arising out of" broadly encompassed even the negligence claim, the First District held that the customer's action against the agency was "within the clear and unambiguous insolvency exclusion of the [policy], and . . . is thus not covered." 627 So. 2d at 1277.

Courts from other jurisdictions have frequently applied insolvency exclusions to find no coverage under similar circumstances. *See Greenwood Ins. Group v. US Liability Ins. Co.*, 157 S.W.3d 444 (Tex. Ct. App. 2004) (applying insolvency exclusion to affirm summary judgment for insurer in broker's claim for coverage under errors and omissions policy, where underlying claim against broker arose from insolvency of insurance company with which broker had placed general liability coverage); *Barron v. Scaife*, 535 So. 2d 830 (La. Ct. App. 1988) (affirming summary judgment for insurer based upon insolvency exclusion, where underlying claim against broker arose from insolvency of insurance company with which broker had placed automobile insurance coverage); *St. Paul Fire & Marine Ins. Co. v. Cohen-Walker*, 320 S.E.2d 385 (Ga. Ct. App. 1984) (applying insolvency exclusion to find no coverage under errors and omissions policy,

7

where underlying claim against broker arose from insolvency of insurance company with which broker had placed medical insurance coverage); *Transamerica Ins. Co. v. South*, 125 F.3d 392 (7th Cir. 1997) (affirming summary judgment for insurer based upon insolvency exclusion, where underlying claim against broker's employee arose from insolvency of insurance company that issued annuities recommended by employee); *American Automobile Ins. Co. v. Valentine*, 131 Fed. Appx. 406 (4th Cir. 2005) (applying insolvency exclusion to find no coverage under errors and omissions policy, where underlying claims against broker arose from insolvency of health insurance plan with which broker had placed coverage).

Under *Taurus*, the "arising out of" standard broadly encompasses all types of underlying claims against Ehling, including Ehling's alleged negligent failure to ensure that Meridian was properly licensed and adequately funded. Based on the undisputed facts showing Meridian's insolvency and inability to pay claims "from its inception and throughout its existence" (SOF, ¶ 10), the insolvency exclusion excludes coverage for each of the underlying suits against Ehling except the ELM case, which is excluded for other reasons. National Union thus has no liability for damages or defense costs incurred in connection with any of these suits.

This no-coverage determination applies to National Union's duty to defend as well as its duty to indemnify. While the duty to defend is determined initially from the four corners of the complaint, the insurer is always free to seek a declaratory judgment that there is no duty to indemnify once the facts showing no coverage are sufficiently developed. *See, e.g., Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5 (Fla. 2005)

(holding that insurer may seek a declaration of no coverage even if the facts on which coverage depends are disputed in the underlying action). Once it is determined that coverage is unavailable, the duty to defend terminates. *See Underwriters at Lloyd's London v. STD Enterprises, Inc.* 395 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) ("the duty to defend ceases when it is shown that there is no potential for coverage, i.e., when there is no duty to indemnify."); *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101, 1102-03 (Fla. 4th DCA 1995) ("the carrier must defend a claim that may ultimately be covered until it is certain that it is not covered."). Thus, by showing that it has no duty to indemnify, National Union has also established that it has no duty to defend the underlying suits.[6]

Ehling's recovery of defense costs already incurred is barred by the plain language of the policy itself, since all exclusions, including the insolvency exclusion, by their terms expressly exclude liability for "damages *and defense costs.*" (Insurance policy at 6, ¶ 3.) It is fundamental that "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings*, 913 So. 2d at 532 (*quoting Hagan v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)). The insolvency exclusion thus bars Ehling's recovery of costs and expenses incurred in defending all claims to which the exclusion applies.

---

[6] In his Complaint, Ehling does not request a determination that National Union is obligated to provide a defense for the underlying lawsuits. Rather, he seeks only to recover his costs and expenses incurred in defending those claims.

