RECEIVED

IN THE UNITED STATES DISTRICT COURT JUL 1 5 1996
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RONNIE JACKSON, WILLIAM SMITH, LINDA SMITH,
Individually and on behalf of all others similarly situated          PLAINTIFFS

VS.                                              CIVIL ACTION NO. 96-0501-BH-M

TRUSTMARK NATIONAL BANK, PRUDENTIAL
PROPERTY & CASUALTY INSURANCE COMPANY and
CENTRAL NATIONAL INSURANCE COMPANY                            DEFENDANTS

---

## TRUSTMARK'S RESPONSE AND MEMORANDUM OPPOSING MOTION TO REMAND AND REBUTTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

---

Defendant Trustmark National Bank ("Trustmark") opposes the plaintiffs' motion to remand and urges dismissal or transfer of this proceeding to the United States District Court for the Southern District of Mississippi, Southern Division. This court has subject matter jurisdiction over this case, and removal was proper. The Mississippi district court should resolve the controversy.

### Introduction

Plaintiffs, Mississippi residents, seek damages allegedly arising from their consumer finance transactions with Trustmark. Plaintiffs borrowed money from Trustmark, and pledged vehicles as collateral assuring repayment of the loans. Plaintiffs agreed to maintain property insurance on the vehicles; Trustmark was entitled, under the terms of the loan documents, to obtain insurance and charge plaintiffs therefor if plaintiffs failed to insure the collateral.

Plaintiffs claim in this suit that, when Trustmark bought collateral protection insurance ("CPI") on plaintiffs' vehicles through defendants Prudential, Central National, and others, Trustmark breached legal duties owed to the plaintiffs. The plaintiffs seek damages not only

EXHIBIT
"I"

on behalf of themselves, but also on behalf of every other borrower who was subject to placement of CPI by Trustmark.

Yet, the plaintiffs in this suit are already plaintiff class members in *Jackie D. Holmes v. Trustmark National Bank, Prudential Property and Casualty Insurance Company, Ross & Yerger, P.A., Ross & Yerger Financial Systems and National Underwriters of Delaware, Inc.*, U.S.D.C., Southern District of Mississippi, Southern Division, Civil Action No. 1:95cv323GR. The *Holmes* suit asserts the same cause of action as plaintiffs urge in this case.

The U. S. District Court in Mississippi has issued extensive rulings governing CPI litigation against Trustmark. Those rulings include certification of a class action with mandatory participation of all class members, including the named plaintiffs in this case. Furthermore, the court in *Holmes* has expressly enjoined class members, including plaintiffs herein, from pursuing separate proceedings such as this lawsuit.

In short, this suit is an attempt to re-litigate or avoid the *Holmes* case, an attempt not unlike other plaintiff efforts already rejected by the Mississippi district court. *Holmes* is within the federal court's jurisdiction pursuant to federal question claims. As shown below, removal of this case was appropriate. Regardless of plaintiffs' attempted artful pleadings, the Trustmark CPI litigation is controlled by federal law and subject to full resolution in the Mississippi proceeding, including any pendent state law claims. This court should either dismiss or transfer this case to enable such comprehensive resolution by the appropriate federal forum.

I.  Pertinent Facts

Plaintiffs are Mississippi residents, according to their complaint.  Trustmark is a national banking association, organized and existing pursuant to the laws of the United States, headquartered in Mississippi.

In 1987 and 1988, the plaintiffs purchased vehicles in Mississippi, and financed the purchases through Trustmark.  They pledged the vehicles as collateral for their loans.  They signed promissory notes and security agreements, in which they agreed to keep their cars insured, and authorized Trustmark to buy insurance at the borrowers' expense if the borrowers failed to meet this obligation.  In addition, the plaintiffs signed separate "Insurance Authorization Forms" covering these obligations in more detail.  The Insurance Authorization Forms provided that the borrowers would maintain specific types of insurance and, upon failure to do so, Trustmark could "purchase insurance on the property held as collateral," and charge the borrowers for the premiums, plus interest.  Trustmark was authorized "to obtain such insurance as Lender deems necessary in order to protect its interest in the property." (Exh. A-D)

The plaintiffs breached their obligations to maintain insurance on the collateral.  As a result, insurance was automatically "force placed" on the plaintiffs' cars, under a comprehensive CPI program designed and managed by the insurance providers.  The insurer's managing general agent determined that the plaintiffs' vehicles were uninsured, sent notices to the plaintiffs, issued coverage for the plaintiffs' vehicles, and billed Trustmark for the premiums.  Trustmark paid the premiums, and added them to the plaintiffs' loan balances,

with interest at the note rate, with the expectation of collecting that debt from the borrowers. Plaintiffs now claim that the entire CPI program was unlawful.

## II. The *Holmes* Class Action

In 1995, plaintiff Jackie D. Holmes filed a complaint against Trustmark, Prudential, and various insurance agents in the United States District Court for the Southern District of Mississippi, Southern Division. In his complaint, Mr. Holmes complains of the very same CPI program that is the subject of the present suit. The complaint was filed in federal court based upon federal question jurisdiction, including Mr. Holmes' claims under the federal Truth-in-Lending Act, Consumer Credit Act, and RICO statutes. Plaintiff relied on federal supplemental jurisdiction over state-law claims. (*Holmes* complaint, Exh. E hereto, ¶¶ 3, 17).

Holmes subsequently filed an amended, class action complaint, and moved for class certification. Trustmark and Prudential filed cross-motions for class certification. The district court, by Judge Walter J. Gex, III, entered an order certifying the class action; the order was filed September 18, 1995. Since that order was issued, the court has issued additional orders filed January 11, 1996, and April 10, 1996, further defining the class action suit and its effect on parallel proceedings such as this case. Those orders are attached to Trustmark's pending motion to dismiss as Exhibits A, B, and C.

In summary, the federal court in Mississippi has certified a mandatory plaintiff class action under Fed. R. Civ. P. 23(b)(1). The court has enjoined and stayed "all pending and future lawsuits by Trustmark borrowers against Trustmark as a result of CPI coverage obtained through . . . Prudential." (January 11 order, p. 8) The court has also determined the

- 4 -

scope of jurisdictional effect of the *Holmes* class action. The orders are discussed in more detail below.

## A. The Initial Order of Class Certification

In the September 18 order, the court briefly described the plaintiff's claims "that the insurance premiums, charged by Prudential then added by Trustmark to the plaintiff's loan balance were excessive and included charges for coverage that was expressly excluded from the policy." (p. 2) The court analyzed plaintiff's federal Truth-in-Lending Act claim (p. 4) and addressed Rule 23 class action prerequisites in the context of that federal claim, as well as plaintiff's federal RICO claim (p. 6). Finding class certification to be appropriate, the court initially certified a plaintiff class of "all persons who financed an automobile or other personal property through Trustmark and whose loan accounts were charged for CPI premiums, including, but not limited to, persons who have already asserted claims against the named defendant related to the charge of CPI insurance."[1]

## B. Order Revising Certification and Enjoining Parallel Proceedings.

After further proceedings, Trustmark filed a motion in the district court seeking a stay and injunction of all parallel proceedings. After extensive briefing, and a hearing, the court entered its order granting that motion; the order was filed January 11, 1996. (Motion to Dismiss, Exh. B)

---

[1] The class was also defined to include CPI class members who were charged excess attorney's fees, but excluded persons whose claims were barred by the applicable statute of limitations when the class action claims were brought. (p. 10-11)

The court first analyzed the Anti-Injunction Act, 28 U.S.C. § 2283, to determine whether injunction of state court proceedings was prohibited. Recognizing general limitations on the federal court's injunctive powers, the court noted that its "power to enjoin *future* state proceedings is not limited by the Anti-Injunction Act." The court further recognized that the Act does not "encompass parallel proceedings in federal court." (p. 2) The district court, by Judge Gex, found that it had the power to stay even pending proceedings under the circumstances of the Trustmark CPI litigation, based in part upon the potential impact of competing suits upon the rights of the plaintiff class (pp. 3-5).

The court revised its prior class certification, finding that the class should be certified under Fed. R. Civ. P. 23(b)(1) exclusively. With the exception of a single case which had already proceeded to judgment and is on appeal before the Mississippi Supreme Court, the court enjoined class members from proceeding with CPI lawsuits against Trustmark. (p. 8) The court also permitted class members to file petitions seeking to be excluded from the class. Thus, the district court in Mississippi has expressly enjoined the plaintiffs in this case (who are without question class members in the *Holmes* suit) from proceeding with suits such as this one.

## C. The *Holmes* Court's Analysis of its Own Orders and Jurisdiction.

Various individuals have attacked the mandatory class certification and injunction in the *Holmes* litigation, both by seeking exclusion from the class action and by challenges to the injunction. The trial court analyzed those class members' arguments in its memorandum opinion and order filed April 10, 1996 (Motion to dismiss, Exh. C).

The court discussed "due process" arguments asserted by class members, who claimed they had received insufficient notice of the proceedings. The court noted distinctions between optional class participation under Rule 23(b)(3) and mandatory, "no-opt-out" class actions certified under Rule 23(b)(1). Based on both a constitutional analysis and the fact that the objecting plaintiffs had actual notice, the court overruled the due process objections. (pp. 2-7)

The court again defended mandatory class certification under Rule 23(b)(1). The court explained in detail that mandatory certification was justified due to "the probability of inconsistent adjudications of the same core facts when the defendants are faced with thousands of individual lawsuits," as well as the potential for a "limited fund" from which class members could recover.

Based upon the court's injunction of parallel proceedings, Trustmark initiated the removal of various CPI cases pending in Mississippi state courts to various United States district courts. In its April 10 opinion, the *Holmes* district court addressed in considerable detail the propriety of such removal. While recognizing the general limitations on removal cited by plaintiffs here, the court held that it had "authority to exercise jurisdiction over a lawsuit removed from state court by Trustmark when the claims asserted against Trustmark in state court are class claims." The court found authority in the All Writs Act, 28 U.S.C. § 1651, particularly as applied by the Second Circuit in *In re Agent Orange*[2], to exercise jurisdiction. The borrowers' attempt to disavow federal law through assertion of only state claim claims was inconsequential. The court noted its ability to require "mandatory class participation when the alleged state violations arise from the same common nucleus of facts,"

---

[2] *In re Agent Orange Product Liability Litigation*, 996 F.2d 1425, 1431 (2nd Cir. 1993) *cert. denied*, 114 S. Ct. 1125 (1994).

and to "look to whether a party has manipulated [the] court by carefully drafting claims to avoid federal jurisdiction." (p. 24)

Thus, the effect of the district court's class certification and injunction orders has already been tested by other class members. The propriety of removal to federal court of state-court proceedings has also been adjudicated within the *Holmes* class action.[3] That *Holmes* class members' state court claims may be removed to federal court has been judicially established.

### III.  Argument

**A.  Plaintiffs Cannot Defeat Removal Jurisdiction by
"Artful Pleading Attempting to Circumvent Their
Federal Claims as Asserted in the *Holmes* Class Action.**

In seeking remand, plaintiffs cite general principles regarding removal jurisdiction. The jurisdictional issues presented by this motion are beyond those basic principles. It is established that plaintiffs who attempt to re-file previous federal litigation in state court cannot avoid the federal nature of the dispute via artful pleading.

It is undisputed that the named plaintiffs herein are members of the *Holmes* plaintiff class. It is undisputed that the damages sought by these plaintiffs are already sought on their behalf in the *Holmes* litigation, and to the extent that the plaintiffs here purport to represent a class, it is undisputed that the *Holmes* plaintiff class membership encompasses the proposed class herein.

---

[3]  The *Hammack* case, which is addressed in the April order, was removed to a different division of the U.S. District Court in which the *Holmes* class is pending.

The Supreme Court addressed a comparable situation in *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S. Ct. 2424 (1981). Several plaintiffs filed federal antitrust suits in U. S. District Court; those suits were dismissed for failure to allege business injury as required under federal law. 101 S. Ct. at 2426. While some plaintiffs appealed, two plaintiffs chose to file second suits in state court. Their complaints "purported to raise only state-law claims," but "they made allegations similar to those made in the prior complaints . . . ." 101 S. Ct. at 2427.

Despite the fact that the state-court complaints raised only state-law claims, the defendants removed the two cases to federal court, and then moved to have them dismissed due to *res judicata*. Plaintiffs moved to remand; that motion was denied. The district court held that the complaints, "though artfully couched in terms of state law, were 'in many respects identical' with the prior complaints, and were thus properly removed to federal court because they raised 'essentially federal law' claims." 101 S. Ct. at 2427.

On appeal, the U. S. Court of Appeals for the Ninth Circuit affirmed the removal, stating that the district court "correctly held that the claims presented were federal in nature, arising solely from price fixing on defendant's part." *Moitie v. Federated Department Stores, Inc.*, 611 F.2d 1267, 1268 (9th Cir. 1980). On *certiorari*, the Supreme Court upheld this decision:

> The Court of Appeals also affirmed the district court's conclusion that *Brown II* was properly removed to federal court, reasoning that the claims presented were "federal in nature." We agree that at least some of the claims had a sufficient federal character to support removal. As one treatise puts it, "courts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum . . . [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization. . . ." The

- 9 -

> district court applied that settled principle to the facts of this
> case. After "an extensive review and analysis of the origins and
> substance of" the two *Brown* complaints, it found, and the Court
> of Appeals expressly agreed, that respondents had attempted to
> avoid removal jurisdiction by "artful[ly]" casting their
> "essentially federal law claims" as state-law claims. We will not
> question here that factual finding.

*Moitie*, 101 S. Ct. at 2427, n.2.

Similar circumstances led to removal of a second state court suit in *Salveson v.*

*Western States Bankcard Association*, 731 F.2d 1423 (9th Cir. 1984). Again, the plaintiffs

filed federal suits under the Sherman Act, and the suits were dismissed (on statute of

limitations grounds). Plaintiffs then filed subsequent suits, based solely on California law, in

state court. Defendants removed the cases on the theory that the suits were, in reality, the

same federal claims that had previously been filed.

The district court denied the plaintiffs' motion to remand. On appeal, the Court of

Appeals addressed the "central issue" of "whether the district court correctly concluded that

one or more of plaintiffs' claims arose under federal antitrust law." 731 F.2d at 1426.

The Court of Appeals recognized general rules for removal.[4] The court then noted

"one important exception" to such rules, i.e., when "the claim, although ostensibly asserted

under state law, is in fact a federal law claim but by artful pleading is misrepresented in order

to defeat defendant's right to a federal forum." The court recognized that "[b]y its very

nature, resolution of such an issue calls for looking outside the face of the complaint." 731

F.2d at 1427.

---

[4]    That is, the same rules as cited by plaintiffs in the present case: the removing party
has the burden of establishing jurisdiction; removal statutes are strictly construed; existence of
federal jurisdiction must "normally" be determined from the face of the complaint. 731 F.2d
at 1426.

> In this case, after analysis of the Supreme Court's
> decision in [*Moitie*], the district court ruled that the [state law
> antitrust] claim was really the same Sherman Act claim in
> disguise against which summary judgment had already been
> entered, and it was barred by *res judicata*. We agree.

