**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

CHARLES EHLING, et al.,

      Plaintiffs,

v.                                   CASE NO.  4:05cv431-RH/WCS

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH
PENNSYLVANIA, etc., et al.,

      Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT IN PART

This case presents the issue of whether a professional liability insurer must

indemnify its insureds — an insurance agent and his corporation — for amounts

that have been or may be recovered by the plaintiffs in eight underlying lawsuits.

All eight of the cases arise from the agent's placement of employee benefits

coverage with the same firm.  In seven of the cases, the gravamen of the claim is

(or was) the identity of the firm:  an unlicensed company that became insolvent.  In

the eighth case, the complaint is the agent's failure to secure coverage for claims

arising from automobile crashes.

The parties have settled the issue of the insurer's duty to defend the eight cases, leaving at issue only the issue of indemnity.  For the seven claims arising from the identity of the firm with which employee benefits coverage was placed, the insurer invokes an exclusion for claims arising out of the insolvency of any insurer or benefit plan.  For all eight of the claims, the insurer invokes an exclusion for claims arising out of payments of employee benefits or wages.  For the automobile crash case (and perhaps others), the insurer also invokes an exclusion for knowingly wrongful acts.

The insurer has moved for summary judgment on the indemnification issue. I grant the motion with respect to the first seven cases on the basis of the insolvency exclusion.  I deny the motion with respect to the eighth case, holding that the employee benefits exclusion is inapplicable and that the record does not establish whether the knowingly wrongful acts exclusion is or is not applicable.

# I

Plaintiff Charles A. Ehling is an insurance agent.  He placed a number of clients with Meridian Benefit, Inc., for administration of their employee benefit plans.  Meridian was not a licensed insurer.  Meridian did, however, accept payments from employers and undertake to pay claims incurred by their covered employees.  The record indicates that Meridian was underfunded from the outset; a

fair inference is that it was not what one might expect from a legitimate enterprise.

Meridian apparently did, however, pay at least some claims. By some point, Meridian quit paying claims and filed a bankruptcy petition. It appears uncontested that no assets will be available for distribution to unsecured creditors. Meridian was and is insolvent.

Employers or their covered employees filed eight lawsuits against Mr. Ehling and his corporation, plaintiff Ehling Insurance and Investments, Inc., for damages allegedly arising from their placement of employee benefits coverage with Meridian. For convenience, this order sometimes refers to Mr. Ehling and the corporation, collectively, as "Ehling."

The complaints in six of the lawsuits were filed in Florida state court. The complaints sought recovery on various theories, including negligence, breach of contract, and fraud. Four of the complaints explicitly asserted claims under §626.901(2), Florida Statutes, either alone or together with other causes of action. That statute provides in relevant part that if an unauthorized insurer fails to pay any covered claim, an agent who placed the coverage and knew or should have known that the insurer was unauthorized is liable for the full amount of the claim. All six of the Florida complaints alleged that Meridian *did not* or *would not* pay the claims at issue; two also alleged that Meridian was *unable* to pay claims.

The complaint in a seventh lawsuit was filed in Alabama state court and

asserted that after Meridian experienced financial troubles, the plaintiff (an employer whose employee benefits plan was being administered by Meridian) terminated Meridian's services and began paying its own claims. The plaintiff sought to recover from Ehling on theories of breach of fiduciary duty and negligence in placing the coverage with Meridian and failing to advise the plaintiff that Meridian was not an insurer.

The complaint in the eighth lawsuit was filed in Alabama state court and alleged that Ehling negligently and deceitfully placed coverage with Meridian that did not cover losses arising from automobile wrecks, contrary to the plaintiff's instructions. The complaint did not fault Meridian for failing to pay the claim at issue; it apparently was uncontested that Meridian had no obligation to do so.

Ehling demanded a defense, at least for the Florida actions, from Ehling's professional liability insurer, defendant National Union Fire Insurance Company.[1] National Union denied any duty either to defend the underlying lawsuits or to indemnify Ehling for any recoveries.

National Union did so by invoking exclusions for claims made against:

> (a)(1) an Insured arising out of, based upon or attributable to any actual or alleged criminal, dishonest, malicious, knowingly

---

[1] National Union issued its "Insurance Agents Professional Liability Insurance" policy to GE Financial Assurance. As is undisputed, Mr. Ehling and his corporation were insureds under the policy.

wrongful or fraudulent act committed by or at the direction of the
Insured;

. . .

