UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| PACA, INC.; CHARLES EHLING; JUDY EHLING; AND EHLING INSURANCE & INVESTMENTS, INC., ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION NO. 3:06-CV-437-MEF |
| NATIONAL UNION FIRE INSURANCE COMPANY, ) ) ) ) | |
| Defendant. ) | |

**NATIONAL UNION'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("National Union") files this memorandum in reply to PACA [Doc. 24] on the effect of the insurance coverage decision by Judge Hinkle in the Northern District of Florida, in *Ehling v. National Union Fire Ins. Co.*, Case No. 4:05cv431-RH/WCS (N.D. Fla. Aug. 14, 2006). PACA attempts to complicate the issue, but it is relatively straightforward.

PACA is in privity with Ehling and is bound by Judge Hinkle's order, because PACA's rights as a judgment creditor are directly dependent upon Ehling's rights to recover under his E&O policy. Under Florida's expansive definition of privity, PACA has a mutual or successive relationship to Ehling's rights under his policy. Because Ehling cannot recover, neither can PACA. Moreover, PACA knew about the Florida coverage action but it made the tactical decision not to participate. It cannot choose to just sit on the sidelines and then decide whether the Florida action is binding depending on the outcome. Ultimately, its rights cannot exceed those of Ehling, so it is bound by the non-coverage determination.

1

Judge Hinkle, in his summary judgment order, determined that coverage for PACA's underlying lawsuit against Ehling (for losses arising from Meridian Benefit's nonpayment of medical claims) was barred by the "insolvency exclusion" in Ehling's errors and omissions policy. That exclusion bars coverage for any claim against Ehling "arising out of, based upon or attributable to the insolvency, receivership, bankruptcy, liquidation or <u>inability to pay</u>, of any entity in which the Insured [Ehling] has placed funds or obtained coverage or invested funds of a client, including…any…benefit plan…."

There can be no dispute Ehling is bound by Judge Hinkle's order. He initiated and fully participated in the coverage dispute and was represented by counsel. Ehling had every opportunity to file anything in opposition to National Union's motion for summary judgment. Ehling could have filed the PACA consent judgment (of which he was obviously aware) which contained conclusory "findings" transparently designed to prejudice the coverage determination, even though this issue was never litigated in Alabama. Ehling's counsel, however, reasonably chose not to.[1]

Since Ehling is bound by the Florida summary judgment order, the only significant question is whether PACA also is bound. The Eleventh Circuit has adopted different approaches on whether federal or state law controls a federal court's collateral estoppel determination as to another federal court's judgment. In *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir. 1984), the Eleventh Circuit held that "[w]hen a federal court

---

[1] Indeed, Judge Hinkle even extended the time for Ehling to file additional materials until August 3, 2006. (App. 1). Ehling's counsel may well have considered PACA's consent judgment in the underlying action asserting Ehling's negligence and fraud to be of questionable value in a coverage determination, since coverage issues were not and could not be raised in PACA's original action, and of course were in no manner argued or litigated. This consent judgment was designed to help PACA's later coverage arguments, and bears no real value on the coverage issues.

sitting in diversity examines the collateral estoppel or res judicata effect of a prior federal judgment, based either on diversity or a federal question, it must apply federal common law." In *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 n. 1 (11th Cir. 1998), the court noted that it took a different position in *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990)("Federal courts apply the law of the state in which they sit with respect to the doctrine of res judicata.").

The United States Supreme Court appears to have determined in *Semtek International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), that the collateral estoppel effect of a federal diversity judgment is governed under a federal rule that incorporates the state law of the forum from which the federal judgment originated. Thus, as applied to this case, the collateral estoppel law of the forum from which Judge Hinkle's order arose – Florida – would control. [2]

Basic collateral estoppel principles under Florida law apply to bind not only parties but those in privity with parties. Florida broadly interprets the scope of what is included in the notion of privity:

> [P]rivity denotes <u>mutual or successive relationship</u> to the same right of property…. There is privity within the meaning of the doctrine of res judicata where there is an identity of interest and privity in estate, so that a judgment is binding as to a subsequent grantee, transferee, or <u>lienor of property</u>. This is in harmony with the view that a judgment is binding on privies because they are identified in interest, by <u>their mutual or successive relationship to the same rights of property</u> which were involved in the original litigation. (emphasis added)