Even under a strict application of the "eight corners rule," National Union never had a duty to defend Ehling against several of the underlying lawsuits.[7]  Of the eight complaints against Ehling, four affirmatively allege that the claims arose from Meridian's insolvency or inability to pay the plaintiff's medical claims.  *See Ray Glass Batteries, Inc. v. Ehling, et al.,* No. 2003-CA-2815 (Fla. 5th Cir. Ct.), Second Amended Complaint, ¶ 26 ("Meridian was unable to and did not pay the medical bills incurred by [plaintiffs] on behalf of their child from the accident") (Stipulation, Exhibit A); *Lampasso v. Ehling, et al.,* No. 03-6658CI-II (Fla. 6th Cir. Ct.), Complaint, ¶ 40, 50 (quoting letter from Meridian to plaintiff stating that "we regret to inform you that Meridian Benefit, Inc. is experiencing severe financial problems and is in the process of winding-down its business" and alleging that Meridian had filed for bankruptcy) (Stipulation, Exhibit C); *DSK Group, Inc. v. Ehling et al.,* No. 2003-CA-4613 (Fla. 5th Cir. Ct.), Amended Complaint, ¶ 14 ("Meridian began having financial difficulties resulting in an inability to properly and/or timely pay benefits; it is believed that earlier this year Meridian Benefit, Inc. became insolvent."), ¶ 20 ("Meridian Benefit collapse[d] in less than 18 months"), ¶ 25 (alleging "the subsequent insolvency of Meridian Benefit, Inc."), ¶ 30 (alleging damages "stemming from Meridian's failure") (Stipulation, Exhibit F); *PACA, Inc. v. Ehling, et al.,* No. CV-05-45 (Ala. Cir. Ct.), Complaint, ¶¶ 17, 22, 30 (alleging a failure

---

[7] The eight corners rule refers to the four corners of the complaint and the four corners of the policy as the general test for determining whether an insurer has a duty to defend a particular claim. *See, e.g., Colony Ins. Co. v. Barnes,* N.D. Fla. Case No. 5:05cv135-RH/WCS.

to disclose Meridian's financial status and that "Meridian was financially unstable and unable to pay [plaintiff's] claims").[8]

No duty to defend these claims ever arose, since the complaints on their face show that the insolvency exclusion applies. *See, e.g., Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533 (Fla. 1978) (insurer had no duty to defend where the complaint on its face showed that an exclusion for intentional acts applied). This constitutes a separate and independent ground to deny Ehling's claim for defense costs as to these lawsuits, since National Union obviously could not have breached a duty to defend that never came into existence.

Florida law also recognizes that "there are some natural exceptions to [a strict application of the eight corners rule] where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint." *Higgins*, 894 So. 2d at 10 n.2. The example given by the *Higgins* court is a case where the insurer claims that the insured did not provide sufficient notice of the claim and therefore breached an assistance and cooperation clause in the insurance policy. *Id.* In such circumstances, the Court stated that "the courts may entertain a declaratory action seeking a determination of a factual issue upon which the insurer's duty to defend depends." *Id.*

---

[8] One of the remaining complaints initially alleged that the claim arose from Meridian's bankruptcy, but was subsequently amended to remove that allegation. *See Jarvis v. Blackburn, et al.*, No. 2003-CA- 4765 (Fla. 5th Cir. Ct.), Complaint, ¶ 10 ("Meridian Benefit, Inc. will not pay these bills and has filed bankruptcy in the United States Bankruptcy Court for the District of New Jersey on May 15, 2003.") (Notice of Filing, Exhibit 5); Amended Complaint, ¶ 10 ("Meridian Benefit, Inc. will not pay these bills.") (Stipulation, Exhibit B).