731 F.2d at 1427.

The Court of Appeals viewed the Supreme Court's decision as follows:

> However, critical in both *res judicata* and artful pleading
> considerations [in *Moitie*] was the fact that appellate Brown had
> previously filed the claims as federal claims in federal court.
> Having done so, he could not be permitted to recast the same
> claims as state claims to the prejudice and detriment of the
> defendants. Avoidance of such untoward results is the upper
> function of the doctrine of *res judicata*.
>
> We agree that the conclusion of artful pleading is
> properly drawn when the plaintiff, by his own conduct, either by
> filing originally in federal court, or by acceding to federal
> jurisdiction after removal, has made his claim a federal one.

731 F.2d at 1429.

Thus, the plaintiffs' complaint in this case cannot be viewed in a vacuum. The

purported class in this case is already litigating its CPI claims against Trustmark, in a federal

forum, relying upon federal law. Plaintiffs here are simply attempting to seize control of the

litigation. But the pending federal litigation has already defined the scope of the dispute.

Plaintiffs cannot avoid the federal nature of the dispute by simply restating the claims in a

different court. The dispute is already pending, and it is a federal-law dispute. Since this is

the same dispute, this case, too, is governed by federal law. Removal was proper due to the

court's federal question jurisdiction.

B.  The All Writs Act Supports Removal Jurisdiction.

Removal of state court proceedings to the federal district court in which the state court
is situated to protect the ongoing jurisdiction of a federal court over a class action in another
state has substantial precedent. The "Agent Orange" class litigation included an order
"permanently barring class members from instituting or maintaining future actions arising
from Agent Orange exposure. . . ." *In re Agent Orange Product Liability Litigation,* 996 F.2d
1425, 1429 (2nd Cir. 1993). That provision was included in the comprehensive class
settlement ordered by a New York federal district court. After that settlement was reached
(and enforced by court order), "two overlapping class actions" were brought in state courts in
Texas.

> Both complaints sounded exclusively in state law and explicitly
> abjured reliance on federal law. Defendants removed the cases
> to the United States District Courts for the Eastern and Southern
> Districts of Texas, alleging "artful pleading" of a federal claim
> or, alternatively, complete federal preemption. The Judicial
> Panel on Multidistrict Litigation transferred the cases to the
> Eastern District of New York.

996 F.2d at 1430.

The federal district court in New York, not Texas, addressed the jurisdictional issues,
and denied motions to remand filed by the plaintiffs who were members of the federal class
action. The Court of Appeals affirmed, despite the "well-pleaded complaint" rule.[5] The
court stated:

> There is no complete diversity of citizenship, and no federal
> issue is apparent in the complaints. Indeed, the complaints
> explicitly disclaim reliance on federal law. Accordingly, in order
> to be removable, the . . . cases must fall within an exception to

---

[5]  Citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386 (1987).

> the "well-pleaded complaint" rule. The district court asserted
> two such exceptions -- plaintiffs' "artful pleading" of a federal
> question, and the court's residual authority under the All Writs
> Act to preserve its jurisdiction.

996 F.2d at 1430.

The Court of Appeals rejected the district court's interpretation of *Moitie*, *supra*, and

its progeny.[6]  As discussed below, in Section C, the Court of Appeals found that removal

was proper under the All Writs Act. Significantly, that the state court suits were filed in

Texas, and not New York where the class action was pending, was no impediment to removal

to a Texas district court. Nor did such a circumstance impede transfer to the New York

district court before jurisdictional questions were resolved. The same approach is applicable

here.

### C.  All Writs Act Removal Is Appropriate To Protect the
### *Holmes* Court's Jurisdiction and Orders.

Proceedings in this case are stayed and enjoined, pursuant to the *Holmes* court's order.

In its January 11 order, the court recognized that, in order to protect its jurisdiction over the

class action, it was necessary to avoid a multiplicity of CPI suits against Trustmark and the

other *Holmes* defendants. Therefore, recognizing its power under the All Writs Act, 28

U.S.C. § 1651, (p. 4), the court enjoined the plaintiffs and other class members from

proceeding with lawsuits against Trustmark, stating that "all pending and future lawsuits by

---

[6]  However, the distinction upon which the Court of Appeals relied does not apply here.
The Court of Appeals read *Moitie* and its progeny to require the first suit to be "expressly
grounded on federal law" before a subsequent state-law claim can be viewed as "an artfully
pleaded federal claim." 996 F.2d at 1431.  In the present case, the *Holmes* suit is, of course,
expressly grounded in federal law.

Trustmark borrowers against Trustmark as a result of CPI coverage obtained through

defendants Ross & Yerger, P.A., Ross & Yerger, Inc., Ross & Yerger Financial Systems, or

Prudential Property Casualty Insurance Company are hereby stayed and enjoined."

The *Holmes* court has subject matter jurisdiction over the case, because it arises under

federal law; the pendency of the class action itself invokes federal law, under the All Writs

Act. The plaintiffs' claims here are precisely the subject matter of the *Holmes* class action.

The plaintiffs are members of the plaintiff class, and are therefore represented by Holmes and

class counsel. They have been enjoined from proceeding separately on these claims. In order

to preserve the *Holmes* court's class action jurisdiction, and enforce the injunction, the

removal of the case was proper under the All Writs Act.

Federal courts possess the authority to remove actions from state court under the All

Writs Act, 28 U.S.C. § 1651, where necessary to protect their jurisdiction. *E.g., In re: Agent

Orange Product Liability Litigation*, 996 F.2d 1425 (2nd Cir. 1993). In *Agent Orange,* the

district court certified a Rule 23(b)(1)(B) "limited fund" class action, without opt out

provisions, for punitive damages. 996 F.2d at 1428. A settlement agreement was entered,

and approved by the court; the agreement and order permanently barred class members from

instituting future actions arising from Agent Orange exposure. 996 F.2d at 1429. Several

years after the settlement was approved, state court class actions were brought, with

complaints sounding exclusively in state law. 996 F.2d at 1430. Defendants removed the

cases, alleging "artful pleading" of a federal claim or, alternatively, complete federal

preemption. Id.

- 14 -

The court denied the motion to remand filed by class members.[7]  996 F.2d at 1430.
The plaintiffs appealed.  The Court of Appeals for the Second Circuit upheld federal
jurisdiction, finding the All Writs Act authorized removal of what was otherwise an
unremovable state court case as follows:

> Here, the district court was on sounder ground.  A district court,
> in exceptional circumstances, may use its All Writs authority to
> remove an otherwise unremovable state court case in order to
> "effectuate and prevent the frustration of orders it has previously
> issued in its exercise of jurisdiction otherwise obtained."  *United*

---

[7]  The district court in the Agent Orange litigation wrote as follows:

> The [All Writs] Act authorizes federal courts to exercise
> jurisdiction over persons "'who . . . are in a position to frustrate
> the implementation of a court order or the proper administration
> of justice.'"  *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d
> 855, 863 (2d Cir. 1986)), *cert. denied,* 489 U.S. 1077, 109 S. Ct.
> 1527, 103 L.Ed.2d 833 (1989).  The Act even permits a federal
> court to remove state court actions to federal court in situations
> where specific statutory removal authority is absent.  *City of
> Yonkers*, 858 F.2d at 863; *see United States v. New York Tel.*,
> 434 U.S. 159, 172, 98 S. Ct. 364, 372, 54 L.Ed.2d 376 (1977).
>
> . . .
>
> If the cases had remained in state court, the court would
> have had the authority to order their removal.  Moreover, any
> rulings inconsistent with the prior federal order would have been
> subject to further injunction by this court.  *See City of Yonkers*,
> 858 F.2d at 864 (citing *Swann v. Charlotte-Mecklenburg Bd. of
> Educ.*, 501 F.2d 383, 384 (4th Cir. 1974)).  Taking jurisdiction
> of the cases after their voluntary removal is a "less drastic, and
> therefore preferable result."  *City of Yonkers*, 858 F.2d at 864.
>
> The removal of these actions to this court is a mechanism
> for protecting the court's judgment and order.  Under the
> circumstances, it is the preferred method of enforcement, since it
> affords greater comity to state courts and is less burdensome on
> the parties than an injunction or contempt citation would be.

Ryan v. Dow Chemical Co., 781 F. Supp. 902, 918 (E.D. N.Y. 1991).

*States v. New York Tel. Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977).

> If Agent Orange victims were allowed to maintain separate actions in state court, the deleterious effect on the *Agent Orange I* settlement mechanism would be substantial. The parties to the settlement implicitly recognized this when they agreed that all future suits by class members would be permanently barred. It is difficult to conceive of any state court properly addressing a victim's tort claim without first deciding the scope of the *Agent Orange I* class action and settlement. The court best situated to make this determination is the court that approved the settlement and entered the judgment enforcing it. Removal in the instant case was an appropriate use of federal judicial power under 28 U.S.C. § 1651. See *United States v. City of New York*, 972 F.2d 464, 469 (2d Cir.1992); *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 863-64 (2d Cir.1988), cert. denied, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989). . . . Given the "exceptional circumstances" surrounding the instant case, issuance was a proper exercise of judicial discretion.

996 F.2d at 1430-31.

Other decisions recognize that the federal removal statutes are not the exclusive sources of removal jurisdiction. In <u>Yonkers Racing Corp. v. City of Yonkers</u>, 858 F.2d 855 (2nd Cir. 1988), the City initiated condemnation proceedings in state court against two landowners, in order to comply with judgments in prior civil rights litigation. The landowners sought to enjoin the condemnation proceedings. The City removed those condemnation proceedings to federal court. 858 F.2d at 858.

The landowners' motion to remand was denied. On appeal, the Court of Appeals for the Second Circuit affirmed the retention of the case based upon the All Writs Act. The condemnation proceedings resulted from judicial findings of violations of federal law prohibiting racial discrimination in housing. 858 F.2d at 859. The state and federal courts

- 16 -

recognized that state litigation over the condemnation proceedings might subject the parties to duties inconsistent with the civil rights suit judgment. 858 F.2d at 860-61.

The landowners objected to removal, in part because since the City was a "plaintiff," the removal statutes did not expressly authorize the removal. The Court held that removal by the City had been appropriate under the All Writs Act, regardless of whether the City was a "plaintiff," for the following reasons:

> Petitioners maintain that the federal removal statutes are the exclusive sources of removal jurisdiction. We disagree. In *Pennsylvania Bureau of Correction*, the Supreme Court expressly left open the question of the availability of the All Writs Act in exceptional circumstances to issue the writ when traditional statutory procedures clearly are inadequate. See 474 U.S. at 43, 106 S.Ct. at 361. . . . The Supreme Court has made clear "the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *New York Telephone Co.*, 434 U.S. at 172, 98 S.Ct. at 372; accord *Pennsylvania Bureau of Correction,* 474 U.S. at 40, 106 S.Ct. at 360.

> . . . .

> Moreover, were we to decide that removal was improper under the All Writs Act, the state court would be faced with a situation in which any order it issued that was inconsistent with the Consent Decree would be subject to the injunctive powers of the federal court under the exception provisions of the Anti-Injunction Act. See 28 U.S.C. § 2283 (federal court may not grant injunction against state court "except as expressly authorized by ... Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments"); see also Swann v. Charlotte-Mecklenburg Bd. of Educ., 501 F.2d 383, 384 (4th Cir.1974) (possibility of "conflicting orders from state and federal courts" sufficient to warrant injunctive relief against state court under 28 U.S.C. § 2283). Use of the All Writs Act in

this case to effectuate removal thus seems to us to be a less drastic, and therefore preferable, result.

. . . .

> Accordingly, we hold that removal was proper under the All Writs Act. We do so because removal was necessary to protect the integrity of the Consent Decree and because the issues raised by the Article 78 petitions cannot be separated from the relief provided by the Consent Decree. . . . Given the exceptional circumstances presented here, it is clear that the power of the All Writs Act extended over petitioners who were "in a position to frustrate the implementation" of the Consent Decree. *New York Telephone Co.*, 434 U.S. at 174, 98 S.Ct. at 373. If the power exists to issue extraordinary orders under the Anti-Injunction Act and the All Writs Act to prevent the prosecution of state proceedings, surely in this case it also exists to effectuate removal notwithstanding the availability of an independent basis for the exercise of jurisdiction under the federal removal statutes. In any event, by removing the Article 78 proceedings to federal court, petitioners are not being deprived of their statutory right to assert defenses to the taking of their properties; they are merely being prevented from litigating those defenses in state court. We conclude, therefore, that because of the significant risk of inconsistent decrees from two courts, it was "necessary or appropriate" for the district court to invoke the residual jurisdictional authority of the All Writs Act.

858 F.2d at 863-65.

Neuman v. Goldberg, 159 B.R. 681 (S.D. N.Y. 1993), also addressed the propriety of removal, under the All Writs Act, of an otherwise nonremovable action. Various investment partnership activities resulted in multidistrict litigation. One of the defendants filed a petition for reorganization in bankruptcy. A proposed reorganization plan had been filed. While federal suits were pending, plaintiffs filed a state court action. Although no federal claims were pleaded, defendants removed the case.

The court denied the plaintiffs' motion to remand, recognizing that "the All Writs Act gives federal courts sweeping authority to preserve their jurisdiction over complex, ongoing litigation which is a mild characterization of the situation here presented." 159 B.R. at 685. Because the state court action "not only relates to the pending federal bankruptcy as discussed below, but also threatens to disrupt the orderly resolution of the consolidated multi-district litigation before this Court," the court determined that removal was appropriate under the All Writs Act. The decision was based not only upon overlapping allegations and parties, but also because of "the very real possibility of inconsistent and conflicting declarations," as well as the fact that "competitive litigation will severely handicap this court's ability to manage . . . effectively" the federal court cases. 159 B.R. at 685-86.

Finally, the district court invoked the All Writs Act to retain jurisdiction over a removed case in Holland v. New Jersey Department of Corrections, 1994 WL 507 801 (D. N.J. 1994). Various administrative, state court, and federal court proceedings arose from allegations of pervasive discrimination by the Department of Corrections. A state court suit, based solely on state law allegations, was removed to the United States district court before which factually related federal actions were pending. The plaintiff moved to remand, arguing that removal was improper; only the defendants' counterclaim included any allegations of federal law.

The district court denied the motion to remand. While recognizing that "the All Writs Act does not provide this court with a jurisdictional blank check which it may wield whenever advisable or convenient," the court determined that "exceptional circumstances" justified removal under the Act to avoid conflicting orders and the protential for state court proceedings to frustrate the federal court's orders. 1994 WL 507801, p. 6.

The plaintiffs already have their claims before the *Holmes* court as class members. Their claims cannot be pursued in a separate proceeding without violating the *Holmes* court's orders. Removal under the All Writs Act and dismissal or transfer under traditional principles of comity or 28 U.S.C. § 1404(a) allow enforcement of that order by the *Holmes* court. If the case remained in state court, the *Holmes* court might have to issue orders directing specific proceedings in the state court system. Removal is therefore authorized and "less drastic" as recognized by the Second Circuit, implicating fewer questions of federalism.

### D. This Action is Removable Under 28 U.S.C. § 1367.

The claims asserted by these plaintiffs are such that this action is part of the same Article III "case or controversy" as the *Holmes* class action. *See United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). These plaintiffs are parties to the *Holmes* class action. The Mississippi district court unquestionably has original jurisdiction over this action; it also has supplemental jurisdiction under 28 U.S.C. § 1367(a). *See In Re Abbott Laboratories*, 51 F.3d 524 (5th Cir. 1995).