(g) an Insured arising out of, based upon or attributable to the
insolvency, receivership, bankruptcy, liquidation or inability to pay, of
any entity in which the Insured has placed funds or obtained coverage
or invested funds for a client, including, but not limited to, the Named
Insured, or any bank, banking firm, insurance company, benefit plan,
broker/dealer, trust or investment vehicle; [or]

. . .

(t) an Insured arising out of, based upon or attributable to
payments of employee benefits, wages, salaries or commissions . . . .

Insurance Agents Professional Liability Insurance policy (document 15) at 21, 23.

Ehling filed this action seeking a declaration that National Union had a duty

to defend each of the six underlying actions pending in Florida. National Union

counterclaimed for a declaration that it had no duty to defend any of the eight

actions pending in Florida or Alabama. National Union's counterclaim also sought

a declaration that it had no duty to indemnify Ehling for any amounts that might be

recovered against Ehling in the eight actions. After the parties filed cross-motions

for summary judgment on their respective claims, they settled their dispute

regarding the duty to defend, leaving at issue only the issue of duty to indemnify.

The record indicates that two of the underlying actions have been settled, that one

has been dismissed (perhaps pursuant to settlement), and that three remain

pending.  The record does not reflect the status of the other two underlying actions.

**II**

A liability insurer has separate duties to defend claims against an insured and to indemnify an insured for any recoveries on covered claims.  Until recently, it was unclear whether Florida law allowed a declaratory action for determination of an insurer's duty to indemnify — as distinguished from its duty to defend — to go forward prior to resolution of the underlying lawsuit against the insured.  Citing some of that law, Ehling asserts any decision in the case at bar on the duty to indemnify would be premature.

The Florida Supreme Court now has held, however, that such a declaratory action *may* go forward prior to resolution of the underlying lawsuit, in the discretion of the trial court.  *See Higgins v. State Farm Fire and Cas. Co.*, 894 So. 2d 5 (Fla. 2004).  Whether, in a diversity action, this issue is governed by state or federal law may be unclear, but here it makes no difference.  Nothing in federal law would preclude entry of a declaratory judgment in these circumstances.  As a matter of discretion, I address the indemnity issue on the merits.[2]

---

[2] One related consideration bears noting.  National Union seemed to suggest, in its summary judgment papers as submitted prior to the parties' settlement of the duty to defend issue, that a ruling in National Union's favor on the duty to indemnify would end any duty to defend.  That is not necessarily so.  At least in most liability policies, the duty to defend is a separate contractual undertaking that

### III

National Union filed the summary judgment motion now at issue.  The

motion seeks judgment on National Union's claim for a declaratory judgment.

National Union would bear the burden of proof on that claim at trial.  On its

summary judgment motion, National Union's burden is to establish beyond bona

fide dispute the facts on which its claim depends.  Stated differently, the evidence

in the record and reasonable inferences from that evidence must be viewed in the

light most favorable to Ehling.

### IV

In addressing the merits of the coverage dispute, the starting point is the

language of the insurance policy itself, with this caveat.  *All* of the canons of

construction run strongly in Ehling's favor.  Ambiguities in insurance policies are

resolved in favor of coverage.  Exclusions are construed narrowly.  *See generally*

---

is broader than the duty to indemnify.  *See, e.g., MCO Envtl., Inc. v. Agric. Excess & Surplus Ins. Co.*, 689 So. 2d 1114, 1115 (Fla. 3d DCA 1997) ("The law is clear that the duty to defend is broader than the duty to provide coverage").  That an insurer has no duty to indemnify does not necessarily mean it has no duty to defend.  Nothing in *Higgins* is to the contrary.  Though the parties' settlement agreement apparently moots any duty to defend issue in the case at bar, it bears noting that the decision set forth in this order that National Union has no duty to indemnify with respect to seven of the cases does *not* mean National Union had or has no duty to defend those cases.