*Rhyne v. Miami-Dade Water & Sewer Auth.*, 402 So. 2d 54, 55 (Fla. Dist. Ct. App. 1981). The concept of privity includes a "cluster of relationships" and is a flexible principle. *See Cook v.*

---

[2] Although PACA argues at length about the Full Faith and Credit Clause, it is settled law that this provision has absolutely no application to federal judgments. "[N]either the Full Faith and Credit Clause nor its implementing statute [28 U.S.C. §1738] applies to judgments issued by federal courts." *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1310 n.19 (11th Cir. 2005); *see also Semtek*, 531 U.S. 497, 506-07 (Full Faith and Credit Clause by its terms governs only state court judgments).

*State*, 921 So. 2d 631, 635 (Fla. Dist. Ct. App. 2005). A non-party also can be bound if he were adequately represented based on his "closely aligned" interests. *Id.*; *see West v. Kawasaki Motors Mfg. Corp., U.S.A.*, 595 So. 2d 92, 94 (Fla. Dist. Ct. App. 1992)(noting that Florida has broadly interpreted "parties and privies" for collateral estoppel purposes).

In order to determine whether PACA is in privity with Ehling, one must examine the circumstances of PACA's particular claims through which it seeks to satisfy its consent judgment. PACA asserts two counts – a common-law garnishment claim and a statutory direct action under Ala. Code §27-23-2 (1975), which gives a "judgment creditor" a right to have recoveries provided under a contract of insurance applied to satisfy its judgment. This statute is in the nature of equitable garnishment, and it does not change the liability of the insurer to its insured. *See State Farm Mut. Auto. Ins. Co. v. McClendon*, 114 So. 2d 153 (Ala. 1959).

The Alabama Supreme Court has determined that a judgment creditor's right to garnishment is directly "dependent upon" the insured's rights against an insurer, and the judgment creditor effectively 'stands in the shoes' of the insured:

> The law is clear that a judgment creditor's right under § 27-23-2 to proceed against the insurance company to satisfy a judgment obtained against the defendant/insured is <u>dependent upon the rights of the insured against its insurer under the policy</u>. "Under Alabama law, the injured party acquires a vested interest (secondary) in the nature of a hypothecation of the insured's rights under the policy." *Maness v. Alabama Farm Bureau Mutual Casualty Insurance Co.*, 416 So. 2d 979, 981 (Ala. 1982). (Citations omitted.)
>
> "The controlling question …is not so much whether there was a 'final judgment,' as mentioned in [the predecessor to § 27-23-2], but whether there was due to be paid to the insured by the insurer a sum fixed by the judgment…. That is, to inquire whether … defendant in the judgment, the insured, could maintain a suit on the policy against [the] insurer, as declared by the policy…."

*St. Paul Fire & Marine Ins. Co. v. Nowlin*, 542 So. 2d 1190, 1194 (Ala. 1988)(*quoting Ohio Cas. Ins. Co. v. Gantt*, 54 So. 2d 595, 600 (Ala. 1951)). PACA's rights to statutory or equitable garnishment are, therefore, derivative of Ehling's rights against National Union under his E&O policy. *See Alfa Ins. Co. v. Templeton*, 919 So. 2d 300, 305 n.3 (Ala. Civ. App. 2005)("the injured party's right under the tortfeasor's insurance policy are derivative and … the injured party 'stands in the same position the insured would occupy if he had paid the judgment' and sued the insurer himself," *quoting State Farm v. McClendon*, 114 So. 2d at 458-59).

Under Florida's expansive definition of privity, PACA's common-law and statutory garnishment claims "depend[…] upon" the ability of Ehling to recover against National Union. Thus, PACA has a mutual or successive relationship to the same property rights Ehling was seeking to enforce under his E&O policy. PACA therefore is in privity with Ehling. Because Ehling's rights were established by the Florida judgment eliminating recovery under his E&O policy, so were PACA's rights to garnishment.

In addition, both PACA and Ehling had identity of interests in the coverage litigation. It was certainly in Ehling's best interest to pursue his rights to indemnification as he was aware of several substantial outstanding judgments that various Florida claimants held against him. It was in his best interest to satisfy those outstanding judgments against him with insurance proceeds. He diligently tried to establish National Union's indemnification obligations, but Judge Hinkle rejected his arguments. Thus, Ehling had the same interest in establishing coverage, so he adequately represented PACA's interests to that end.