*Higgins* thus recognizes that, in addition to negating the duty to defend by showing no duty to indemnify, National Union can seek a determination that it has no duty to defend based on the true facts, where those facts would not normally be alleged in the underlying complaint.   The claims against Ehling that do not expressly allege Meridian's insolvency all fit within this exception.[9]

Each of these claims is based on section 626.901, Florida Statutes, which generally prohibits any person from representing or aiding an unauthorized insurer, such as Meridian.  Subsection 626.901(2), Florida Statutes, provides:

> If an unauthorized insurer fails to pay in full or in part any claim or loss within the provisions of any insurance contract which is entered into in violation of this section, any person who knew or reasonably should have known that such contract was entered into in violation of this section and who solicited, negotiated, took application for, or effectuated such insurance contract is liable to the insured for the full amount of the claim or loss not paid.

For purposes of stating a claim under this provision, the reason for the unauthorized insurer's non-payment is immaterial.  Thus, the underlying plaintiffs would have had no reason to allege facts regarding Meridian's insolvency to establish their statutory claims against Ehling.   Under these circumstances, *Higgins* recognizes that National Union is entitled to show in a declaratory judgment action that it has no duty to defend the underlying claims based on the true facts, as it has done in this case.

---

[9] These claims include *Jarvis v. Ehling, et al.*, No. 2003-CA-4765 (Fla. 5th Cir. Ct.) (Stipulation, Exhibit B); *Maguran v. Ehling et al.*, No. 2004-CA-00304 (Fla. 8th Cir. Ct.) (Stipulation, Exhibit D); and *Hess v. Ehling, et al.*, No. 04-1348-CAK (Fla. 5th Cir. Ct.) (Stipulation, Exhibit E).

Ehling contends that, notwithstanding the plain language of the insolvency exclusion, coverage is nevertheless available under the insurance policy based on the concurrent cause doctrine, citing *Wallach v. Rosenberg*, 527 So. 2d 1386 (Fla. 3d DCA 1988). (*See* Report of Parties' Planning Meeting (Form 35) and Additional Matters Required by Initial Scheduling Order, at 3.) Ehling asserts that the underlying lawsuits are based on his failure to determine Meridian's inability to sell insurance in Florida (due to the fact that it was not authorized to transact insurance in Florida), and that the claims are therefore covered regardless of Meridian's solvency. *Id.*

The First District considered and rejected this same argument in *Snell*. The insured insurance agency there argued that coverage was available under the concurrent cause doctrine because the loss resulted from multiple causes, one of which was an insured risk covering the agency's negligence. In rejecting this argument, the court observed that "the doctrine is applicable only when the multiple causes are not related and dependent, and involve a separate and distinct risk." 627 So. 2d at 1276. It then held that "since [the underlying plaintiff's] asserted loss is ultimately predicated on [the underlying insurer's] insolvency, any actionable negligence by [the insurance agent who placed the coverage] is necessarily related to such insolvency, thus precluding resort to the concurrent cause doctrine." *Id. See also American Sur. & Cas. Co. v. Lake Jackson Pizza, Inc.*, 788 So. 2d 1096, 1100 (Fla. 1st DCA 2001) (refusing to apply the concurrent cause doctrine where there was no separate and distinct risk).

The same is true here. Except for the ELM case, the underlying plaintiffs' losses are all ultimately predicated upon Meridian's insolvency and inability to pay claims, not

its lack of authority to transact insurance in Florida.  If Meridian had paid the claims, these plaintiffs would have no basis to sue Ehling, regardless of whether or not Meridian was properly authorized.  Moreover, the clear reason these plaintiffs currently have no remedy against Meridian is because Meridian is bankrupt and has no funds to pay claims. The losses thus all "arise out of" Meridian's insolvency or inability to pay claims and are therefore excluded from coverage under the insolvency exclusion.

**B.    The Underlying Claims Against Ehling Are Also Excluded From Coverage Under The Employee Benefits Exclusion In The Insurance Policy.**

The insurance policy also excludes coverage for claims arising in connection with payments due under an employee benefit plan.  The policy provides in pertinent part:

> This Insurer shall not be liable to make any payment for Damages and Defense Costs in connection with a Claim or Class Action suit made against:
>
> *       *       *
>
> (t)    an Insured arising out of, based upon or attributable to payment of employee benefits, wages, salaries or commissions.