The supplemental jurisdiction statute provides in part:

> In any civil action of which the district courts have original
> jurisdiction, the district courts shall have supplemental
> jurisdiction over all other claims that are so related to claims in
> the action within such original jurisdiction that they form part of
> the same case or controversy under Article III of the United
> States Constitution.

This action is "supplemental" to the *Holmes* class action. Since there is federal court jurisdiction over *Holmes*, there is federal court jurisdiction over the supplemental action. The jurisdiction over supplemental claims was provided by Congress in mandatory fashion, *i.e.,*

- 20 -

"the district courts shall have supplemental jurisdiction over all other claims . . . [that] form part of the same case or controversy . . . ." By "providing that 'the district courts *shall* have supplemental jurisdiction . . .' [the statute] confers power to entertain supplemental jurisdiction in mandatory terms." *Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1555 (9th Cir. 1994).

*Leith v. Lufthansa German Airlines*, 793 F. Supp. 808, 812 (N.D. Ill. 1992) so held as follows:

> Once jurisdiction over the main claim is established, the statute mandates that the "district court *shall* have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction . . . ." 28 U.S.C. § 1367(a) (emphasis added). Without question, the two claims are "so related" for purposes of supplemental jurisdiction. In fact, the complaints, answers, and affirmative defenses are virtually identical. Undoubtedly, most of any proffered evidence will apply to each claim. The statute makes clear that not only pendent claims (same parties, related claim), but also pendent parties (different parties, related claims), are meant to be included. By including "additional" or pendent parties, the statute overrules prior Supreme Court precedent -- relied on by plaintiffs herein -- which rejected pendent party jurisdiction. *See* 28 U.S.C.A. § 1367 (comment at p. 232) (discussing *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)).

Similarly, in *Simcox v. McDermott International, Inc.*, 1993 U.S. Dist. LEXIS 18302 (S.D. Tex. Dec. 21, 1993), the court found as follows:

> [I]n resolving questions of jurisdiction, the initial removability of the later filed case no longer is determinative; the provisions of 28 U.S.C. § 1367 must be considered as well. For supplemental jurisdiction to attach, the subsequent case need not be independently removable, if it forms part of the same controversy as the prior case.

All of this comports with common sense. The respective lawsuits "derive from a common nucleus of operative fact." *Gibbs*, 383 U.S. at 725. Obviously, the claims of all class members should be tried in one judicial proceeding. *See Palmer v. Hospital Authority*, 22 F.3d 1559 (11th Cir. 1994). That the one judicial proceeding is in a Mississippi district court should not impede removal to this court to promote fundamental objectives of § 1367.

### E.   The National Bank Act's Complete Preemption of Plaintiffs' Claims Permits Removal.

There is yet another distinct and alternative ground for removal jurisdiction. The "charges" in question arose out of credit transactions of a national bank. Charges associated with extension of credit, particularly (alleged) unauthorized charges for insurance, are "interest" under the National Bank Act ("NBA"). And suits against a national bank claiming that such charges are excessive are, as a matter of law, suits alleging usury, which are preempted by 12 U.S.C. §§ 85 & 86. Therefore, Trustmark properly removed this suit, based upon the complete preemption under federal law of the plaintiffs' claims.

### 1.   The NBA Completely Preempts Claims For Unauthorized or Excessive Interest.

The plaintiffs do not cite "usury" as the theory of their case, but federal jurisdiction cannot be avoided by placing a state-law label on a claim that is, in Supreme Court parlance, "'really' one of federal law." Federal law holds that (i) charges attendant to the extension of credit, including unauthorized charges for insurance, are indeed "interest" under the NBA; (ii) borrower claims of excessive or unauthorized insurance charges are therefore claims of unlawful "interest," and are "really" claims of federal law; (iii) borrower claims of unlawful

"interest" against a national bank are entirely preempted by Section 86 of the NBA; and (iv) such borrower claims against a national bank create federal question jurisdiction.

A case is removable to federal court if it is "founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b). The "well-pleaded complaint" rule mandate that federal preemption, which is usually raised as a defense, may not justify removal. But "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Thus, if a federal statute completely preempts a particular area, a "plaintiff cannot thwart the removal of a case by inadvertently, mistakenly or fraudulently concealing the federal question that would necessarily have appeared if the complaint had been well pleaded." MOORE'S FEDERAL PRACTICE ¶ 0.160[3.3], at 234 (2d ed. 1995). Federal jurisdiction is available if, in the language of the Supreme Court, one of plaintiffs' claims "is 'really' one of federal law." *Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2840, 2848 (1983).

Trustmark is a national banking association created and existing under the NBA. Section 86 of the NBA provides an exclusive federal remedy for usury claims against national banks. 12 U.S.C. § 86. It is settled law that section 86 "preempts the field and leaves no room for varying state penalties." *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 610 (8th Cir. 1991); *see also Watson v. First Union Nat'l Bank of South Carolina*, 837 F. Supp. 146, 148-49 (D.S.C. 1993).

In *M. Nahas*, plaintiffs brought suit in state court against a national bank, alleging that the bank charged interest violating Arkansas' usury statutes. Defendant removed the case,

based upon the complete federal preemption of state usury laws in suits against national

banks. The district court denied remand, and the court of appeals affirmed, based upon

established precedent:

> In the politically sensitive realm of usury regulation, Congress
> has for more than a century exercised its preemptive power to
> regulate national banks. With respect to the substantive
> regulation of what interest rates may be charged, Congress has
> with some exceptions adopted the policy of allowing a national
> bank to charge interest "at the rate allowed by the laws of the
> State . . . where the bank is located . . . and no more," 12 U.S.C.
> § 85, consistent with its broad objective of promoting
> competitive equality between national banks and their
> locally-chartered competitors. At the same time, however,
> Congress has prescribed in the national banking laws precisely
> what remedies are available against a national bank for usury, in
> order to promote remedial uniformity and to protect national
> banks from destructive usury penalties frequently available under
> state law. See Farmers' & Mechanics' National Bank v.
> Dearing, 91 U.S. 29, 23 L.Ed. 196 (1875).
>
> . . . It is well settled that, "since Congress has provided a penalty
> for usury, that action preempts the field and leaves no room for
> varying state penalties." First National Bank in Mena v. Nowlin,
> 509 F.2d 872, 881 (8th Cir. 1975). See McCollum v. Hamilton
> National Bank, 303 U.S. 245, 58 S.Ct. 568, 82 L.Ed. 819
> (1938); Barnet v. National Bank, 98 U.S. 555, 25 L.Ed. 212
> (1879); United Missouri Bank v. Danforth, 394 F.Supp. 774,
> 779-780 (W.D.Mo. 1975).

930 F.2d at 610. The court of appeals acknowledged the well-pleaded complaint rule, stating

that plaintiff is generally the "master of his claim, and may avoid federal removal jurisdiction

by exclusive reliance on state law," *id.* at 611, but nonetheless unhesitantly found usury to be

outside the rule:

> [T]his type of removal is most appropriate where Congress has
> created an exclusive federal remedy that displaces any
> overlapping or inconsistent state remedies. . . . That is precisely
> the situation here. Section 86 is an exclusive federal remedy,
> created by Congress over 100 years ago to prevent the

application of overly-punitive state law usury penalties against national banks. It is now settled that suits under § 86 may be brought in federal court. Burns v. American National Bank and Trust Co., 479 F.2d 26 (8th Cir.1973) (en banc). Thus, whether or not plaintiff artfully attempted to couch its complaint wholly in state law terms, it was necessarily federal in nature and properly removable. See Beeman v. MBank Houston, N.A., 691 F.Supp. 1027 (S.D.Tex. 1988).

903 F.2d at 612.

As shown below, the plaintiffs' claims in this case are in reality usury claims as a matter of law. Their state law claims are therefore completely preempted by the NBA.

### 2. Unauthorized or Excessive Charges Are "Interest" Under the NBA.

"Interest" has a broad meaning under the NBA. Excessive and unauthorized insurance premiums, when charged by a lender, are interest. *Kenty v. Bank One, Columbus, N.A.*, No. C2-90-709, 1992 WL 170605 (S.D. Ohio). In *Kenty*, plaintiff purchased a vehicle which she financed through the defendant bank. As in the present case, the loan agreement allowed the bank to procure collateral protection insurance if the plaintiffs failed to maintain insurance on their vehicle.

The plaintiff sued under section 86 of the NBA, alleging that the insurance premiums included in his loan balance were "interest," and that he had been charged a usurious rate of interest in the form of: "(1) rebates received from [the insurer] which were not credited to [his] account, so that he was charged higher premiums than [the bank] itself paid for the insurance; (2) excess premiums representing insurance coverage in excess of the collateral protection insurance authorized in the loan agreement; and (3) interest accrued on the excess premiums." *Id.* at *3. The bank argued that plaintiff had failed to state a claim under the

- 25 -

NBA because the premiums were not "interest." The court, however, denied the bank's motion to dismiss, holding that the unauthorized and excessive insurance premiums were indeed "interest," and that plaintiff had therefore stated a claim under the NBA. *Id.* at \*4.

In reaching this conclusion, the court noted that neither the NBA nor Ohio law defines the term "interest." The court therefore looked to Black's Law Dictionary, which defines "interest" as "the compensation allowed by law or fixed by the parties for the use or forbearance or detention of money." Based on this definition, the court held that "[c]harges that are <u>unauthorized and unnecessary</u> to protect the collateral must be considered compensation to the bank for the extension of credit." *Id.* at \*3 (emphasis added). Therefore, "any unauthorized charges for unauthorized insurance added to a loan balance must be considered 'interest.'" *Id.* at \*4.

The court also held that any "kickbacks" or "rebates" the bank received from the insurer and any premiums charged to plaintiff's loan balance that were not paid to the insurer were also "interest." *Id.* (Plaintiffs here make similar allegations that Trustmark received improper payments from the insurers.) The court noted, however, that insurance premiums authorized by the loan agreement would not be considered interest under Ohio law. *Id.*[8]

---

[8] *Smiley v. Citibank*, 19 U.S. LEXIS 3594 (June 3, 1996), cited by plaintiffs, is not inconsistent. The Supreme Court in *Smiley* <u>upheld</u> the bank's preemption defense under 12 U.S.C. § 85, on the basis that late fees were "interest." The OCC regulation on which that opinion was based did not exclude unauthorized CPI charges; rather, it excluded, "ordinarily," premiums and commissions for insurance "guaranteeing repayment of any extension of credit . . . ." 61 Fed. Reg. 4869. Whether (a) supposedly "excessive" CPI charges or (b) interest on those charges are included in the term "interest" is a different question. "This court need not decide whether the fees and charges at issue in this case actually constitute 'interest' for purposes of these sections; to do so would be to address the merits of the controversy, which this court need not -- and should not -- do when deciding the jurisdictional issue." *Ament*, 825 F. Supp. at 1249. The office of the Comptroller of the Currency, charged by law with
(continued...)

Trustmark denies that plaintiffs were charged excessive or unauthorized amounts, but they assert otherwise. For example, plaintiffs' reliance on the Alabama Mini-Code (which does not apply to these Mississippi transactions) necessarily implicates either excessive interest charges or unauthorized and excessive insurance costs. Plaintiffs clearly claim that Trustmark charged them and other borrowers excessive interest. (See Complaint, ¶¶ 13, 16, 19, 20, 45, 54.) And similar to the *Kenty* court, the Mississippi Supreme Court has noted that improper or exorbitant insurance premiums are "interest." In *Winter v. Murdock Acceptance Corp.*, 149 So. 2d 516, *modified on other grounds*, 153 So. 2d 292 (Miss. 1963), defendant required its borrowers to purchase property damage insurance. If the borrower failed to maintain the insurance, the loan agreement authorized defendant to purchase insurance and charge the premiums to the principal amount of the loan. Plaintiff argued that the insurance premiums charged by defendant were interest.

The Mississippi Supreme Court observed that the "general rule is that a lender may require the borrower, as further security for the loan, to carry insurance and assign the policy to the lender without rendering the loan usurious." *Id.* at 518. But the court noted that

> usury cannot be hidden by schemes that merely appear to be
> valid when in substance they are evasions of the usury laws.
> This principle has been applied by other courts in connection
> with <u>the charging of improper or exorbitant insurance premiums</u>

---

[8](...continued)

regulating national banks, concurs in the premise that "interest" is used in the NBA in the broad sense to include any and all kinds of lending charges imposed by a national bank. <u>OCC Interpretive Letter 670</u>, 1995 WL 419824.

> tied into loans when such practice has been found to be a mere
> sham and evasion of the usury laws.

*Id.* (emphasis added). Although the court found that this rule did not apply on the facts before it, it drew the same distinction as the *Kenty* court: *legitimate insurance premiums are not interest, but "improper" or "exorbitant" insurance premiums (particularly those alleged to be profitable to the lender) are.*

*Nelson v. Citibank (South Dakota) N.A.*, 794 F. Supp. 312 (D. Minn. 1992) is also directly on point. Plaintiffs sought a class action against a national bank in state court, challenging the bank's charging of late fees and over limit fees on credit card accounts. In their initial complaint, plaintiffs claimed defendants' charging of interest on a balance that included principal, late fees and over limit charges was usurious under state law.

Defendants removed the case, alleging complete preemption under the NBA. Plaintiffs amended their complaints to delete the usury allegations, but still complained about the interest charges, 794 F. Supp. at 313, 314 n.3. Plaintiffs then moved to remand, citing lack of a federal question.

The court recognized the "complete preemption" exception to the "well pleaded complaint rule," and that claims against national banks for "unlawful interest rates" are completely preempted by federal law. 794 F. Supp. at 315-16. Significantly, the court found that whether plaintiffs cite usury as their theory of recovery does not control: "[T]he issue is not what theories plaintiffs name in their complaints or what the central issue of their claims is; rather, the issue is whether plaintiffs seek a remedy for usurious interest paid. If they do, then their claims arise, at least in part, from federal law and removal is proper." 794 F. Supp. at 316.

- 28 -

Similarly, the court refused to view the fundamental inquiry regarding the definition of "interest" under sections 85 and 86 as a matter of semantics. In deciding whether "flat" fees and charges are interest under the Act, "courts look beyond the label attached to the fee by the lender to determine the effect of the charge on the interest rate." 794 F. Supp. at 318 n.5. The court then cited numerous cases taking an expansive view of "interest" under sections 85 & 86. Based upon this "rather overwhelming authority," the district court in *Nelson* held that flat charges constituted "interest," that the claims were effectively for usury, and that the case would not be remanded.

Other courts have ruled likewise. *See, e.g., Goehl v. Mellon Bank (DE)*, 825 F. Supp. 1239, 1242-43 (E.D. Penn. 1993) (upholding removal of late-fee suit on basis of NBA preemption); *Ament v. PNC National Bank*, 825 F. Supp. 1243 (W.D. Penn. 1992), (upholding removal of suit for credit card fees, including annual fees, late fees, etc.).

Thus, plaintiffs' allegations that Trustmark added excessive insurance premiums to the balance of their loans, and collected improper interest, are efforts to protect the same interests which Congress has vindicated through section 86. Legally plaintiffs' allegations are allegations of usury. Because Congress has provided an exclusive federal remedy for usury claims against national banks to avoid the application of overly-punitive state law penalties, plaintiffs cannot deny Trustmark its right to remove this case to federal court by failing to recognize the controlling federal law. The NBA completely preempts plaintiffs' state law claims. This case has therefore been properly removed to federal court.