*Cast Steel Prods., Inc. v. Admiral Ins. Co.*, 348 F.3d 1298, 1300 (11th Cir. 2003)

("under Florida law an ambiguity in an insurance policy must be construed in favor

of the insured so as not to deny coverage"); *State Farm Fire & Cas. Co. v. CTC*

*Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998) (same); *Hughes v. Variety*

*Children's Hosp.*, 710 So. 2d 683, 687 (Fla. 3d DCA 1998) ("exclusions from

coverage should be narrowly construed"). With these principles in mind, I turn to

the specific exclusions at issue.

## V

The insolvency exclusion removes from the coverage of the liability policy

at issue any claim against an insured (including Ehling):

> arising out of, based upon or attributable to the insolvency,
> receivership, bankruptcy, liquidation or inability to pay, of any entity
> in which the Insured has placed funds or obtained coverage or
> invested funds for a client, including, but not limited to, the Named
> Insured, or any bank, banking firm, insurance company, benefit plan,
> broker/dealer, trust or investment vehicle . . . .

Insurance Agents Professional Liability Insurance policy (document 15) at 21.

It is uncontested that Meridian was an entity of the type described. The

record also establishes without dispute that at least by some point (if not from the

outset), Meridian was insolvent, bankrupt, and unable to pay claims, including

those now at issue.  The controlling question, then, is whether the lawsuits seeking

to hold Ehling liable for those claims *arose out of*, were *based upon*, or were

*attributable to* Meridian's insolvency, bankruptcy, or inability to pay.

The grounds on which some of the underlying plaintiffs seek to impose

liability on Ehling include, first and foremost, Meridian's unlicensed status.  A

party may recover against an agent who places coverage with an unlicensed insurer

whether or not the insurer becomes insolvent; proving insolvency is not a

prerequisite to recovery.  That does not, however, render the exclusion

inapplicable.  The duty to indemnify turns not on what a plaintiff alleges or must

prove; the duty to indemnify turns on the actual facts.  If in fact the claims against

Ehling arose out of or were attributable to Meridian's insolvency, the exclusion

applies.

Licensure of entities that collect premiums and pay claims — as Meridian

was supposed to do — has at least two purposes.  First, licensure may increase the

likelihood that the entity will remain solvent and thus will *be able* to pay claims.

Second, licensure may increase the likelihood that the entity will in fact *pay claims*

when it is able to do so, that is, that the entity will not abscond or simply be

recalcitrant.  Under Florida law, an agent who places coverage with an unlicensed

entity is liable for unpaid claims, whether or not caused by the unlicensed entity's

insolvency.

If the reason for Meridian's nonpayment of a claim at issue was Meridian's insolvency, then the corresponding claim against Ehling arose out of and was attributable to that insolvency. This is so based on the plain meaning of the term "arising out of" and, even more clearly, the term "attributable to." Any such claim is at the dead center of the insolvency exclusion.

If, on the other hand, Meridian would not have paid the claims anyway — because, for example, it intended all along to deny claims (even if legitimate) and in effect to take the money and run, whether or not revenues were sufficient to cover obligations — then the claims against Ehling for placing coverage with an unlicensed entity arose on grounds separate and apart from Meridian's insolvency. If this is what happened, the claims did not arise from, and were not attributable to, the insolvency.

This analysis comports not only with the language of the exclusion but also its apparent purpose. National Union provided liability coverage to Ehling and thus took on the risk of claims against Ehling arising from professional errors of various types. National Union did not, however, take on the risk that an insurer would fail and that, because of that failure, claimants would look to Ehling for payment. This is a comprehensible distinction. Insurer insolvencies present qualitatively and quantitatively different professional liability risks for a producing agent than events of other types. Thus, for example, errors that might never lead to

a claim against an agent if the insurer remained solvent might produce a claim if the insurer failed.  A professional liability insurer reasonably might choose to exclude (or alternatively to charge an enhanced premium for covering) claims arising out of or attributable to insurer insolvencies.  Perhaps for this reason, this policy excludes such claims.