The remaining elements of collateral estoppel bear little discussion. The key issue litigated in the Florida action was insurance coverage, and particularly the application of the

"insolvency exclusion."[3] That issue was critical to the Florida federal district court's decision. The same issues must be determined in Alabama in order to decide whether PACA can enforce its "dependent" rights against Ehling's E&O policy.

Moreover, PACA was well aware of the pending Florida action because National Union already had moved that PACA's case be transferred to the pending Florida coverage action, which PACA opposed. *See* National Union's Motion To Dismiss Or, In The Alternative, Transfer, filed May 15, 2006. PACA also responded to National Union's document subpoena in the Florida coverage action, which was well before Judge Hinkle issued his order. PACA acquired its "consent judgment" on February 21, 2006, long before Judge Hinkle's decision was entered, and could have intervened in the Florida action to protect its judgment. It chose instead to resist the transfer of its case to the Florida federal district court -- a deliberate tactical choice to avoid litigating the coverage issue in that Florida action. Under similar circumstances where the injured party had notice of the insurer's coverage action but chose not to intervene, the Michigan Court of Appeals has held the injured party waived its rights and was collaterally estopped to deny the binding effect of a declaration of non-coverage. *See Wilcox v. Sealey*, 346 N.W.2d 889 (Mich. Ct. App. 1984).

To be sure, if National Union had lost its Florida coverage action, PACA would now be arguing that the Florida action was binding on PACA and National Union in the Alabama case.

---

[3] The docket in *Ehling v. National Union* demonstrates that Ehling actively litigated coverage issues. (App. 2) He argued that the insolvency exclusion did not apply, along the same lines that PACA is arguing.

It is hardly fair to permit PACA to "sit back" and see how the coverage action turns out, and then choose for itself whether it is binding or not on PACA.[4]

Under the "virtual representation" factors outlined in *Cook*, PACA's choice to resist being transferred to join the Florida coverage action evidently is "tactical maneuvering," and should weigh heavily in favor of a finding that PACA is not entitled to a "second bite at the apple" now that the coverage issues were decided unfavorably to it. *See Cook*, 921 So. 2d at 635.

Several other courts have considered the preclusive effect of a prior proceeding that necessarily determined non-coverage on a later direct action claim of the injured party. In *Aetna Cas. & Surety Co. v. Jones*, 596 A.2d 414 (Conn. 1991), the Connecticut Supreme Court held that an estate's right under a direct action statute (very similar to Alabama's) was barred by a prior action necessarily determining the lack of insurance coverage. Similarly, in New York, an injured party bringing a suit under New York's direct action statute (Section 3420) is in privity with the tortfeasor/insured. *See D'Arata v. New York Central Mut. Fire Ins. Co.*, 564 N.E.2d 634 (N.Y. 1990). The court held that "the inevitable consequence of plaintiff's election to proceed against the [insurer] under Insurance Law § 3420(b)(1) is that he is in legal privity with the claimed insured for the purpose of collateral estoppel analysis." *Id*. at 634. *See also Figueroa v. Hartford Ins. Co.*, 575 A.2d 888 (N.J. 1990)(applying collateral estoppel to injured party's claim, which was derivative of insured's rights, based on prior adjudication in insured's criminal proceeding); *Nationwide Mut. Fire Ins. Co. v. Stanley*, 403 F.Supp. 2d 638 (E.D. Tenn.

---

[4] PACA violated the requirement in *Wiggins v. State Farm Fire & Cas. Co.*, 686 So. 2d 218 (Ala. 1996), which prohibits the injured party from merely amending its underlying action against the tortfeasor to add the insurer, once it has a judgment. Rather, Alabama law requires PACA to bring a separate action against the insurance company.