Insurance policy, ¶ 3(t).

It is undisputed that each of the underlying claims (including the ELM claim) arises out of payments due under an employee benefits plan.  Ehling admits that Meridian held itself out to be a third-party administrator of single *employer welfare benefit plans*, purportedly established pursuant to ERISA.  (SOF, ¶ 5.)  Ehling further admits that the plans were marketed and sold in Florida and elsewhere "*as a means to provide employee health insurance benefits*."  (*Id.*)  The insurance plans were to be funded by contributions

from the employer and participating employees to a trust established by the specific purpose of administering the plan. (SOF, ¶ 7.) The underlying lawsuits are all brought by "purported insureds and employers of Meridian plans sold by Ehling *as employee benefit plans* . . . to recover the amount of their unpaid medical claims." (SOF, ¶ 15.)

This exclusion uses the same "arising out of" language, so that under *Taurus* there only needs to be some connection between the claim against Ehling and payment of "employee benefits." There is no question that such a connection exists here, since Ehling admits that all claims are by employers or employees seeking health care benefit payments due under a group health insurance plan. Coverage for the claims is therefore excluded under the plain language of the employee benefits exclusion.

## C.    Coverage For The ELM Case Is Also Excluded Under The Wrongful Acts Exclusion In The Insurance Policy.

The ELM case involves Meridian's denial of a claim for medical benefits arising from an automobile accident as being excluded from coverage under ELM's employee group health insurance plan. ELM's Complaint against Ehling alleges that it sought to obtain "a fully insured health plan that would take risks associated with a professional employer organization." (ELM Complaint, ¶ 10; Stipulation, Exhibit G.) It requested Ehling to obtain medical insurance that would cover all types of claims, including claims arising from automobile accidents. (ELM Complaint, ¶ 20.) ELM asserts that "Ehling and Ehling Insurance, with the knowledge that the Meridian plan would not provide coverage in the event that a claim was made for medical bills arising out of an automobile accident, still secured the Meridian plan for ELM." (*Id.*)

15

The Complaint further alleges that Ehling "made false representations related to the product of 'insurance' that would be sold, the nature of the 'insurance,' [and] that Meridian would cover any and all claims through its reserves and/or through reinsurance that Meridian had in place." (ELM Complaint, ¶ 25.) Ehling allegedly made these representations "with knowledge that said representations were false." (ELM Complaint, ¶ 26.) These allegations are incorporated into every claim against Ehling.

Based on these allegations, coverage for the ELM claim is excluded under the wrongful acts exclusion in the insurance policy. The exclusion provides in pertinent part:

> This Insurer shall not be liable to make any payment for Damages and Defense Costs in connection with a Claim or Class Action suit made against:
>
> \*      \*      \*
>
> (a)(1)   an Insured arising out of, based upon or attributable to any actual or alleged criminal, dishonest, malicious, knowingly wrongful or fraudulent acts committed by or at the direction of the Insured.

Insurance policy, ¶ 3(a)(1). Notably, this exclusion attaches to mere allegations of dishonest or knowingly wrongful conduct.

ELM's allegations that Ehling knowingly and dishonestly sold it the wrong type of insurance and intentionally misrepresented facts relating to ELM's insurance coverage brings the wrongful acts exclusion squarely into play. Accordingly, National Union has no duty to indemnify or defend Ehling against the ELM claim.

## III.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully request that this motion be granted and that the Court enter final summary judgment in Defendants' favor on all claims alleged in the Complaint and Counterclaim for Declaratory Judgment, together with such other and further relief as the Court deems appropriate.