F.  Removal Is Also Proper Under 28 U.S.C. §§ 1331
And 1337 Because The Resolution Of Plaintiffs' Claims
Necessarily Turns On A Construction Of Federal Law.

The removal of this case is also proper because to vindicate plaintiffs' state law

claims, the court must necessarily construe the NBA. It is not necessary that federal law

create the cause of action, for the Supreme Court has often noted that a case can "arise under"

federal law "where the vindication of a right under state law necessarily turn[s] on some

construction of federal law." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804,

808 (1986); *Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 8-9, 28 (1983); *see

also Kidd v. Southwest Airlines Co.*, 891 F.2d 540, 542 (5th Cir. 1990). "Even though the

claim is created by state law, a case may 'arise under' a law of the United States if the

complaint discloses a need for determining the meaning or application of such a law." *T.B.

Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir. 1964), *cert. denied*, 381 U.S. 915 (1965).

This rationale has also been used to uphold federal jurisdiction in cases turning on

construction of the NBA. In *North Davis Bank v. First National Bank of Layton*, 457 F.2d

820 (10th Cir. 1972), the court found that it had jurisdiction because the resolution of the case

turned on a construction of the NBA even though plaintiff sued under the state statute

governing branch banking. The Tenth Circuit held that what constitutes a branch of a

national bank is determined by the NBA, 12 U.S.C. § 36(f), and not by local law. *Id.* at 823.

Because the case therefore turned on "rights and immunities arising from federal statutes," the

case had been properly removed to federal court. *Id.*

The NBA grants national banks the power to exercise "all such incidental powers as

shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). The

Comptroller of the Currency has interpreted this provision to authorize national banks to procure collateral protection insurance. *See* OCC Interpretive Letter No. 91 (April 24, 1979), reprinted in 1978-79 Transfer Binder, Fed. Banking L. Rep. (CCH) ¶ 85,166, 1979 WL 25506; see also OCC Interpretive Letter No. 283 (March 16, 1984), reprinted in 1983-1984 Transfer Binder Fed. Banking L. Rep. (CCH) ¶ 85,447, 1984 WL 63791. Since states cannot impede national banks' exercise of incidental powers, plaintiffs' claims will fail, if they rest upon acts authorized by federal law.

Plaintiffs' allegations that Trustmark was required to purchase property insurance only from plaintiffs' agents (Complaint, ¶ 9) are tantamount to contending a national bank cannot have a CPI program. Fundamental to the CPI program is the existence of a master insurance policy under which individual coverages can be placed as and when circumstances involving thousands of borrowers may dictate. Individual borrower control over agent and carrier selection would render such a CPI program impossible. Moreover, CPI is fundamentally a different insurance product than the standard car insurance typically maintained by an individual borrower. National banks cannot, nor should they, involve themselves in attempts to maintain standard car insurance.

Thus, plaintiffs' threshold contentions necessarily turn on interpretation of federal law. Trustmark's implementation of the CPI program must first be evaluated under the NBA. The resolution of plaintiffs' claims necessarily turns on the extent to which national banks are authorized to procure collateral protection insurance under the NBA.

To determine plaintiffs' claims in this case, the court must examine the authority of a national bank under the NBA to procure collateral protection insurance (state law cannot restrict said authority if conferred under federal law). Therefore, as in *North Davis*, the

resolution of this case turns on a construction of federal law. As a result, it has been properly removed to federal court.

### G. If This Case is Not Dismissed, It Should Be Transferred to the Mississippi District Court for Resolution of All Issues.

Trustmark's removal of this case to this court is consistent with the procedure followed in *Agent Orange* and the Mississippi district court's exercise of jurisdiction pursuant to the All Writs Act without being inhibited by plaintiffs' attempts to assert only state law claims. Plaintiffs' protestations notwithstanding, subject matter jurisdiction exists to empower this court to dismiss. Moreover, plaintiffs' categorical assertion that this court cannot transfer this action unless it has subject matter jurisdiction is wrong. 28 U.S.C. § 1631 authorizes and dictates transfer even if this court lacks jurisdiction.

Section 1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

That the absence of subject matter jurisdiction in the transferor court is no impediment to transfer under § 1631 could not be clearer. Indeed, in *Grimsley v. United Engineers and Constructors, Inc.*, 818 F. Supp. 147 (D.S.C. 1993), the court found merit in the defendant's motion to dismiss for lack of subject matter jurisdiction. Finding it was without jurisdiction,

the court further found transfer pursuant to 28 U.S.C. § 1404(a) was unavailable. *Id.* at 148. Nonetheless, concluding transfer was in the interest of justice, the court transferred the action to another federal district court in another state where the action could have been originally brought. *Id.* at 148-49.

Moreover, the rule should be no different with respect to controversies removed from state courts. In *Piazza v. Upjohn Co.*, 570 F. Supp. 5 (M.D. La. 1983), the district court found the action had been improvidently removed under 28 U.S.C. §§ 1441 and 1446(a) to the wrong district court. While finding it lacked jurisdiction, the district court declined to remand and instead transferred the case pursuant to § 1631 to the federal district court for the district and division within which the state court action had been pending. Furthermore, the district court did so without finding that the transferee court would have jurisdiction. Rather, the transferor court concluded that it was "in the interest of justice to secure federal adjudication of defendant's claim of 'fraudulent' joinder and that may be accomplished only by transferring these actions" to another federal district court. *Id.* at 8.[9]

Unquestionably, the interest of justice dictates transfer here to the Mississippi district court. Plaintiffs identify themselves as Mississippi residents. All parties, including plaintiffs, are already before the Mississippi district court. Virtually every common criterion utilized to determine the advisability of transfer weighs heavily in favor of transfer. (See Trustmark

---

[9] The transfer process after removal has already been adopted as a method to avoid confrontation with the *Holmes* litigation. Exhibit D to Trustmark's motion to dismiss is Judge Gex's denial of a motion to remand a separate suit filed by plaintiffs Holden and Rogers. That suit was transferred to Judge Gex by Judge Pickering, while the motion to remand was pending, see Exh. F hereto. Likewise, a separate suit filed by class member Lemmel Black was transferred to Judge Gex from Judge Wingate's court while a remand motion was pending, see Exh. G.

brief, Memorandum In Support Of Motion to Dismiss or Transfer at 7-9.) The only arguable circumstance favoring an Alabama venue is the location of plaintiffs' individual counsel in Mobile. Yet, plaintiffs are otherwise adequately represented in the Mississippi proceeding. More importantly, their Alabama counsel have necessarily acknowledged that for plaintiffs to proceed in any court other than the Mississippi district court, they must petition the Mississippi court for permission to do so. (Plaintiffs' brief, motion to remand at 5-6 and brief opposing motion to transfer at 5-6.) It makes no sense to deny transfer to the very federal court plaintiffs otherwise represent they will appear before. Thus, if this court does not dismiss this case outright, transfer is warranted.[10]

Conclusion

Plaintiffs' motion to remand should be denied. This action should be dismissed or transferred.

Respectfully submitted,

TRUSTMARK NATIONAL BANK

By_____

William F. Goodman, Jr. (4897)
Paul H. Stephenson, III (7864)
William F. Ray (4654)
WATKINS & EAGER PLLC
400 E. Capitol, Suite 300
Post Office Box 650
Jackson, MS 39205
Telephone (601)948-6470

---

[10] Plaintiffs contend that this Court should remand so that if the Mississippi district court permits plaintiffs to proceed independently, plaintiffs will be able to proceed in an Alabama state court. (Plaintiffs' brief motion to transfer at 6.) Such a contention is obviously hollow. Placing this entire controversy before the Mississippi district court will not deny plaintiffs a state court forum if ultimately found to be appropriate.

- 34 -

By _____
Louis E. Braswell
HAND ARENDALL, L. L. C.
Post Office Box 123
Mobile, Alabama 36601
(334) 432-5511

## CERTIFICATE OF SERVICE

I do hereby certify that I have served, via United States mail, first class postage prepaid, a true and correct copy of the foregoing **Trustmark's Response and Memorandum Opposing Motion to Remand and Rebuttal Memorandum in Support of Motion to Dismiss or Transfer** upon:

Frederick T. Kuykendall, III
Peter H. Burke
Cooper Mitch Crawford Kuykendall
 & Whatley, L.L.C.
505 20th Street North
1100 Financial Center
Birmingham, AL 35203

Forrest S. Latta
H. William Wasden
W. Pemble Delashmet
Pierce Ledyard Latta & Wasden, P.C.
Post Office Box 16046
Mobile, Alabama 36616

E. Mark Ezell
Sara Hicks Stewart
Ezell & Sharbrough, L.L.C.
Post Office Box 595
308 S. Mulberry Avenue
Butler, AL 36904

William Benton Gregg
Thomas M. Louis
Dogan & Wilkinson, PLLC
Post Office Box 23062
Jackson, MS 39225-3062

Roy H. Liddell
Wells, Marble & Hurst
P. O. Box 131
Jackson, Mississippi 39205-0131

This the 12th day of July, 1996.

_____
Louis E. Braswell

- 35 -

# Installment Note & Disclosure Statement

fg

| | | |
|---|---|---|
| Ronnie Jackson<br>(BORROWER) | **Trustmark**<br>National Bank<br>JACKSON MS<br>ADDRESS<br>P.O. Box 291<br>Jackson, MS 39205 | Loan Number 205-21688 |
| 3470 CArley Drive<br>(STREET ADDRESS OR BOX NO.) | | Date December 4, 19 87 |
| Jackson, MS 39213<br>(CITY)    (STATE)    (ZIP) | | Loan Amount $ 15,080.16 |

The undersigned, herein called Borrower, whether one or more, promises to pay to the order of Trustmark National Bank, Jackson, Mississippi, herein called Bank, at its Main banking office in Jackson, Mississippi, or any Branch thereof, the sum of

**Fifteen thousand eighty and 16/100ths—————————————————** Dollars

($ 15,080.16 ) ("Total of Payments) payable in 48 consecutive monthly installments of $ 314.17 each,

beginning on January 15, 19 88, and continuing on the same day of each succeeding month, until fully paid, or until _____, 19 ____

at which time a final payment of $ _____ is due and payable.

Each delinquent installment shall (1) bear interest after maturity at the rate of 10% and (2) be subject to a late payment charge of $5.00 or 4% of the amount of the installment, whichever is greater, (not to exceed $50.00), provided the installment is more than 15 days past due. In the event that the interest on this installment note is less than $15.00, a charge of $15.00 in lieu of interest will be made.

SECURITY PROVISIONS:
This loan is ☐ unsecured.
This loan is secured by ☒ Security Agreement or a ☐ Deed of Trust of even date herewith covering the following described property and any proceeds thereof: (Check one) (If other type, specify)

One (1) 1985 Cadillac El Dorado Barritz, S/N #1G6EL5786FE602163,
together with all parts, accessories and attachments, thereto.

_____
_____
_____

(If property not clearly identified above, furnish Borrower with copy of security instrument.)

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. |
|---|---|---|---|
| 11.50 % | $ 3,080.16 | $ 12,000.00 | $ 15,080.16 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 48 | $314.17 | Monthly beginning January 15, 1988. |

SECURITY: You are giving a security interest in:
☒ The goods or property being purchased.

☐ _____ (BRIEF DESCRIPTION OF OTHER PROPERTY)
☒ Collateral of other loans you have with this bank may also secure this loan.                Filing Fees
☒ Any right you may have to payment of money from this bank.                                  $ _____
☐ ASSUMPTION: If this is a residential mortgage transaction,
   ☐ Someone buying your home cannot assume the remainder of the mortgage on the original terms.
   ☐ Someone buying your house may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.
LATE CHARGE: If a payment is more than 15 days past due, you will be charged 4% of the amount of the payment, or $5.00, whichever is greater, not to exceed $50.00.
PREPAYMENT: If you pay off this loan early you may be entitled to a refund of part of the finance charge.
MORE INFORMATION: See your contract documents for any additional information regarding Bank's right to require repayment in full before the scheduled date, security interests, non-payment, default, and prepayment rebates.                "e" means an estimate. If a box (☐) is not checked that term does not apply.

INSURANCE. Credit life insurance and credit disability insurance are not required to obtain credit and will not be provided unless you sign and agree to pay the additional cost. The insurance extends for the term of this Contract.

Itemization of Amount Financed

| Type | Premium | Signature |
|---|---|---|
| Credit Life | $ | I want credit life insurance.<br>_____<br>Signature |
| Joint Credit Life | $ | We want joint credit life insurance.<br>_____<br>Signature<br>_____<br>Signature |
| Credit Disability | $ | I want credit disability insurance.<br>_____<br>Signature |

You may obtain property insurance from anyone you want that is acceptable to Bank. If you obtain the insurance through us you will pay $ _____ for _____ months coverage.

Amount given to you directly                              $ 12,000.00 (a)
Amount paid on your account                               $ _____ (b)
Amounts paid to others on your behalf:
To Credit Life Insurance Company                          $ _____ (c)
   (includes commission paid to or retained by bank)
To Disability Insurance Company                           $ _____ (d)
   (includes commission paid to or retained by bank)
To Property Insurance Company                             $ _____ (e)
To Public Officials For:
   UCC Filing & Recording Fees                            $ _____ (f)
   Title Fees (Motor Vehicle)                             $ _____ (g)
Other (describe) _____                               $ _____ (h)
                                                          $ _____ (i)
AMOUNT FINANCED (a through i)                             $ 12,000.00

Borrower(s) acknowledge receipt of a copy of this Installment Note and Disclosure Statement and agrees to the terms and conditions contained on this side and the reverse side hereof.

Witness _Dauchiya_            Signature _Ronnie Jackson_

                              Signature Ronnie Jackson

PRECOMPUTED INTEREST          Signature _____
1454  4-86

NOTICE: SEE OTHER SIDE FOR ADDITIONAL CONTRACT TERMS.

Exhibit "A"

OTHER SECURITY. Collateral securing other loans with us also secure this loan, except collateral which is your principal dwelling. Bank hereby waives any right it may have, or may acquire, to secure this loan with your principal dwelling unless a Right to-Rescission is given, as required by law. This waiver shall not apply to any such documents executed in connection with this loan if your principal dwelling is described as collateral on this loan or other contract documents.

DEFAULT, ACCELERATION AND ATTORNEY'S FEES. Any of the following shall constitute an Event of Default hereunder: (1) failure of Borrower or any other party hereto to perform any agreement hereunder or pay any obligation secured hereby when due; (2) death of Borrower or any other party hereto; (3) filing of any petition in bankruptcy by or against Borrower or any other party hereto; (4) application for appointment of a receiver for, making of a general assignment for the benefit of creditors by, or insolvency of Borrower or any other party hereto; or (5) determination by any officer of Bank that a material adverse change has occurred in the financial condition of Borrower or any party hereto. Upon default in payment of this note, or upon the occurrence of any Event or Default, Bank may at its option declare the entire unpaid balance of the indebtedness evidenced hereby be accelerated and become immediately due and payable without demand or notice. In the event the entire unpaid balance is so accelerated, the unearned portion of the FINANCE CHARGE calculated under the Rule of 78's will be credited to the Borrower's obligation as rebate. No rebate will be made for an amount of $1.00 or less. Upon occurrence or any Event of Default, or at any time thereafter, Bank shall have the remedies of a secured party under the Uniform Commercial Code of Mississippi. Any notice of sale or other intended disposition of the collateral by the Bank sent to the Borrower at the address shown herein, or such other address of Borrower as may be shown on Bank's records, at least five days prior to such action, shall constitute reasonable notice to Borrower. If this note is placed in the hands of an attorney for collection, or to acquire possession of any collateral security this loan, Borrower agrees to pay all costs of collection including reasonable attorney's fees. Borrower agrees that Bank shall have the right to set off the balance due on this note in whole or in part against any funds due by Bank to Borrower or to any party to this note should the Borrower be in default. Protest of this note is waived.