As this discussion makes clear, I reject as inconsistent with the plain meaning of the policy Ehling's contention that even if the reason for Meridian's nonpayment of a claim was its insolvency, and even if the only reason for the claim against Ehling was Meridian's insolvency-based nonpayment, the claim against Ehling still somehow did not arise from, and was not attributable to, Meridian's insolvency.  An apparently unbroken line of cases, including one from Florida, rejects Ehling's position.  *See Transamerica Ins. Co. v. Snell*, 627 So.2d 1275 (Fla. 1st DCA 1993) (holding insolvency exclusion applicable to claims against agent who placed coverage with insurer that became insolvent; sole basis for claim was placement of coverage with financially unsound entity); *Barron v. Scaife*, 535 So.2d 830 (Lou. Ct. App. 2d Cir. 1988) (holding insolvency exclusion applicable to claim based on agent's failure to inform client of carrier's insolvency); *St. Paul Fire & Marine Ins. Co. v. Cohen-Walker, Inc.*, 171 Ga.App. 542, 320 S.E.2d 385 (Ga. Ct. App. 1984) (holding insolvency exclusion applicable because underlying complainant would have had no right of recovery against agent if health plan had

been financially able to pay).  In all of these cases, the insurer would have paid the
amount at issue but for its insolvency, the insolvency thus was a cause of any loss,
there would have been no recovery against the agent but for the insolvency, and the
insolvency exclusion was held applicable.[3]

The record in the case at bar establishes without dispute that Meridian's
insolvency was the sole reason for Meridian's nonpayment of the amounts at issue
in the seven lawsuits based on Ehling's placement of coverage with Meridian.
National Union thus has no obligation to indemnify Ehling for amounts recovered
in those seven lawsuits.

The eighth lawsuit — based on Ehling's failure to obtain coverage for losses
arising from automobile wrecks — plainly did not arise out of, was not based on,
and was not attributable to Meridian's insolvency.  Meridian would have had no
obligation to pay this claim even had it had been and remained solvent.  The
insolvency exclusion does not apply to that lawsuit.

------

[3] I also reject any assertion by National Union that the insolvency exclusion
would apply even if Meridian's insolvency was not a cause of any loss.  Citing
*Taurus Holdings, Inc. v. United States Fidelity and Guaranty Co.*, 913 So. 2d 528
(Fla. 2005), National Union asserts "arising out of" is a broad term not requiring
but for causation.  As a general principle, that conclusion is unassailable.  Under
the circumstances of this case, however, the distinction between "arising out of"
and but for causation makes no apparent difference in fact.  If Meridian's
insolvency did not make a difference, then it was neither a but for cause of any loss
to the underlying plaintiffs, nor did their claims arise out of that insolvency.

## VI

The employee benefits and wages exclusion removes from the coverage of the liability policy at issue any claim against an insured (including Ehling) "arising out of, based upon or attributable to payments of employee benefits, wages, salaries or commissions . . . ."  Insurance Agents Professional Liability Insurance policy (document 15) at 23.

All of the coverage that Ehling placed with Meridian related to employee benefit plans.  The claims against Ehling each sought payment for medical care rendered to a covered employee that should have been paid through the applicable employee benefit plan.  National Union asserts each claim thus arose out of, was based upon, and was attributable to "employee benefits."  I reject this interpretation of the policy.

The words in the phrase "employee benefits, wages, salaries or commissions" properly must be read *in pari materia*.  When these words are so read, the exclusion for claims "arising out of, based upon or attributable to payments" in these categories will not bear the broad meaning advocated by National Union.  That this is so may be seen from an example of a claim to which this exclusion clearly was not intended to apply.

Consider an agent covered by a National Union policy with this exclusion

who, because of negligence, obtains for a client an automobile policy from ABC

Insurance Company with a $10,000 liability limit, even though the client asked for

a $50,000 limit.  Assume further that the client causes a wreck, injuring a laborer

who loses $15,000 in wages.  When the client pays the uninsured portion of the

lost wages from his or her own pocket and sues the agent for failing to obtain

higher limits, would the exclusion for claims "arising out of, based upon or

attributable to payments of . . . wages" limit National Union's exposure?  Surely

not.  This is a garden variety lost wages claim of a kind routinely covered by

liability insurance, and there is no apparent reason why a policy would exclude

coverage for such a claim.  The conclusion properly drawn from this example is

that a claim that has as an element of damage lost wages (or salaries, commissions,

or other employee benefits) is not, solely for this reason, subject to this exclusion.