2005)(applying collateral estoppel to injured victim whose rights derive from insured, with whom it was in privity); *Tradewind Ins. Co. v. Stout*, 938 P.2d 1196 (Haw. Ct. App. 1997)(reasoning that injured party "may stand in the shoes" of the insured for collateral estoppel purposes).[5]

In contrast, caselaw confirms that National Union is not bound by the PACA "consent judgment" findings that PACA claims affect coverage, because coverage was not raised as an issue in PACA's original claim against Ehling, nor was it litigated at all. Such "coverage" findings are merely gratuitous, designed to help PACA, and can have no controlling effect as the issue was not "fairly litigated." *See Butler v. Michigan Mut. Ins. Co.*, 402 So. 2d 949, 953 (Ala. 1981)(insurer not bound by prior judgment against insured in underlying case to which it was not a party, as judgment did not directly address policy exclusions); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Moore*, 349 So. 2d 1113 (Ala. 1977)(insurer not bound by underlying action against insured as to whether insured acted intentionally as issue was not directly litigated and insurer had conflicting interests with insured based on coverage exclusion for intentional conduct); *DaCruz v. State Farm Fire & Cas. Co.*, 846 A.2d 849, 860-61 (Conn. 2004)(insurer not bound by prior default judgment in underlying action against insured as to gratuitous coverage determinations inserted at plaintiff's request, as coverage not fully and fairly litigated, and plaintiff's "transparent effort" to obtain a deep pocket to pay its judgment was rejected); *Nationwide Mut. Fire Ins. Co. v. Stanley*, 403 F.Supp. 2d 638, 643-44 (E.D. Tenn. 2005)(insurer not bound by finding that insured's acts were negligent in default judgment where it could not

---

[5] Where the insurer and insured agree to a judgment on the coverage issue or a default judgment on coverage is entered, courts understandably refuse to give such judgments collateral estoppel effects as to the injured third party who did not join in the action. *See, e.g., Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770 (Tex. 1983)(agreed judgment between insurer and insured); *Southern Farm Bureau Cas. Ins. Co. v. Robinson*, 365 S.W.2d 454 (Ark. 1963)(default judgment on coverage).

logically defend insured and at the same time show his acts were intentional and therefore excluded). Under Alabama law, PACA's "invitation" for National Union to join the underlying action was meaningless since an insurer does not have a sufficient interest to join the underlying action. *See USF&G v. Adams*, 485 So. 2d 720 (Ala. 1986).

In addition to caselaw binding the injured party where the coverage issue is actually litigated in a prior case, PACA's own "consent judgment" expressly found that, "Plaintiff [PACA] and the Defendants [Ehling] now have a <u>common interest</u>, at least with regard to any insurance coverage…." (e.s.)  Thus, even in its own "consent judgment," PACA recognized its "common interest" with Ehling under his E&O policy.

Because of the non-coverage determination, it is undisputed that Ehling cannot recover under his policy. Therefore, even if he paid all outstanding judgments against him, he could not obtain reimbursement. To accept PACA's argument, it would have <u>greater</u> rights than Ehling if he paid and sought reimbursement, certainly an irrational result.

Based on these reasons, the Court should find PACA is bound by the Florida federal court's non-coverage determination. Otherwise an insurer would be unable to adequately determine its coverage obligations without attempting to join every potential creditor under a policy, many of whom are unknown and/or outside a court's jurisdiction. Those creditors, such as PACA, could sit on the sidelines waiting to see the outcome of a particular coverage case and then take a position on whether it was binding on the interested parties.

If this Court cannot determine on this record whether PACA is precluded from relitigating the coverage issue, then the Court should transfer the case to the Florida district court in the interests of judicial economy. If issues concerning coverage remain, Judge Hinkle, who

made the original decision and is familiar with the coverage issues, should determine any outstanding issues as well.

## Conclusion

PACA's claims against National Union are barred by the Florida district court's finding of non-coverage. Therefore, its case should be dismissed. If issues regarding coverage remain, the case should be transferred to the Florida district court so that a single court can adjudicate coverage.

Respectfully submitted,

   /s/ FORREST S. LATTA
FORREST S. LATTA        (LAT008)
(fsl@bowronlatta.com)
Attorney for Defendant
National Union Fire Insurance Company

OF COUNSEL:

BOWRON, LATTA & WASDEN, P.C.
Post Office Box 16046
Mobile, Alabama  36616
Telephone:   (251) 344-5151
Facsimile:    (251) 344-9696

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this the 21st day of September, 2006, served a copy of the foregoing upon the following by electronic notice and by depositing same in the United States mail, properly addressed with first class postage prepaid.

Randall S. Haynes, Esquire
Post Office Box 1660
Alexander City, AL 35011-1660

Mr. Charles Ehling
Mrs. Judy Ehling
Ehling Insurance and Investments
3163 Benton Boulevard
Pace, FL  32571

/s/ FORREST S. LATTA