Respectfully Submitted,

*s/ W. Douglas Hall*
W. Douglas Hall (FBN: 347906)
whall@carltonfields.com
Frederick T. Hawkes (FBN: 307629)
fhawkes@carltonfields.com
Robert W. Pass (FBN: 0183169)
rpass@carltonfields.com
CARLTON FIELDS, P.A.
P.O. Drawer 190
Tallahassee, FL 32302
Telephone:     (850) 224-1585
Facsimile:     (850) 222-0398

Attorneys for National Union Fire Insurance Company of Pittsburgh, PA and AIG Domestic Claims, Inc.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of foregoing was filed electronically pursuant to N.D. Fla. Loc. R. 5.1 this 28th day of February, 2006.

*s/ W. Douglas Hall*
W. DOUGLAS HALL

17

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

CHARLES EHLING and
EHLING INSURANCE
AND INVESTMENTS, INC.,

       Plaintiffs,

vs.                                        **CASE NO:  4:05cv431-RH/WCS**

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PENNSYLVANIA,
a foreign corporation, and AIG
DOMESTIC CLAIMS, INC.,
a Delaware corporation,

       Defendants.

_____/

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and AIG Domestic Claims, Inc., through their undersigned attorneys and pursuant to N.D.Fla.R. 56.1, submit the following statement of material facts as to which Defendants contend there is no genuine issue to be tried.

This Statement is based upon:  (a) admissions contained in Plaintiffs' Answer to Defendants' Counterclaim for Declaratory Judgment;  (b) admissions contained in Plaintiffs' Answer to the bankruptcy trustee's Adversary Complaint filed in Meridian Benefit, Inc.'s bankruptcy proceeding (Exhibits 3 and 4 to Defendants' Notice of Filing Documents in Support of Motion for Summary Judgment);  (c) information contained in Meridian Benefit, Inc.'s bankruptcy petition (Exhibit 2 to the Notice of Filing);  (d)

allegations contained in the underlying complaints against Plaintiffs filed by insureds of Meridian Benefit, Inc. (Exhibit 1 to the Notice of Filing); and (e) undisputed facts alleged in Plaintiffs' Complaint.

## STATEMENT OF UNDISPUTED FACTS

1.    National Union is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business located at 70 Pine Street, New York, New York. National Union is authorized to transact insurance in the State of Florida. (Counterclaim for Declaratory Judgment, ¶ 4 admitted.)

2.    Defendant, Ehling Insurance and Investments, Inc. ("Ehling Insurance") is a Florida corporation engaged in the business of selling insurance. (Counterclaim for Declaratory Judgment, ¶ 5 admitted.)

3.    Defendant, Charles Ehling ("Ehling"), is a Florida resident and a licensed Florida insurance agent. Ehling is President of Ehling Insurance (Counterclaim for Declaratory Judgment, ¶ 6 admitted in pertinent part.)

4.    On or about October 3, 2002, Ehling entered into an "Independent Consultant Agreement" with Meridian Benefit, Inc. ("Meridian"), a true and correct copy of which is attached to the Counterclaim for Declaratory Judgment as Exhibit B. (Counterclaim for Declaratory Judgment, ¶ 24 admitted.)

5.    Meridian held itself out to be a third-party administrator of single employer welfare benefits plans, purportedly established pursuant to the Employee Retirement Income Security Act of 1974 (" ERISA"). The plans were marketed and sold by Ehling and others to employers in the State of Florida and elsewhere as a means to

provide employee health insurance benefits.  (Counterclaim for Declaratory Judgment, ¶ 18 admitted.)

6.    Meridian was never authorized transact insurance in the State of Florida, as required by section 624.401, Florida Statutes.    (Counterclaim for Declaratory Judgment, ¶ 27 admitted.)

7.    As marketed, each plan offered by Meridian was to be funded by contributions from the employer and participating employees to a trust established for the specific purpose of administering the plan.  Meridian's marketing materials represented that the plans had been prepared with the assistance of an actuary to determine the contribution rates required to cover the total cost of providing benefits.  Meridian also represented that stop-loss insurance had been obtained to cover claims in the event contributions to the trust were insufficient.  (Counterclaim for Declaratory Judgment, ¶ 19 admitted.)