PAYMENT IN FULL PRIOR TO MATURITY. Upon voluntary prepayment in full by cash, new loan, refinancing or otherwise before the final installment date, the unearned portion of the FINANCE CHARGES computed under the Rule of 78's method will be credited to the Borrower's obligation as a rebate. No rebate will be made for an amount of $1.00 or less.

NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.

Mississippi Bankers Association
MBA Form No. 2
November, 1985

FORM No. 2

SECURITY AGREEMENT

Consumer Goods — Equipment — Farm Equipment
Motor Vehicles except when Inventory

Ronnie Jackson
(Name)

3470 Carley Drive, Jackson, Hinds, Mississippi 39213
(Street Address)     (City)     (County)     (State)

(hereinafter called "Debtor") a (an) _____ Individual _____ , said
(Corporation — Partnership — Individual)

address being Debtor's _____ Residence _____ , hereby grants to
(Place of Business — Residence)

Trustmark National Bank _____ , _____ Jackson _____ , Mississippi

(hereinafter called "Bank") a security interest in the following goods:

One (1) 1985 Cadillac El Dorado Barritz, S/N #1G6EL5786FE602163,
together with all parts, accessories and attachments, thereto.

together with all equipment, parts, accessories, attachments and replacements thereof and additions thereto, and all other goods of the same class whether now owned or hereafter acquired by Debtor (except after-acquired consumer goods acquired more than ten (10) days after the secured party gives value), and the proceeds thereof (hereinafter collectively called "Collateral"), to secure (1) payment of a note dated ___ December 4, 1987 ___ , executed and delivered by Debtor to Bank in the sum of $ 15,080.16 _____ payable as to principal and interest as therein provided; (2) further advances to be evidenced by like note or notes which may be made by Bank to Debtor; (3) all other liabilities (primary, secondary, direct, contingent, sole, joint or several) due or to become due or which may be hereafter contracted or acquired, of each Debtor to Bank; and (4) performance by Debtor of the agreements hereinafter set forth. Notwithstanding any provision in this agreement or in any other agreement with Bank, the Bank shall not have a nonpossessory security interest in and its Collateral shall not include any household goods (as defined in Federal Reserve Board Regulation AA, Subpart B), unless the household goods are identified in a security agreement and are acquired as a result of a purchase money obligation. Such household goods shall only secure said purchase money obligation (including any refinancing thereof).

DEBTOR REPRESENTS, WARRANTS AND AGREES AS FOLLOWS:

1. The Collateral will be used by Debtor primarily
   _X_ for personal, family or household purposes.
   _____ in farming or ranching operations.
   _____ in business, and that all of Debtor's places of business are in the County above set forth except

_____ as fixtures, attached or to be attached to real estate owned or leased by _____
_____ and described as follows:

2. Debtor agrees to pay Bank: (a) the sums evidenced by all promissory notes executed pursuant to this agreement in accordance with the terms of the agreement and of the notes; (b) all sums, including reasonable attorney's fees and legal expenses, paid or incurred by Bank in pursuing any of its rights and remedies or in remedying any default pursuant to this agreement, with interest to be paid as provided in the note or notes; and (c) at Bank's option, the entire unpaid indebtedness to Bank, whether created or incurred pursuant to this agreement or otherwise, upon Debtor's default or if Bank deems itself insecure.

3. Debtor will prom    notify Bank, in writing, of any new place or places of business i    Collateral is used in business, or of any change in Debtor's residence if the Collateral is not used in business, and regardless of use, or any change in the location of the Collateral.

4. Debtor is the owner of the Collateral free and clear of all liens and security interests, or the Collateral is being acquired by Debtor with the proceeds of the note described above and Bank is authorized to disburse the proceeds of said loan directly to the seller of the Collateral as shown on Bank's records. Debtor will defend the Collateral against the claims and demands of all persons.

5. Unless Debtor has represented above that the Collateral is attached or will be attached to realty as a fixture and the real property is described herein, Debtor will not allow the Collateral to be attached to real estate in such manner as to become a fixture or a part of any real estate. Neither will Debtor allow the Collateral to become an accession to other goods without the Bank's consent.

6. Debtor will pay the Bank all amounts secured hereby as and when the same shall be due and payable, whether at maturity, by acceleration or otherwise, or when Bank deems itself insecure for any reason, and will perform all terms of said indebtedness and this or any other security or loan agreement between Debtor and Bank, and will discharge all said liabilities.

7. Debtor will at all times keep the Collateral insured against all insurable hazards in amounts equal to the full cash value of the Collateral. Such insurance shall be in such companies as may be acceptable to Bank, with provisions satisfactory to Bank for payment of all losses thereunder to Bank as its interest may appear, and, if required, to deposit the policies with Bank. Any money received by Bank under said policies may be applied to the payment of any indebtedness secured hereby, whether or not due and payable, or at Bank's option may be delivered by Bank to Debtor for the purpose of repairing or restoring the Collateral. Debtor assigns to Bank all right to receive proceeds of insurance not exceeding the amounts secured hereby, directs any insurer to pay all proceeds directly to Bank, and Bank is appointed Debtor's Attorney in Fact to endorse any draft or check made payable to Debtor in order to collect the benefits of such insurance. If Debtor fails to keep the Collateral insured as required by Bank, Bank shall have the right to obtain such insurance at Debtor's expense and add the cost thereof to the other amounts secured hereby.

8. Debtor will keep the Collateral in good condition and repair and will pay and discharge all taxes, levies and other impositions levied thereon as well as the cost of repairs to or maintenance of same, and will not permit anything to be done that may impair the value of any of the Collateral. If Debtor fails to pay such sums, Bank may do so for Debtor's account and add the amount thereof to the other amounts secured hereby.

9. Debtor will pay all costs of filing financing, continuation and termination statements with respect to the security interest created hereby and Bank is authorized to do all things which it deems necessary to perfect and continue perfected the security interest created hereby and to protect the Collateral.

10. Debtor will not permit any of the Collateral to be removed from the location specified herein, except for temporary periods in the normal and customary use thereof, without the prior written consent of Bank, and will permit Bank to inspect the Collateral at any time.

11. Debtor will not sell, exchange, lease or otherwise dispose of any of the Collateral without the prior written consent of Bank; permit any liens or security interests to attach to any of the Collateral except that created by this agreement; permit any of the Collateral to be levied upon under any legal process; or permit anything to be done that may impair the security intended to be afforded by this agreement. The inclusion of proceeds in this agreement does not authorize Debtor to sell, dispose of or otherwise use the Collateral in any manner not specifically authorized by the agreement.

12. Debtor shall be in default under this agreement: (a) when he has made any misstatement in connection with or has failed to pay or perform any of his obligations, agreements or affirmations under this or any other security agreement with Bank; (b) when any event occurs which results in acceleration of the maturity of the indebtedness of Debtor under any agreement with any person; (c) upon the death, dissolution, termination of existence or business failure of Debtor, or the appointment of a receiver for any part of the property of, assignment for the benefit of creditors by, or the commencement of any proceeding in bankruptcy or insolvency by or against, Debtor or any surety for Debtor; or (d) when Bank in good faith deems itself insecure and its prospect of payment impaired.

Until default in any of the terms hereof, or the terms of any indebtedness secured hereby, or until Bank deems itself insecure, Debtor shall be entitled to possession of the Collateral and to use the same in any lawful manner, provided that such use does not cause excessive wear and tear to the Collateral, cause it to decline in value at an excessive rate, or violate the terms of any policy of insurance thereon.

UPON DEFAULT, all sums secured hereby shall immediately become due and payable at Bank's option without notice to Debtor, and Bank may proceed to enforce payment of same and to exercise any or all rights and remedies provided by the Uniform Commercial Code of Mississippi or other applicable law, as well as all other rights and remedies possessed by Bank, all of which shall be cumulative. Whenever Debtor is in default hereunder, and upon demand by Bank, Debtor shall assemble the Collateral and make it available to Bank at a place reasonably convenient to Bank and Debtor. Any notice required to be given under the Uniform Commercial Code of Mississippi of sale, lease or other intended disposition of the Collateral by Bank sent to Debtor at the address specified above, or at such other address of Debtor as may be shown on Bank's records, at least five (5) days prior to such action, shall constitute reasonable notice to Debtor.

Bank may waive any default before or after the same has been declared without impairing its right to declare a subsequent default hereunder, this right being a continuing one.

In the event of default, it is agreed that the Bank shall have the right to set off the balance due on any notes executed pursuant to this agreement in whole or in part against any deposits or monies credited or owing by the Bank to the Debtor or any party to such notes.

If any provision of this agreement is held invalid, such invalidity shall not affect the validity or enforceability of the remaining provisions of this agreement.

This agreement shall inure to the benefit of Bank's successors and assigns and shall bind Debtor's heirs, representatives, successors and assigns. If there be more than one Debtor, their obligations hereunder shall be joint and several.

IN WITNESS WHEREOF, this agreement has been executed this ___4th___ day of ___December___, 19_87_.

Trustmark National Bank
_____
Bank

By _____
Dave Dyer
Vice President

Ronnie Jackson
_____
Debtor

By _____
Ronnie Jackson

2560    2/86

## INSURANCE AUTHORIZATION FORM

I understand that one of the requirements of the Security Agreement concerning the property which I have financed is that I must provide, and at all times maintain, insurance on that property to protect Trustmark National Bank (Lender) from financial impairments as the result of damage to, loss or destruction of that property. Such policy must provide at least Fire, Theft and Collision coverages, and further protect against other hazards which are, in the judgement of Lender, naming the Lender as Loss Payee, Mortgagee, Lienholder, in form satisfactory to the Lender. This policy may be obtained from the agent of my choice.

If a copy of such an insurance policy is not received by the Lender within thirty (30) days, the Lender, at its option, may purchase insurance on the property held as the collateral. The premium finance charges to be computed at the same rate as appears on my loan contract, will then be added to my loan balance, payable upon request of the Lender.

The policy to be obtained by the Lender will provide insurance to cover the indebtedness actually secured by the collateral and will not protect any equity I may have in the property held as collateral. The policy will not necessarily satisfy any statutory or other obligation I may have to carry liability or other forms of insurance.

I hereby authorize the Lender, at its option, should I fail in my obligation to obtain the necessary insurance or provide the Lender with notice thereof, to obtain such insurance as Lender deems necessary in order to protect its interest in the property held as collateral, and to add the premium and premium finance charges to my loan account balance in the event that I fail to provide insurance of my own as required herein, or if such insurance of my own is cancelled or terminated during the term of the loan.

I hereby agree to provide insurance as outlined in this authorization to cover the collateral described on the Security Agreement. This coverage will be carried with the company and agent listed below and on the collateral also listed below.

| BORROWER'S SIGNATURE | | DATE 12-4-87 |
|---|---|---|
| BORROWER'S SIGNATURE | | DATE |
| AGENT Tommy Bugle | | TELEPHONE |
| ADDRESS | | |
| INSURANCE COMPANY State Farm | | POLICY NO. |
| EFFECTIVE DATE | FROM: | TO: | DEDUCTIBLE AMT. |
| DESCRIPTION OF COLLATERAL 1985 Cad  1G6EL5786FE602163 | | |

| VEHICLE INSURED: | MAKE | | MODEL | | YEAR |
|---|---|---|---|---|---|
| | BODY STYLE | | V.I.N. | | |
| VERIFIED BY (TRUSTMARK EMPLOYEE) | | | | | |
| VERIFIED BY (DEALERSHIP) | | | | | |

1565 7/86

Exhibit "B"

# MOTOR VEHICLE RETAIL INSTALLMENT CONTRACT SECURITY AGREEMENT AND DISCLOSURE STATEMENT

DATE JUL 1, 1988

| Buyer and Co-Buyer — Name and Address (include County and Zip Code) | Creditor (Seller Name and Address) |
|---|---|
| WILLIAM SMITH and LINDA D SMITH 2914 LARCHMONT DR JACKSON, MS 39209 | REGENCY NISSAN INC 905 I-20 S. FRONTAGE RD. JACKSON, MS 39204 |

ASSIGNEE: TRUSTMARK NATIONAL BANK; P. O. Box 291, JACKSON, MISSISSIPPI 39205 or any branch.

Purchase and Sale. Seller hereby sells and Buyer (meaning each purchaser, jointly and severally) hereby purchases the following described personal property (hereinafter referred to as "Collateral"), which Buyer has examined and accepted in its present condition, delivery hereby being acknowledged subject to the terms and conditions of this Retail Installment Contract, Security Agreement and Disclosure Statement ("contract") as contained on the face and the reverse side hereof.

Description of Vehicle.

| New or Used | Year and Make | Series | Body Style | No. Cyl. | Gross Vehicle Weight | Vehicle Identification Number | Use For Which Purchased |
|---|---|---|---|---|---|---|---|
| NC | 1988 NISSAN | SENTRA | 2DR | 4 | | JN1PB22S6JU576109 | XX Personal ☐ Agriculture ☐ Business ☐ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 1500.00 is |
|---|---|---|---|---|
| 14.00 % | $ 3532.88 | $ 8740.12 | $ 12273.00 | $ 13773.00 |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 204.55 | Monthly Beginning AUGUST 15, 1988 |

Late Charge. If a payment is not paid in full within 10 days after it is due, you will pay a late charge of 5% of the late payment, with a maximum charge of $5.
Prepayment. If you pay off all your debt early, you may be entitled to a refund of part of the finance charge.
Security Interest. You are giving a security interest in the vehicle being purchased, and in any right you may have to payment of money from this bank.
Collateral of other loans you have with this bank may also secure this loan.
Additional Information: See both sides of this contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and security interests.

### INSURANCE

(a) Credit Life and/or Disability (Accident and Health) Insurance. This insurance is not required as a condition to this Contract, but is optional and will not be provided unless the Buyer(s) to be insured sign(s) the appropriate request(s) below. The cost of each type of insurance desired is calculated for the term of the loan.

| | |
|---|---|
| ☐ Credit Life | $ 0.00 |
| ☐ Disability (Accident and Health) | $ 0.00 |

I (We) desire the insurance coverage(s) checked above.

_____
Date

_____
Signature (of Buyer to be insured)

_____
Date

_____
Signature (of Buyer to be insured)

(b) Property Insurance on Motor Vehicle. The Buyer may choose the person through whom any property insurance is to be obtained. If obtained through the Seller,

the cost thereof is $ N/A , calculated for a term of _____ months.