National Union's expansive reading of the exclusion thus cannot be right.  A

better view is that this exclusion applies only to claims arising from an employer's

payment (or nonpayment) of wages, salaries, commissions, or benefits *to its own

employees*.  Like claims arising from insurer insolvencies, an employee's wage

claims against his or her own employer are qualitatively different from other types

of claim.  An employer ordinarily cannot and does not obtain insurance for its own

employees' claims for wages actually earned; to the contrary, an employer

ordinarily expects to pay its own employees from its own pockets without looking

for indemnity from any insurer.  Agents thus ordinarily do not place coverage for an employee's wage claims against an employer, and an agent's liability carrier might choose not to undertake liability for a type of risk an agent ordinarily does not (and should not) write.  Reading this exclusion to apply only to claims arising from an employer's payment of or failure to pay wages or benefits to its own employees makes sense and, while not compelled by the language of the exclusion, is a reasonable interpretation.  This reading certainly is not foreclosed by that language.

It is true, of course, that this exclusion does not adopt this interpretation in so many words and with obvious clarity.  Neither does the exclusion plainly adopt the far broader reading advocated by National Union. Because the National Union reading produces extreme and apparently irrational and unintended results, and especially considering the requirement that exclusions be narrowly construed and ambiguities resolved in favor of the insured, I conclude that this exclusion does not apply to claims of the type at issue here.[4]

---

[4] There also is another possible interpretation of this exclusion.  The exclusion might be read — quite literally — as applicable to claims arising from "payment" of wages and benefits, not to claims arising from "nonpayment" of wages and benefits.  The distinction is not meaningless.  In the automobile crash hypothetical set forth in the text, the problem was the loss — that is, the nonpayment — of wages.  The same is true in the case at bar; the genesis of the claims was *nonpayment* of the medical bills at issue.  This stands in marked contrast, however, to a claim asserting that wages or other benefits were *paid* in error.  An agent who undertakes to process salary payments, to administer an

# VII

Finally, National Union invokes the exclusion for claims against an insured:

> arising out of, based upon or attributable to any actual or alleged criminal, dishonest, malicious, knowingly wrongful or fraudulent act committed by or at the direction of the Insured . . . .

Insurance Agents Professional Liability Insurance policy (document 15) at 21.

National Union notes that the complaint in the eighth lawsuit alleges that Ehling deceitfully placed coverage with Meridian that did not extend to losses arising from automobile crashes, contrary to the client's request. National Union says the knowingly wrongful acts exclusion therefore applies to this claim. But this complaint also alleges that Ehling acted negligently. The same is true of the other seven underlying lawsuits; they allege various, sometimes inconsistent levels of culpability.

If Ehling acted negligently but not willfully, this exclusion will not apply. Nothing in this record establishes that Ehling willfully deceived the client or

---

employee benefits plan, or to perform other human relations functions for another entity, and who makes a payment in error, may be sued by that other entity. If any such claim was otherwise within the coverage of this policy, it might be thought to arise out of "payments of employee benefits, wages, salaries or commissions," and thus might be excluded by this provision.

otherwise engaged in conduct described in this exclusion.[5]  Summary judgment

will not be granted based on this exclusion.

## VIII

In sum, Ehling's claim against National Union for indemnification with

respect to seven of the eight underlying lawsuits is barred by the insolvency

exclusion.  That exclusion plainly does not, however, apply to the eighth

underlying lawsuit.  The employee benefits or wages exclusion also is not

applicable to that action.  Whether the knowingly wrongful acts exclusion is

applicable cannot be determined based on this record.  For these reasons,

IT IS ORDERED:

1.  Defendant's motion for summary judgment (document 21) is GRANTED

IN PART and DENIED IN PART.

2.  It is hereby declared that defendant National Union Fire Insurance

Company has no duty to indemnify plaintiffs Charles A. Ehling and Ehling

Insurance and Investments, Inc. for amounts that may be recovered in the six

underlying lawsuits filed in Florida state court or the seventh underlying lawsuit

filed in Alabama state court by PACA, Inc.

3.  Summary judgment is denied with respect to defendant's duty to

---

[5] This order expresses no opinion on the precise scope of this exclusion.  It is
enough, for present purposes, that the exclusion does not reach mere negligence.

indemnify plaintiffs for amounts that may be recovered in the eighth underlying

lawsuits filed in Alabama state court by Employee Liability Management, Inc.

    4.  I do *not* direct the entry of judgment under Federal Rule of Civil

Procedure 54(b).

    SO ORDERED this 14th day of August, 2006.

s/Robert L. Hinkle           
Chief United States District Judge