8.    In actual fact, stop-loss insurance was never obtained for the plans administered by Meridian. (Adversary Complaint, ¶ 84 admitted.)

9.    In addition, because the amount of employee contributions was fixed without regard to whether the contributions were sufficient, and because more than 30 percent of each customer's contributions was diverted for purposes other than paying claims, Meridian was insolvent from its inception or became insolvent shortly thereafter. (Adversary Complaint, ¶ 67 admitted as to Meridian.)

10.    Each plan administered by Meridian was not properly funded from its inception and throughout its existence, and could not pay all of the claims adjudicated

and submitted for payment.  (Adversary Complaint, ¶ 6 admitted; Counterclaim for Declaratory Judgment, ¶ 39 admitted.)

11.    On May 15, 2003, Meridian filed a petition for relief under chapter 7 of the United States Bankruptcy Code.  (Adversary complaint, ¶ 17; Bankruptcy Petition.)

12.    Meridian's Bankruptcy Petition stated that "Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors."  (Bankruptcy Petition at 1.)

13.    Employee plan participants, employers, health care providers and others have filed claims against Meridian's bankruptcy estate exceeding $22 million.  (Adversary Complaint, ¶ 92 admitted in pertinent part.)

14.    Because of wrongful acts committed by its officers, Meridian was unable to pay the claims of the various welfare plan participants, and thousands of employees became personally responsible for health care costs that should have been paid by their respective welfare plan.  (Adversary Complaint, ¶ 130A and B admitted.)

15.    A number of purported insureds and employers under Meridian plans sold by Ehling as employee benefit plans have sued Ehling and Ehling Investments to recover the amount of their unpaid medical claims.  (Counterclaim for Declaratory Judgment, ¶ 3 admitted; Stipulation to Authenticity of Documents, Exhibits A-H.)  Each lawsuit arises from Ehling's sale of a purported employee benefit plan offered by Meridian and Meridian's failure to pay claims of individuals purportedly insured under the plan.  (Counterclaim for Declaratory Judgment, ¶ 41 admitted.)

4

16.    Ehling seeks to recover damages for costs and expenses incurred in defending the lawsuits under an errors and omissions insurance policy issued by National Union to GE Financial Assurance.  National Union has refused to defend the claims or pay Ehling's defense costs.  (Complaint, demand for damages at 4, 5, 7, 9, 10, 12; Counterclaim for Declaratory Judgment, ¶ 3 admitted.)

17.    The subject insurance policy was issued by National Union to GE Financial Assurance, the named insured, for a policy period from January 1, 2003 to January 1, 2004.  A true and correct copy of the insurance policy is attached as Exhibit A to the Counterclaim for Declaratory Judgment.  (Counterclaim for Declaratory Judgment, ¶ 8 admitted.)

18.    Ehling claims coverage under the insurance policy as an "insured agent," which the insurance policy defines in pertinent part to be a licensed insurance agent under contract with the named insured.  (Counterclaim for Declaratory Judgment, ¶ 9 admitted.)

19.    Ehling Insurance claims coverage under the insurance policy as a corporation owned or controlled by an insured agent. (Counterclaim for Declaratory Judgment, ¶ 10 admitted.)

Respectfully Submitted,

*s/ W. Douglas Hall*
W. Douglas Hall (FBN:  347906)
whall@carltonfields.com
Frederick T. Hawkes  (FBN:  307629)
fhawkes@carltonfields.com
Robert W. Pass  (FBN:  0183169)
rpass@carltonfields.com
CARLTON FIELDS, P.A.
P.O. Drawer 190
Tallahassee, FL  32302
Telephone:    (850) 224-1585
Facsimile:    (850) 222-0398

Attorneys for National Union Fire Insurance
Company of Pittsburgh, PA and AIG Domestic
Claims, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of foregoing was filed electronically pursuant to N.D. Fla. Loc. R. 5.1 this  28th  day of February, 2006.

 *s/ W. Douglas Hall*
W. DOUGLAS HALL

6