(c) LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THE INSURANCE COVERAGES RECITED HEREIN.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1. CASH PRICE (including accessories, services, and taxes). | $ 9480.12 | (1) |
| 2. DOWNPAYMENT | | |
| a. Cash downpayment | $500.00 | |
| b. Net Trade In | $ N/A | |
| Make _____ Model Year _____ | | |
| TOTAL DOWNPAYMENT (sum of (a) and (b)) | $ 1500.00 | (2) |
| 3. UNPAID BALANCE OF CASH PRICE (1 less 2) | $ 7980.12 | (3) |
| 4. Amounts paid to others on your behalf: | | |
| To Credit Life Insurance Company | $ N/A | (a) |
| To Disability Insurance Company | $ N/A | (b) |
| To Property Insurance Company | $ N/A | (c) |
| To Public Officials Insp. | $ 5.00 | (d) |
| Reg Nis-Title | $ 5.00 | (e) |
| Dealer Servic | $50.00 | (f) |
| To _____ | $ N/A | (g) |
| To _____ | $ N/A | (h) |
| To _____ | $ N/A | (i) |
| TOTAL OTHER CHARGES (sum of (a) through (i)) | $ 760.00 | (4) |
| 5. AMOUNT FINANCED/UNPAID BALANCE (sum of (3) and (4)) | $ 8740.12 | (5) |

Promise to Pay. Buyer (meaning each purchaser jointly and severally) promise to pay to the order of the Seller (or, if assigned to Trustmark National Bank, Jackson, Mississippi, then to said bank) at any office of Trustmark National Bank, Jackson, Mississippi, or at any branch office thereof, the sum of TWELVE THOUSAND TWO HUNDRED SEVENTY-THREE & 0/100 Dollars
($12273.00 ). ("Total of Payments") payable in _____ 60 _____ consecutive monthly installments of $ _____ 204.55 _____ each, beginning on AUG. 15 , 88 and continuing on the same day of each succeeding month, until fully paid, or until N/A , 19 ____ at which time a final payment of $ N/A is due and payable. The final payment provision is only applicable if the date and the amount of such payment is filled in above). Any due but unpaid installment shall bear interest at the rate of 10% per annum from the date of its maturity until paid.

Late Payment Charge. In the event any regularly scheduled installment due herein shall remain unpaid for more than ten (10) days after such installment becomes due, Buyer promises to pay to Seller (or if assigned to Trustmark National Bank, Jackson, Mississippi, then to said bank) a late payment charge of $5.00 or 5% of the amount of the past due installment, whichever is less, for each such past due installment.

Payment In Full Prior To Maturity. Upon prepayment of this Contract in full by cash, a new loan, refinancing, upon default, or otherwise, before the final installment date, the unearned portion of the FINANCE CHARGE computed under the RULE OF 78's method will be credited to the Buyer's indebtedness hereunder as a rebate. An acquisition charge of $10 will be deducted in determining the amount of the rebate. No rebate less than $1 will be paid.

Security Interest. Buyer hereby grants to Seller and its assigns, a Purchase Money Security Interest under the Mississippi Uniform Commercial Code and the Mississippi Motor Vehicle Title Law, to secure the payment of the indebtedness evidenced above, and Buyer's performance under the terms provided herein, in and to the Collateral and the proceeds thereof. Buyer hereby assigns to Seller and its assigns all monies payable under the property insurance required or purchased herein, by whomever obtained, including returned or unearned premiums, and Seller is hereby authorized to receive or collect same, and to cancel such insurance or settle any claim with respect thereto. Buyer further agrees that Seller, and its assigns, shall have the right to accelerate and declare the entire unpaid balance of the indebtedness evidenced hereby due and payable and to setoff said balance against any funds due Buyer from Seller, should buyer be in default hereunder.

This Contract, including provisions on the reverse side hereof, constitutes the entire agreement between the parties, and no waivers or modifications shall be valid unless written upon or attached to this Contract.

**Notice To Buyer: 1. Do not sign this contract before your read it, or if it contains any blank spaces. 2. You are entitled to an exact copy of this contract you sign.**

Buyer acknowledges that before (s)he signed and received a copy of this Contract, it was complete and all blanks were completely filled in.

REGENCY NISSAN INC
_____
SELLER

BY _____
(Name)          (Title)

_____William Smith_____
BY

_____Linda D Smith_____
CO-B

Exhibit "C"

**Other Security.** (Collateral securing other . . . if it may have, or may acquire, to secure this . . . apply to any such documents executed in conne . . .

Provided, that all notwithstanding anything herein to the contrary, nothing contained herein, or in any other document in favor of Seller or Assignee, shall grant to Seller or Assignee a nonpossessory security interest in "household goods", as defined in 12 C.F.R. 227, Subpart B, other than a purchase money security interest which is specifically described.

**Property Insurance.** The Collateral shall at all times be at Buyer's risk. The loss, injury to, or destruction of said Collateral shall not release Buyer from payment or other performance hereof. Buyer agrees to obtain and keep in force property insurance on said Collateral. Such insurance is to be in form and amounts satisfactory to Seller. If Buyer fails to keep the Collateral insured, as required by Seller, Seller is authorized, but not obligated, to purchase any or all of said insurance at Buyer's expense, and in such event, Buyer agrees to reimburse Seller for the cost of such insurance to the extent that the same is not hereinbefore included in the Total of Payments.

**Default.** Buyer shall be in default under this Retail Installment Contract & Security Agreement: (a) when he has made any misstatement in connection with or has failed to pay or perform any of his obligations, agreements or affirmations hereunder; (b) when any event occurs which results in acceleration of the maturity of the indebtedness of Buyer; (c) upon the death, dissolution, termination of existence or business failure of Buyer, or the appointment of a receiver for any part of the property of, assignment for the benefit of creditors by, or the commencement of any proceeding in bankruptcy or insolvency by or against, Buyer or any surety for Buyer; (d) upon the loss of possession by Buyer of the Collateral or (e) when Seller in good faith deems itself insecure and its prospect of payment impaired.

Upon default, Seller and its assigns may, at its option, declare the entire unpaid balance of the indebtedness evidenced hereby due and payable, without demand or notice, and proceed to enforce payment of same and to exercise all rights and remedies afforded it herein or under the Mississippi Uniform Commercial Code. If this Contract is placed in the hands of an attorney for collection, or to acquire possession of any Collateral securing same, Buyer agrees to pay all court costs and an attorney's fee of 15% of the amount due and unpaid at the time balance of the Contract is accelerated.

The failure of Seller to elect to declare the entire unpaid balance herein due and payable or the occurance of default shall in no manner affect or impair such right to do so for any subsequent or other default.

**Covenant of Good Repair.** Buyer agrees to maintain the collateral in good condition and repair, and to promptly pay all taxes, assessments, levies and other impositions levied on said collateral and/or for its use or operation, as well as paying the cost of all repairs to or maintenance of the same. If Buyer fails to pay such sums, Seller may do so on its behalf and add such amounts to the other amounts owed hereunder by Buyer. Buyer further agrees not to permit anything to be done that may impair the security interest intended to be afforded by this agreement, or that may unreasonably or unnecessarily subject the same to damage, wear or depreciation.

**Removal or Sale.** Buyer agrees not to sell, exchange, lease, abandon, or otherwise dispose of said collateral without obtaining prior written consent from the Seller, and Buyer further agrees not to use said collateral illegally or permit the illegal use of the same. Buyer further agrees not to remove or permit the removal of said collateral from the location specified herein, except for temporary periods in the normal and customary use thereof, without the prior written consent of the Seller.

**Waiver of Notice, etc.** Buyer waives presentment for payment and acceleration of maturity, notice of nonpayment, protest and notice of protest, demand for payment, and diligence in collecting and bringing suit.

**Notice.** Any notice required to be given under the Uniform Commercial Code, as adopted in Mississippi, of sale, lease or other intended disposition of the collateral by Seller sent the Buyer at the address specified above, or at such other address of Buyer as may be shown on Seller's records, at least five (5) days prior to such action, shall constitute reasonable notice to Buyer. Whenever Buyer is in default hereunder, and upon demand by Seller, Buyer shall assemble the collateral and make it available to Seller at a place reasonably convenient to Seller and Buyer.

**Acknowledgment of Assignment.** Buyer hereby acknowledges notice of the Assignment of the Motor Vehicle Retail Installment Contract, Security Agreement and Disclosure Statement to Trustmark National Bank, Jackson, Mississippi, and acknowledges its immediate liability to said Bank for the payment and performance hereof.

**Assigns.** This Contract shall apply to, inure to the benefit of, and bind the heirs, executors, administrators, successors and assigns of Seller and Buyer(s), including Trustmark National Bank.

**Governing Law.** This Contract shall be governed by, and construed under, the Laws of Mississippi.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Used Motor Vehicle Buyers Guide.** If you are buying a used vehicle with this contract, federal regulations may require a special Buyers Guide to be displayed on the window of the vehicle. **THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**NOTICE:** SEE OTHER SIDE FOR IMPORTANT INFORMATION.

## ASSIGNMENT

### ENDORSEMENT AND TRANSFER WITHOUT RECOURSE
#### PAY TO THE ORDER OF TRUSTMARK NATIONAL BANK, JACKSON, MISSISSIPPI

FOR VALUE RECEIVED, and subject to the terms of any agreement with Assignee (anything herein to the contrary notwithstanding, the provisions of such Agreement shall govern), the undersigned Seller of this Motor Vehicle Retail Installment Contract, Security Agreement and Disclosure Statement ("Contract") hereby transfers said Contract to Trustmark National Bank, Jackson, Mississippi, or any branch, and expressly warrants (1) that the within Contract is the genuine and valid obligation of the signors thereof, who at the time of the execution thereof, were at least eighteen (18) years of age and had capacity to contract; (2) that delivery of the Collateral therein mentioned was duly made; (3) that the Seller had good title thereto and right to transfer same; (4) that the Collateral was in the condition represented to the Buyer at the time of purchase; (5) that the undersigned knows of no facts which impair the obligation of the maker; and (6) that the Seller has correctly filled in and delivered to the Buyer the foregoing Contract prior to his execution of same. Upon breach of any of said warranties, undersigned will upon demand repurchase said Contract for the amount owing thereon, plus all costs and expenses paid or incurred in respect thereto, and upon failure to do so, will pay reasonable attorneys' fees and legal expenses incurred in the enforcement thereof. This Contract is transferred to Trustmark National Bank, Jackson, Mississippi, without recourse upon the undersigned, except as stated hereinabove or may be provided in other agreements between the undersigned and Trustmark National Bank, Jackson, Mississippi.

Seller further agrees to indemnify Bank against any loss sustained by Trustmark National Bank, Jackson, Mississippi, as a result of any claim or defense Buyer may have against Seller.

REGENCY NISSAN, INC.

(SELLER)

By _____

(AUTHORIZED SIGNATURE AND TITLE)

### ENDORSEMENT AND TRANSFER WITH FULL RECOURSE
#### PAY TO THE ORDER OF TRUSTMARK NATIONAL BANK, JACKSON, MISSISSIPPI

FOR VALUE RECEIVED, and subject to the terms of any agreement with Assignee, the undersigned Seller of this Motor Vehicle Retail Installment Contract, Security Agreement and Disclosure Statement ("Contract") hereby transfers said Contract to Trustmark National Bank, Jackson, Mississippi, or any branch, with full recourse, and expressly warrants (1) that the within Contract is the genuine and valid obligation of the signors thereof, who at the time of the execution thereof was at least eighteen (18) years of age and had capacity to contract; (2) that delivery of the Collateral therein mentioned was duly made; (3) that the Seller had good title thereto and right to transfer same; (4) that the Collateral was in the condition represented to the Buyer at the time of purchase; (5) that the undersigned knows of no facts which impair the obligation of the maker; and (6) that the Seller has correctly filled in and delivered to the Buyer the foregoing Contract prior to his execution of same. Upon breach of any of said warranties or default by the maker of his (their) obligations under this Contract, including payment thereunder, undersigned will upon demand repurchase said Contract for the amount owing thereon, plus all costs and expenses paid or incurred in respect thereto, and upon failure to do so, will pay reasonable attorneys' fees and legal expenses incurred in the enforcement thereof.

Seller further agrees to indemnify Bank against any loss sustained by Trustmark National Bank, Jackson, Mississippi, as a result of any claim or defense Buyer may have against Seller.

(SELLER)

By _____

(AUTHORIZED SIGNATURE AND TITLE)

## INSURANCE AUTHORIZATION FORM

I understand that one of the requirements of the Security Agreement concerning the property which I have financed is that I must provide, and at all times maintain, insurance on that property to protect Trustmark National Bank (Lender) from financial impairments as the result of damage to, loss or destruction of that property. Such policy must provide at least Fire, Theft and Collision coverages, and further protect against other hazards which are, in the judgement of Lender, naming the Lender as Loss Payee, Mortgagee, Lienholder, in form satisfactory to the Lender. This policy may be obtained from the agent of my choice.

If a copy of such an insurance policy is not received by the Lender within thirty (30) days, the Lender, at its option, may purchase insurance on the property held as the collateral. The premium finance charges to be computed at the same rate as appears on my loan contract, will then be added to my loan balance, payable upon request of the Lender.

The policy to be obtained by the Lender will provide insurance to cover the indebtedness actually secured by the collateral and will not protect any equity I may have in the property held as collateral. The policy will not necessarily satisfy any statutory or other obligation I may have to carry liability or other forms of insurance.

I hereby authorize the Lender, at its option, should I fail in my obligation to obtain the necessary insurance or provide the Lender with notice thereof, to obtain such insurance as Lender deems necessary in order to protect its interest in the property held as collateral, and to add the premium and premium finance charges to my loan account balance in the event that I fail to provide insurance of my own as required herein, or if such insurance of my own is cancelled or terminated during the term of the loan.

I hereby agree to provide insurance as outlined in this authorization to cover the collateral described on the Security Agreement. This coverage will be carried with the company and agent listed below and on the collateral also listed below.

| BORROWER'S SIGNATURE | | DATE | |
|---|---|---|---|
| *William D Smith* | | | |
| BORROWER'S SIGNATURE | | DATE | |
| *Linda W Smith* | | | |
| AGENT FOX-EVERETT INC (Sandra Hudson) | | TELEPHONE 969-2000 | |
| ADDRESS 921 N-PRESIDENT  JACKSON /MIS. | | | |
| INSURANCE COMPANY PRINCIPLE CAUSLTY | | POLICY NO. 3104215872696 78 | |
| EFFECTIVE DATE | FROM: 2-1-88 | TO: 8-1-88 | DEDUCTIBLE AMT. Col 100  Com -0 |
| DESCRIPTION OF COLLATERAL | | | |
| | | | |
| VEHICLE INSURED: | MAKE NISSAN | MODEL SENTRA | YEAR 1988 |
| | BODY STYLE 2 DOOR | V.I.N. JN1PB22S6JU576109 | |
| VERIFIED BY (TRUSTMARK EMPLOYEE) | | | |
| VERIFIED BY (DEALERSHIP) | | | |

Exhibit
"D"

1565 7/86

SOUTHERN DISTRICT OF MISSISSIPPI

**— FILED —**

**JUN 2 0 1994**

**J. T. NOBLIN CLERK**

BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JACKIE D. HOLMES                                      PLAINTIFF

VERSUS                              CIVIL ACTION NO. 2:94-CV-222 PS

TRUSTMARK NATIONAL BANK                          DEFENDANT

## COMPLAINT

### JURY TRIAL REQUESTED

COMES NOW, JACKIE D. HOLMES, and files this his Complaint against TRUSTMARK NATIONAL BANK, and in support of said Complaint would show unto the Court the following facts, to wit:

1.

That the Plaintiff is an adult resident citizen of the Jones County, Mississippi.

2.

That the Defendant, Trustmark National Bank (Trustmark), is a National banking corporation, which may be served with process by service upon one of its officers, Rodney Cockerham, or some other officer, at the main branch of Trustmark Bank on Magnolia Street in Laurel, Mississippi.

3.

This Court has jurisdiction pursuant to 28 U.S.C. §1331.

1

Exhibit
"E"

Plaintiffs also invoke the supplemental jurisdiction of this Court to consider the claims arising under the laws of the State of Mississippi.

4.

That in July of 1988, Plaintiff purchased a 1985 Mitsubishi, from Pat Peck Toyota (Pat Peck) in Laurel, Mississippi, and Pat Peck arranged financing for the same through the Defendant Trustmark. Said contract provided for the payment of forty-two monthly installments in the amount of Two hundred forty-three and 94/100 Dollars ($243.94) each.

5.

Said contract further provided that in the event of default, and legal action taken as a result thereof, that an attorney's fee of fifteen per cent (15%) would be added to the amount due. A copy of said installment contract is attached hereto and made a part hereof as if copied in words and figures herein and marked as Exhibit "A."

6.

Plaintiff defaulted on said note, and delivered the automobile to Trustmark, not requiring Trustmark to physically repossess the same. As a result of said repossession, Trustmark sold the automobile for Twelve hundred ten and no/100 Dollars ($1,210.00).

7.

Trustmark filed suit in the Circuit Court of the Second

2

Judicial District of Jones County, Mississippi, and even though the Complaint requested that the Court award "reasonable attorney's fees", Trustmark caused a default judgment to be entered against the Plaintiff on July 31, 1991, for attorney's fees in excess of that which was provided in said contract and that which the Defendant was entitled to collect. A copy of said default judgment is attached hereto and made a part hereof as if copied in words and figures herein and marked as Exhibit "B".

8.

That by entering a Default Judgment against the Plaintiff which included attorney's fees of thirty-three and one-third per cent (33 1/3%) of the total amount due, rather than the fifteen per cent (15%) as allowed by the contract, Defendants have breached the contract entered into between the Plaintiff and Defendant.

9.

It is further believed by Plaintiff that Trustmark entered the Default Judgment for an amount in excess of the sum owed to Trustmark by the Plaintiff by adding the amount of single interest insurance premiums to Plaintiff's account and sued for the entire amount, at a time when the insurance company had already refunded the premiums to Trustmark as called for by the insurance contract.

3

10.

The Defendant owed the Plaintiff a duty to deal fairly
with him, and to limit its remedies and recovery to the
amounts set out in the contract, as well as the laws of this
state, and specifically under Mississippi Code § 63-19-35.
That as a result of the breach of the contract by the
Defendant, Plaintiff has been damaged by the imposition of
excessive attorney's fees, plus interest from the time of the
County Court Judgment as set out in Exhibit "B." Plaintiff
has further been damaged by the taking of a Judgment against
him in an amount which exceeds the amount owed by him to the
Defendant in that Trustmark has taken a Judgment for insurance
premiums which have been refunded to it by the insurer.

11.

The Defendant made promises to the Plaintiff which were
contained within the installment loan contract signed by the
Plaintiff to limit its recovery, in the event of default by
the Plaintiff, to the terms and conditions called for by the
express terms of the installment loan contract.

12.

The Defendants made said promises and entered into said
contract with the Plaintiff for the purpose of inducing the
Plaintiff into relying on said promises and to act in reliance
upon them. Plaintiff relied on said promises and paid
installment notes in reliance thereon.

4

13.

It appears that the Defendant did not intend to perform said promises to the Plaintiff, and made said promises with the intent to defraud said Plaintiff. Plaintiff was unaware of Defendant's intention not to perform, and justifiably relied upon the promises made by the Defendant.

14.

The Defendant violated the civil rights afforded Plaintiff under the Civil Rights Act of 1991, and has deprived Plaintiff of his civil rights, property, and all other rights and protections afforded Plaintiff by the laws of the State of Mississippi, the State Constitution, the United States Constitution, and all other protections afforded Plaintiff by the laws and statutes of the State of Mississippi.

15.

That at all times mentioned herein, Plaintiff was a citizen of the United States of America and as a matter of law under the constitution of the United States had a right to be afforded due process of law, and was wrongfully deprived of his property rights without due process of law by the Defendant while acting pursuant to customs, policies, regulations and/or decisions.

16.

Said actions violated plaintiff's civil and constitutional rights under Federal and State Constitutions

5

and other laws of the United States and of the State of Mississippi and directly caused injuries to the plaintiff.

17.

Further, Plaintiff would show that the defendant violated the plaintiff's rights guaranteed by the United States Constitution, the Civil Rights Act of 1991, the Federal Consumer Credit Act, Truth in Lending Statute, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. known as the CIVIL RICO statute, and the Fair Debt Collection Practices Act by wrongfully depriving plaintiff of his property, by failing to follow the guidelines in the Fair Debt Collection Practices Act, and by overreaching on the amount sued for under the contract.

18.

Plaintiff has suffered embarrassment and humiliation, and has been abused by the Defendant for attempting to collect monies not owed to the Defendant and he has been caused to suffer mental and emotional pain, anguish, anxiety, worry and distress over the fear of losing property rights and/or monies.

19.

Plaintiff believes that the Defendant has engaged in a pattern, practice, design and scheme to defraud the Plaintiff, and persons similarly situated. The actions of the Defendant complained of herein are not isolated, and in fact numerous

6

Default Judgments have been taken by the Defendant within the Second Judicial District of Jones County, Mississippi and other jurisdictions which provide for attorney's fees in the amount of thirty-three and one-third per cent (33 1/3%), when the contract, in fact provides for attorneys fees in the amount of fifteen per cent (15%).

20.

Further, a request for class certification has been filed in the case of Randy Butler vs. Trustmark, S93-CV-280PS and is pending before this Court. If this class certification is granted, Plaintiff respectfully requests that he be allowed to join as a member of said class, and that this suit should be included as part of said class, or alternatively as a sub-class. The request for class certification in the Butler case alleges that counsel for Butler has been able to determine that Trustmark National Bank has taken approximately 155 judgments on suits which seek attorneys' fees in an amount in excess of the contract amount allowed, or in violation of the 15% statutory limitation placed upon it by § 63-19-35, Mississippi Code Annotated, and that said judgments and/or suits have been handled by numerous attorneys on behalf of Trustmark and this case nor the Butler case, is an isolated case.

21.

As a proximate result of the Plaintiff's reliance upon

7

Defendant's promises, and Defendants' intention not to perform said promises, Plaintiff sustained damages.

WHEREFORE, PLAINTIFF DEMANDS JUDGMENT of and from the Defendant in an amount in excess of $50,000.00 to be determined by a jury at a trial as follows:

a.    That the Judgment entered by the Circuit Court of the Second Judicial District of Jones County, Mississippi, be set aside;

b.    For all economic losses incurred as a proximate result of the Defendant's tortious conduct, and compensatory damages, including, but not limited to the amount of the excessive attorney's fees, the amount of the excessive charges for insurance premiums, legal expenses and attorney's fees reasonably and necessarily incurred, in an amount to be determined by a jury at trial;

c.    Simple tort damages in an amount to make the Plaintiff whole insofar as a money amount can accomplish that purpose, in an amount to be determined by a jury at trial;

d.    Punitive damages in an amount to deter the Defendant from like conduct in the future and to make an example of them so that other similarly situated Defendants would likewise be deterred, in an amount to be determined at trial.

8

e. Any and all relief pursuant to 63-19-15, Miss. Code.

Respectfully submitted,

JACKIE D. HOLMES

BY: Margaret P. Ellis

MARGARET P. ELLIS
KITCHENS & ELLIS
P.O. DRAWER 1268
PASCAGOULA, MS 39568-1268
(601) 762-3168
MS. STATE BAR NO. 5110

9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
OCT 1 0 1995
J. T. NOBLIN. CLERK
BY _____ DEPUTY

ORA LEE HOLDEN, ET AL                                    PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 2:95cv253

TRUSTMARK NATIONAL BANK, ET AL                          DEFENDANTS

## ORDER

Judge Walter J. Gex, III, having entered an Order establishing

a class action involving the subject matter of this lawsuit, this

case is hereby transferred to Judge Walter J. Gex, III.   The

Clerk's office is directed to transfer this file to the Southern

Division in Biloxi, Mississippi.

SO ORDERED AND ADJUDGED this the $\underline{10\text{th}}$ day of October, 1995.

CHARLES W. PICKERING, SR.
UNITED STATES DISTRICT JUDGE

Exhibit
"F"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

NOV 30 1995

J. T. NOBLIN, CLERK
BY_____DEPUTY

LEMMEL BLACK
                                                                PLAINTIFF

VS.                                     CIVIL ACTION NO. 3:95-CV-662WS

TRUSTMARK BANK, ET AL.
                                                              DEFENDANTS

ORDER

After consultation with Judge Walter J. Gex III and because a class has been

certified in litigation involving the Trustmark defendants pending in the Southern Division,

this cause is hereby transferred to the Southern Division of this court.

SO ORDERED this the ___29___ day of ___Nov.___, 1995.

_____
UNITED STATES MAGISTRATE JUDGE

Exhibit

"G"

)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RONNIE JACKSON, WILLIAM SMITH,          *
LINDA SMITH, individually and           *
on behalf of all others similarly       *
situated,                               *
                                        *
          Plaintiffs,                   *
                                        *
vs.                                     *     CASE NO. 96-0501-BH-M
                                        *
TRUSTMARK NATIONAL BANK,                *
PRUDENTIAL PROPERTY & CASUALTY          *
INSURANCE COMPANY, and CENTRAL          *
NATIONAL INSURANCE COMPANY,             *
                                        *
          Defendants.                   *

## DEFENDANT PRUPAC'S RESPONSE
## TO PLAINTIFFS' MOTION TO REMAND

Defendant PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY

("PruPac") joined in removing this case, and it subsequently filed a Motion to Dismiss or

Transfer to the United States District Court for the Southern District of Mississippi. The joinder

filed by PruPac (and its motion to dismiss or transfer) were based upon the grounds that the

claims asserted by these plaintiffs are part of a mandatory class action which is currently pending

in that court, and hence the district courts have supplemental jurisdiction over these claims under

28 U.S.C. § 1367(a), which affords to a party such as PruPac legal grounds for removal in a

situation like this, as demonstrated below.

1

## STATEMENT OF FACTS

Plaintiffs' complaint alleges common law tort claims arising from the sale by defendants of Collateral Protection Insurance coverage ("C.P.I.") in connection with their financing of an automobile. (Complaint ¶¶ 8-15). The plaintiffs allege the existence of a class, including three subclasses, of plaintiffs whom they contend are similarly situated. (Complaint ¶¶ 16-29). They also allege that the defendants' misconduct was part of a fraudulent scheme and conspiracy and that defendants acted uniformly as to the entire class. (Complaint ¶ 9).

## ARGUMENT

Plaintiffs' memorandum in support of their Motion to Remand devoted a scant two sentences to their argument that this court lacked jurisdiction under 28 U.S.C. § 1367, stating simply in conclusory fashion that there is no support for such a removal. They furnish no cases that agree with them, and for good reason. The United States Code clearly states that the United States District Courts have Supplemental Jurisdiction to hear any claim which is so related to a prior pending case as to form part of the same "case or controversy." 28 U.C.S. § 1367(a) provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

This statute limits the power of courts to refuse to exercise supplemental jurisdiction over claims that are part of the same Article III case or controversy as claims over which the courts have original jurisdiction. By "providing that 'the district courts *shall* have supplemental jurisdiction

2

. . .,' [the statute] confers power to entertain supplemental jurisdiction in mandatory terms."
Executive Software v. U.S. Dist. Court, 24 F.3rd 1545, 1555 (9th Cir. 1994).

Under the supplemental jurisdiction statute, whether claims are characterized as part of
the "same case or controversy" as claims in an action within the original jurisdiction of the
federal courts is determined by the standards of United Mine Workers v. Gibbs, 383 U.S. 715
(1966). H.R.Rep. no. 734, 101st Cong., 2nd Sess., reprinted in 1990 U.S.C.C.A.N. 6860, 6874
n.15; Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559, 1566 (11th Cir. 1994);
Edmondson & Gallagher v. Alban Towers Tenants Assoc., 48 F.3d 1260, 1266 (D.C. Cir.
1995). The court in Gibbs required that the claims involved "derive from a common nucleus
of operative fact," and be such that they should ordinarily be tried "in one judicial proceeding."
383 U.S. at 725. It is not necessary that all elements of all claims be identical, and, in fact, in
some cases they are "quite different." The fact that each claim involved the "same facts,
occurrences, and evidence" was sufficient to satisfy section 1367(a) and confer supplemental
jurisdiction. Section 1367 confers a "broad grant" of jurisdiction to federal courts when the
cases arise from the same "common nucleus of operative facts." Rodriguez v. Pacificare of
Texas, Inc. 980 F.2d 1014, 1018 (5th Cir. 1993).

The case filed by these plaintiffs is based upon the same "common nucleus of operative
facts" as a pending, mandatory class action case filed in the United States District Court for the
Southern District of Mississippi, Southern Division, entitled Jackie Holmes v. Trustmark
National Bank, Prudential Property and Casualty Insurance Company, Ross & Yerger, P.A.,

3

Ross & Yerger, Inc., Ross & Yerger Financial Systems and National Underwriters of Delaware,

Inc., Civil Action No.1:95cv323GR. The general facts in Jackie Holmes, as recited by the court

in that case, are as follows:

> The plaintiff filed the instant lawsuit seeking damages based on
> actions taken by Trustmark to collect the balance due on an
> automobile loan between Trustmark and the plaintiff, which
> included unearned interest  and premiums for forced collateral
> insurance [CPI]. Trustmark . . . placed the CPI coverage through
> Prudential. The plaintiff    contends that the insurance premiums,
> charged by Prudential then added by Trustmark to the plaintiff's
> loan balance, were excessive and included charges for coverage
> that was expressly excluded from the policy.

(Jackie Holmes Memorandum Opinion and Order, September 18, 1995).


The plaintiffs in this case are asserting claims arising from an alleged "scheme" by

defendants to defraud and otherwise injure the plaintiffs through the issuance of forced-placed

collateral insurance policies. Thus their claims mirror the claims filed in the Jackie Holmes

mandatory class action.  Most of the evidence and witnesses in the two cases will be

substantially the same since both cases focus upon Trustmark seeking CPI coverage from PruPac

and the costs assessed to under that coverage. Thus the cases clearly do arise from the same

"nucleus of operative facts."  The key inquiry in both cases is whether the forced-placed

insurance and the charges associated with that insurance constituted a "scheme" to defraud

purchasers of automobiles who financed those automobiles with Trustmark. If Trustmarks's and

PruPac's action in selling CPI insurance was a "scheme" to defraud, then it is logically the same

generic scheme regardless of whether the plaintiffs are these plaintiffs or the nominal plaintiffs

in the Mississippi class action.

4

These claims are part of the same case or controversy as the pending class action. The differences in the fact scenarios among the individual plaintiffs will have little bearing on the greater question of whether this type of insurance placement is fraudulent; consequently, even though the particular facts involved with each distinct plaintiff may have a bearing on his right to recover, it will not substantially alter the "common nucleus of operative fact." Thus, exercising supplemental jurisdiction under 28 U.S.C. 1367(a) and removing this case to the Mississippi district court is not only the judicially expedient course of action, but also the course compelled by section 1367.

In addition to clear authority supporting removal pursuant to supplemental jurisdiction, the existence of the Jackie Holmes mandatory class action provides an additional basis for removal of this case to the court with jurisdiction over Jackie Holmes. In its class certification, the Mississippi court designated the Jackie Holmes case a mandatory class action. (See attached order). The effect of a mandatory class action is to force plaintiffs in later suits arising under the umbrella of the class to litigate with the class. The exercise of supplemental jurisdiction thus is ideally suited for use in this situation since the goal of a class is to litigate the maximum possible number of claims arising from the defendants' conduct in one proceeding. See Fed. R. Civ. Pro. 23. The plaintiffs in this case are unable to show any substantive distinction between their case and that of the Jackie Holmes class; instead, they are attempting to defeat supplemental jurisdiction merely so they may litigate in an Alabama state court -- a forum in which ironically none of the plaintiffs even resides.

5

Contrary to plaintiffs' two-sentence argument, Defendants do have legal authority to seek removal under Sections 1441(a) and 1367(a) since the claims are part of the same case or controversy, and this represents an action within the court's original jurisdiction which could have been filed in federal court originally. Therefore, sections 1441(a) and 1367(a) together provide removal authority. See Booty v. Shoney's, Inc., 872 F.Supp. 1524, 1528 (E.D. La. 1995) (approving removal of plaintiff's spouse's loss of consortium claim which did not satisfy $50,000 amount in controversy requirement); also Fairchild v. State Farm Mutual Automobile Insurance Co., 907 F.Supp. 969, 972 (M.D. La. 1995) (adopting the Booty court's position and approving removal of claim). 28 U.S.C. § 1441(a) permits the removal of all claims which could originally have been filed in federal court. See U.S. for the use of Owens-Corning Fiberglass Corp. v. Brandt Const. Co., 826 F.2d 643, 645 (7th Cir. 1987), cert denied sub nom. Brandt v. Uptown Nat'l Bank, 484 U.S. 1026 (1988). In addition, courts have held that Section 1367's "broad grant" of jurisdiction to the federal courts, Rodriguez v. Pacificare of Texas, Inc., 980 F.2d 1014, 1018 (5th Cir. 1993), provides removal authority in and of itself. Leith v. Lufthansa German Airlines, 793 F.Supp. 808 (N.D. Ill. 1995); Simcox v. McDermott International, Inc., 1993 U.S.Dist. LEXIS 18302 (S.D. Tex. Dec. 21, 1993).

## CONCLUSION

The predominant goal of Congress' grant of supplemental jurisdiction in 28 U.S.C. § 1367 was to increase judicial efficiency by allowing courts to hear, in one proceeding, cases which arise from the "same nucleus of operative facts." Under the grant of supplemental jurisdiction, district courts have the responsibility to accept jurisdiction over claims which are

6

substantially duplicative of issues, witnesses, and parties that are already pending in the district courts. In this case, no serious dispute exists that the issues contested arise from the same "nucleus" as those in the Jackie Holmes mandatory class action. Thus, supplemental jurisdiction appropriately rests with the United States District Courts and removal is entirely proper.

Respectfully submitted,

FORREST S. LATTA (LATTF0526)
H. WILLIAM WASDEN (WASDH426)
W. PEMBLE DELASHMET (DELAW8840)
Counsel for Prudential Property &
Casualty Insurance Company

OF COUNSEL:

PIERCE, LEDYARD, LATTA & WASDEN, P. C.
Post Office Box 16046
Mobile, Alabama 36616
(334) 344-5151

ROY H. LIDDELL
Co-counsel for Prudential Property &
Casualty Insurance Company

OF COUNSEL:

WELLS, MARBLE & HURST
Post Office Box 131
Jackson, Mississippi 39205-0131
(601) 355-8321

7

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the foregoing pleading by depositing the same in the United States mail, properly addressed with first class postage prepaid, to the following counsel of record:

Joe R. Whatley, Jr., Esquire
Frederick T. Kuykendall, III, Esquire
Cooper, Mitch, Crawford, Kuykendall
  & Whatley, L.L.C.
505 20th Street North
1100 Financial Center
Birmingham, Alabama 35203

E. Mark Ezell, Esquire
Ezell & Sharbrough, L.L.C.
Post Office Box 595
Butler, Alabama 36904

William F. Goodman, Jr., Esquire
Watkins & Eager PLLC
Post Office Box 650
Jackson, Mississippi  39205

Louis E. Braswell
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601

Thomas M. Louis, Esquire
Willard B. Gregg, Esquire
Post Office Box 23062
Jackson, Mississippi 39225-3062

Done this July $\underline{11}$ , 1996.

_____
COUNSEL

8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RONNIE JACKSON, WILLIAM SMITH,          *
LINDA SMITH, individually and           *
on behalf of all others similarly       *
situated,                               *
                                        *
        Plaintiffs,                     *
                                        *
vs.                                     *        CASE NO. 96-0501-BH-M
                                        *
TRUSTMARK NATIONAL BANK,                *
PRUDENTIAL PROPERTY & CASUALTY          *
INSURANCE COMPANY, and CENTRAL          *
NATIONAL INSURANCE COMPANY,             *
                                        *
                                        *
        Defendants.                     *

## JOINDER IN MOTION TO DISMISS OR TRANSFER

Defendant PRUDENTIAL PROPERTY & CASUALTY INSURANCE

COMPANY ("PruPac") joins in Defendant Trustmark's "Motion to

Dismiss or, alternatively, Motion to Transfer" asserting that

plaintiff's claims are properly adjudicated as part of a Rule

23(b)(1) mandatory class action, Jackie D. Holmes v. Trustmark

National Bank, et al., Civil Action No. 1:956cv323GR, in the United

States District Court for the Southern District of Mississippi,

Southern Division.

Alternatively, this action should be transferred to the United

States District Court for the Southern District of Mississippi,

Southern Division pursuant to 28 U.S.C. § 1404(a) which provides

the trial court with discretionary authority to transfer the action

to a more convenient forum.  Plaintiffs are residents of Mississip-

pi; Trustmark is headquarted in Mississippi; the transaction occur-

red in Mississippi; and the Jackie Holmes class action is pending

in Mississippi. Thus, the interest of justice would be served by a transfer of this case to Mississippi.

In support of this motion, Defendant Prudential adopts and relies upon the <u>Memorandum in Support of Trustmark National Bank's Motion to Dismiss or Alternatively, to Transfer</u>.

Respectfully submitted,

*Forrest Latta*

FORREST S. LATTA (LATTF0526)
H. WILLIAM WASDEN (WASDH426)
W. PEMBLE DELASHMET (DELAW8840)
Attorneys for Prudential Property &
Casualty Insurance Company

OF COUNSEL:

PIERCE, LEDYARD, LATTA & WASDEN, P. C.
Post Office Box 16046
Mobile, Alabama 36616
(334) 344-5151

ROY H. LIDDELL
Attorney for Prudential Property &
Casualty Insurance Company

OF COUNSEL:

WELLS, MARBLE & HURST
Post Office Box 131
Jackson, Mississippi  39205-0131
(601) 355-8321

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the foregoing pleading by depositing the same in the United States mail, properly addressed with first class postage prepaid, to the following counsel of record:

E. Mark Ezell, Esquire
Ezell & Sharbrough, L.L.C.
Post Office Box 595
Butler, Alabama 36904

Sara Hicks Stewart, Esquire
Ezell & Sharbrough, L.L.C.
Post Office Box 996
Mobile, Alabama 36601

Joe R. Whatley, Jr., Esquire
Frederick T. Kuykendall, III, Esquire
Cooper, Mitch, Crawford, Kuykendall
   & Whatley, L.L.C.
505 20th Street North
1100 Financial Center
Birmingham, Alabama 35203

William F. Goodman, Jr., Esquire
Watkins & Eager PLLC
Post Office Box 650
Jackson, Mississippi  39205

Louis E. Braswell
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601

        Done this day, June 24, 1996.


                              _____
                              Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RONNIE JACKSON, WILLIAM SMITH,      *
LINDA SMITH, individually and       *
on behalf of all others similarly   *
situated,                           *
                                    *
        Plaintiffs,                 *
                                    *
vs.                                 *    CASE NO. 96-0501-BH-M
                                    *
TRUSTMARK NATIONAL BANK,            *
PRUDENTIAL PROPERTY & CASUALTY      *
INSURANCE COMPANY, and CENTRAL      *
NATIONAL INSURANCE COMPANY,         *
                                    *
        Defendants.                 *

DEFENDANT PRUPAC'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS

Defendant PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY ("PruPac") has herewith filed a Motion to Dismiss plaintiffs' complaint against it on grounds that plaintiffs are without any standing to bring a separate claim for relief in view of the Order of the United States District Court for the Southern District of Mississippi certifying a mandatory class action of said claims, and therefore the instant complaint fails to state a claim for which relief can be granted.

In the alternative, the Mississippi federal court by its order certifying that class action, has assumed jurisdiction over these instant claims which is exclusive, and as such it precludes these plaintiffs from bringing a separate lawsuit in this court to assert their claims arising from the same nucleus of operative facts.

1

STATEMENT OF FACTS

Plaintiffs' complaint alleges common law tort claims arising from the sale by defendants of Collateral Protection Insurance coverage ("C.P.I.") in connection with their financing of an automobile. (Complaint ¶¶ 8-15). They allege the existence of a class, including three subclasses, of plaintiffs whom they contend are similarly situated. (Complaint ¶¶ 16-29). They also allege that the defendants' misconduct was part of a fraudulent scheme and conspiracy and that defendants acted uniformly as to the entire class. (Complaint ¶ 9).

Before the filing of this instant lawsuit, similar claims had already been filed in another class action lawsuit in the United States District Court for the Southern District of Mississippi. That lawsuit, entitled <u>Jackie Holmes v. Trustmark National Bank, Prudential Property and Casualty Insurance Company, Ross & Yerger, P.A., Ross & Yerger, Inc., Ross & Yerger Financial Systems and National Underwriters of Delaware, Inc.</u>, Civil Action No.1:95cv323GR, arises from the same nucleus of operative facts as alleged in the instant case. The general facts in <u>Jackie Holmes</u>, as recited by the court in that case, are as follows:

> The plaintiff filed the instant lawsuit seeking damages based on actions taken by Trustmark to collect the balance due on an automobile loan between Trustmark and the plaintiff, which included unearned interest and premiums for forced collateral insurance [CPI]. Trustmark . . . placed the CPI coverage through Prudential. The plaintiff contends that the insurance premiums, charged by Prudential then added by Trustmark to the

2

> plaintiff's loan balance, were excessive and
> included charges for coverage that was
> expressly excluded from the policy.

(<u>Jackie Holmes</u> Memorandum Opinion and Order, September 18, 1995)

The <u>Jackie Holmes</u> action was certified as a mandatory class action by the United States District Court for the Southern District of Mississippi prior to the filing of the Plaintiff's complaint. (See attached order).

## ARGUMENT

The lawsuit filed by the Plaintiff is clearly part of the "same case or controversy" as the allegations in the <u>Jackie Holmes</u> class action. The plaintiffs' claims arise from the same "common nucleus of operative facts" -- the defendants' alleged "scheme" to defraud and otherwise injure the class of borrowers through the sale of CPI coverage. The proof of these claims will require much of the same evidence and witnesses in both cases. <u>See Palmer v. Hospital Authority</u>, 22 F.3d at 1566. Plaintiffs' claims thus are subject to supplemental jurisdiction under 28 U.S.C. 1367(a) which provides in pertinent part that:

> [I]n any action of which the district
> courts have original jurisdiction, the
> district courts shall have supplemental
> jurisdiction over all other claims that are so
> related to claims in the action within such
> original jurisdiction that they form part of
> the same case or controversy under Article III
> of the United States Constitution.

The class action certification filed by the United States District Court for the Southern District of Mississippi, Southern

District, provided for a mandatory class. (See attached order).
Consistent with that order, these plaintiffs must join the pending
class action in Mississippi and they do not have standing to bring
separate claims in this court. To allow plaintiffs to bring a
separate action in this Court would circumvent the authority of the
Mississippi federal court in <u>Jackie Holmes</u> and lead to judicial
inefficiency in the form of two trials on the same operative facts.
Plaintiffs claims thus are due to be dismissed or transferred to
the federal court which already has assumed jurisdiction over these
claims.

       Fed.R.Civ.Pro. Rule 12(b) provides that where jurisdiction is
lacking in either the forum or the person, the Defendant may move
for a motion to dismiss for failure to state a claim upon which
relief can be granted. Plaintiffs do not have standing to bring
these claims in this Court, nor does the Court possess jurisdiction
over these claims separate and apart from the federal court in
Mississippi which already has certified these claims as part of a
mandatory class over which it has assumed jurisdiction. Thus, a
Motion to Dismiss or Transfer is appropriate.

CONCLUSION

       The proper forum for these claims is the United States
District Court for the Southern District of Mississippi since
plaintiffs' allegations are part of the same "nucleus of operative
fact" which the prior pending class action concerns. This

4

complaint should be either dismissed for failure to state a claim
for which relief can be granted or, in the alternative, transferred
to the United States District Court for the Southern District of
Mississippi to allow that court to hear these claims pursuant to
its supplemental jurisdiction under 28 U.S.C. § 1367.

                              Respectfully submitted,


                              _____
                              FORREST S. LATTA (LATTF0526)
                              H. WILLIAM WASDEN (WASDH426)
                              W. PEMBLE DELASHMET (DELAW8840)
                              Attorneys for Prudential Property &
                              Casualty Insurance Company

OF COUNSEL:

PIERCE, LEDYARD, LATTA & WASDEN, P. C.
Post Office Box 16046
Mobile, Alabama 36616
(334) 344-5151


                              _____
                              ROY H. LIDDELL

OF COUNSEL:

WELLS, MARBLE & HURST
Post Office Box 131
Jackson, Mississippi   39205-0131
(601) 355-8321

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the foregoing pleading by depositing the same in the United States mail, properly addressed with first class postage prepaid, to the following counsel of record:

E. Mark Ezell, Esquire
Ezell & Sharbrough, L.L.C.
Post Office Box 595
Butler, Alabama 36904

Sara Hicks Stewart, Esquire
Ezell & Sharbrough, L.L.C.
Post Office Box 996
Mobile, Alabama 36601

Joe R. Whatley, Jr., Esquire
Frederick T. Kuykendall, III, Esquire
Cooper, Mitch, Crawford, Kuykendall
   & Whatley, L.L.C.
505 20th Street North
1100 Financial Center
Birmingham, Alabama 35203

William F. Goodman, Jr., Esquire
Watkins & Eager PLLC
Post Office Box 650
Jackson, Mississippi  39205

Louis E. Braswell
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601

Done this day, June 5, 1996.

_____
COUNSEL

6